United States District Court
Southern District of Texas
**ENTERED**
November 15, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | CRIMINAL NO. H-17-651 |
| HECTOR REYNA § | |
| GILBERT ESPINOZA GARCIA § | |
| § | |

## ORDER OF DETENTION PENDING TRIAL

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts are established by clear and convincing evidence and require the detention of the above-named defendant pending trial in this case.

### Findings of Fact

[ ] A.  Findings of Fact [18 U.S.C. § 3142(e), § 3142(f)(1)].

   [ ] (1)   The defendant has been convicted of a (federal offense) (state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is

        [ ]   a crime of violence as defined in 18 U.S.C. § 3156(a)(4).

        [ ]   an offense for which the maximum sentence is life imprisonment or death.

        [ ]   an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. ( ) § 801 et seq. ( ) § 951 et seq. ( ) § 955(a).

        [ ]   a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.

   [ ] (2)   The offense described in finding 1 was committed while the defendant was on release pending trial for a federal, state or local offense.

   [ ] (3)   A period of not more than five years has elapsed since the (date of conviction)

(release of the defendant from imprisonment) for the offense described in finding 1.

[ ] (4) Findings Nos. 1, 2, and 3 establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community. I further find that the defendant has not rebutted this presumption.

[ ]   B.   Findings of Fact [18 U.S.C. § 3142(e)]

   [ ] (1) There is probable cause to believe that the defendant has committed an offense

   [ ]   for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C.
   ( ) § 801 et seq. ( ) § 951 et seq. ( ) § 955(a) ( ) 841(a)(1).

   [ ]   under 18 U.S.C. § 924(c).

   [ ] under 18 U.S.C. ( ) § 2252A (a)(2)(B);  ( ) § 2252A (b)(1);  (x) § 2256

   [ ] (2) The defendant has not rebutted the presumption established by the finding under B.(1) that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

[x]   C.   Findings of Fact [18 U.S.C. § 3142(f)(2)]

   [ ] (1)

   [x] (2) There is a serious risk that the defendant will flee.

   [ ] (3)

   [ ] (4) There is a serious risk that the defendant will (obstruct or attempt to obstruct justice) (threaten, injure, or intimidate a prospective witness or juror, or attempt to do so).

[x]   D.   Findings of Fact [18 U.S.C. § 3142(c)]

   [ ] (1) As a condition of release of the defendant, bond was set as follows:
   Defendant has stated that he is financially unable to meet this condition of release. The Court has been asked to reconsider. I have concluded that the bond requirement is the only condition of release that could assure the appearance of the defendant. I find that the amount of bond is reasonable and necessary.

   [ ] (2)

   [x] (3) I find that there is no condition or combination of conditions set forth in 18 U.S.C.

§ 3142(c) which will reasonably assure the appearance of the defendant as required.

[ ] (4)

[x] (5)  I find that there is no condition or combination of conditions set forth in 18 U.S.C. § 3142(c) which will reasonably assure the safety of any other person or the community.

## Written Statement of Reasons for Detention

**I find that the credible testimony and information submitted at the hearing establishes by clear and convincing evidence that:**

Hector Reyna and Gilbert Garcia have been charged by Indictment in the United States District Court for the Southern District of Texas, Houston Division. Hector Reyna has been charged with conspiracy to engage in sex trafficking by means of force, threats, fraud, & coercion in violation of 18 U.S.C. § 1594(c) & 1591(a)(Count 1) and sex trafficking of a minor by means of force, threats, fraud and coercion in violation of 18 U.S.C. § 1591 & 2 (Count 2). Gilbert Garcia has been charged with conspiracy to engage in sex trafficking by means of force, threats, fraud, & coercion in violation of 18 U.S.C. § 1594(c) & 1591(a)(Count 1), sex trafficking by means of force, threats, fraud, or coercion in violation of 18 U.S.C. 1591(a) & 2 (Count 4), conspiracy to conduct transportation to engage in prostitution in violation of 18 U.S.C. § 371 & 2421(a) (Count 7), transportation to engage in prostitution in violation of 18 U.S.C. § 2421(a) & 2 (Count 9), conspiracy to entice and coerce another to travel to interstate or foreign commerce for prostitution in violation of 18 U.S.C. § 371 & 2422(a) (Count 13), enticing and coercing another to travel in interstate or foreign commerce for prostitution in violation of 18 U.S.C. § 2422(a) & 2 (Count 15), conspiracy to import aliens for immoral purpose in violation of 18 U.S.C. § 371 & 1328 (Count 22), and importation of alien for immoral purpose in violation of 8 U.S.C. § 1328 & 18 U.S.C. § 2 (Count 24).

**I conclude that the following factors specified in 18 U.S.C. § 3142(g) are present and are to be taken into account:**

Evidence presented at the detention hearing shows that the grand jury has made a probable cause determination that Hector Reyna ("Reyna") and Gilbert Garcia ("Garcia) committed the offenses described in the Indictment and testified to at hearing. The charges arise out of a sex trafficking and prostitution scheme operated by members and associated of the Southwest Cholos ("SWC") in Southwest Houston, Texas. The SWC also smuggled aliens into the United States for a fee.

The case agent testified about the investigation into the SWC by the gang task force. The case agent testified about two leaders of the SWC, co-defendant Erik Ivan Alvarez-Chavez ("Ivan") and his wife, Maria Angelica Moreno-Reyna ("Patty"). Also involved in the SWC are Patty's sons: Fredy Montes ("King Mono"), William Alberto Lopez ("William"), Walter Lopez ("Walter"), Eddie Alejandro Torres ("Monterrey") and Jose Luis Moreno ("Lucky). The SWC operated out of the Carriage Way Apartment Complex, located at 6011-6023 Dashwood, Houston, Texas. Other locations of operation include the Rio Grande Valley (Cameron, Hidalgo, Starr, and Webb Counties,

Texas) and Cancun, Mexico.

According to the case agent, co-defendant Gabriela Gonzalez-Flores ("Gabby) managed a brothel. In this capacity, she collected money. She is the daughter of Reyna. Other daughters of Reyna worked at the brothel as prostitutes. NGL, a 14 year old victim of the SWC was brought into the prostitution business by **Hector Reyna**. She and four other runaways met Reyna. He took her to Walter, who ran a brothel. NGL lived with **Hector Reyna**, Reyna's mother, and his three minor sisters. The case agent testified that NGL had a sexual relationship with **Hector Reyna**. He told her she had to contribute money to the household. In addition, **Hector Reyna** told NGL that she could work after her period was over. Then he took her to meet Walter. **Hector Reyna** and Walter told NGL that she would be a prostitute. **Hector Reyna** and Walter made NGL a fake ID, with an older age, and took her to the brothel. The case agent testified that make-up was applied to NGL to make her appear older. For approximately three to four months, NGL was a prostitute. The case agent testified that NGL told authorities she did this because they knew where her family lived and would hurt them if she quit or left. The case agent testified that NGL escaped from the brothel and went back to her family.

The case agent further testified that Patty picked up money and delivered condoms, beer and toiletries to the apartments. **Hector Reyna** assaulted the girls if they did not do the sex work. He marked the girls with tattoos of his name. The girls were also given drugs.

Next, the case agent testified about another minor victim, EMR. Her pimp is known as Juarez. EMR was promised that she could work at William Lopez's mother's restaurant but instead she as taken to an the brothel being run by Eddie Torres. William Lopez bruised EMR's face and she ran away from the brothel. She went back to Mexico to live with her mom. William Lopez chased EMR to Mexico. Because she did not want her family harmed, EMR came back. William Lopez and his mother attempted to smuggle EMR back into the United States. Their first attempt was futile. Border Patrol agents thwarted their entry. Another smuggler successfully brought her back to the United States and she went back to work at the brothel as a prostitute. EMR had surgery for breast augmentation and liposuction. William Lopez paid for the surgery. EMR was to pay him back by working as a prostitute. EMR attempted to escape a second time to Mexico. William Lopez contacted her family and demanded that she return to the United States with his mother. **Gilbert Espinoza Garcia** met her and entered the United States with her. Both were apprehended at the border. EMR was removed to Mexico. EMR re-entered the United States and went back to the brothel. EMR escaped a third time from the brothel. She befriended a male client and the client helped her leave the brothel. EMR had a tattoo with William Lopez's name to show that she was his property. Patty controlled the money and co-defendant William Lopez was her right hand man.

The case agent testified about another victim of sex trafficking by the SWC, MAVM. The victim was already in the United States. She was working at another brothel when William Lopez went there and asked her to marry him. They went to live in Monterrey, Mexico. According to the case agent, the SWC had a brothel in Cancun and William Lopez controlled it. The victim became pregnant. William Lopez told her she was going to Houston, Texas before the baby's birth. MAVA was smuggled by Raul Moreno Reyna into the United States. She had to work as a prostitute a week after giving birth. She was then taken to Eddie Torres apartment brothel as well as to William Lopez's bar brothel. William Lopez put her head through the wall, punched and broke her lip when she wanted to stop. Patty told MAVM she was useless. She escaped by telling a client her story. The client took her and her daughter away. Like the other victims, MAVM had a tattoo of William Lopez. He claimed her as his property.

The case agent testified that the Cancun brothel was a training facility. Victims were brought to the United States because they made more money here. **Gilbert Espinoza Garcia** took money and supplies back and forth from Cancun to the United States.

Another sex trafficking victim of the SWC was AP. The case agent testified that she was in Mexico with her parents. She was befriended by Cervantes, a member of the SWC. Cervantes asked her to come to the United States with him. Cervantes told AP that she could work at a restaurant belonging to a mother of a friend. Cervantes was paid a smuggling fee. Freddy Montes met Cervantes in Mexico. He gave AP a cell phone and dropped her at a drop site. "AP was smuggled in the United States in a bus and transferred to a stash house. "AP had little food or water at the stash house. William Lopez called her cell phone and told her that Cervantes had been arrested and that she was going to work in his mother's restaurant. He also told "that he would pay the balance of her smuggling fee. Freddy Montes kept her in a hotel near McAllen, Texas and told her that a lady in a truck would pick her up. This happened. AP hid under a mattress in a 18 wheeler. They took her to Houston. They took AP to a restaurant to meet William Lopez and "Bobby". They told AP that to repay them for her smuggling fees she had to be a prostitute and how much to charge. AP was taken to a brothel to work. AP was beaten by William Lopez and Freddie Montes. She asked to be let go. Freddy Montes threatened to kill her. He punched her mouth and crashed his truck into a median. Her family was threatened. AP escaped with a male client. AP has two tattoos: Freddie and King Mono.

The case agent testified about another victim, ADP ADP was from Central America and trying to enter the United States. She was fleeing domestic violence in Honduras. Her mother lived in Houston and arranged with a neighbor, Patty to smuggle ADP into the United States for $9,000. William Lopez took her to a ranch belonging to Patty and Ivan. They traveled to Cancun, Mexico. William Lopez beat her and injected her with morphine. She was taken to the Cancun brothel and made to work as a prostitute. She escaped and phoned her mom. ADP's mom arranged to get her to the United States. She confided in Reyna. Reyna arranged to have ADP smuggled into the United States. She was caught by the border patrol. She got a bond and went to live with her mother at the same apartment complex as the brothel. Patty, Eddie Torres, and William Lopez were upset ADP escaped and told her to work at the apartment brothel to pay them back. Jose Luis Moreno held a gun to her mother's head. ADP escaped. She has a tattoo of William Lopez. She is identified as his property.

Another victim of sex trafficking by the SWC was BAS. Title III intercepts revealed that BAS was in the Cancun brothel with William Lopez. Patty smuggled her into the United States to work at the apartment brothel. She was smuggled to Houston, Texas by Ivan.

**Hector Reyna's** employment is unstable. He has a history of using marijuana, cocaine and alcohol. His supervised release was revoked because he failed to refrain from drug use and failed to participate in drug treatment. This demonstrates an unwillingness or inability to comply with bail conditions. **Hector Reyna** has a federal felony drug conviction. He also has a state felony conviction for felon in possession of a firearm. The evidence of guilt is strong. One of the victims stated she was turned into a prostitute by **Hector Reyna**. This enhances the risk of flight. He has been seen with a firearm. He is a danger to public safety.

**Gilbert Espinoza Garcia** was recorded on Title III intercepts. He trafficked one of the victims. He was arrested with twelve undocumented aliens. Based on information from a CI, he traveled to Mexico in the past year, five to ten times. **Gilbert Espinoza Garcia's** residence is part of the case. The victims identified him. **Gilbert Espinoza Garcia's** employment is unstable. His

previous employment was as a criminal investigator. He looked things up on PACER. He has a history of mental health issues. His criminal history includes a state drug felony conviction. He was sentenced to five years deferred adjudication probation.

The Court concludes that there is a substantial risk of flight in this matter. Accordingly, having determined that there are no standard conditions of release to assure the appearance of the Defendant at all future court proceedings in this matter, the Court ORDERS that Defendant **Hector Reyna** and **Gilbert Espinoza Garcia** be DETAINED pending further proceedings in this matter.

## Directions Regarding Detention

It is therefore ORDERED that the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On Order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with all court proceedings.

Signed at Houston, Texas, this 14th day of November 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE