UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §   CRIMINAL NO. H-4:17-cr-00651-18 |
| | § |
| HECTOR REYNA, | § |
| | § |
| Defendant. | § |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Adam Laurence Goldman, Assistant United States Attorney, and the defendant, Hector Reyna ("Defendant"), and Defendant's counsel, Tate Williams, pursuant to Rule **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 2 of the Indictment. Count 2 charges Defendant with Aiding and Abetting Sex Trafficking of a Minor, in violation of Title 18, United States Code, Sections 1591(a), (b)(2) and 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for a violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 2, is imprisonment for not less than 10 years and not more than life imprisonment and a fine or not more than $250,000.00  With a conviction for Count 2, there is a mandatory restitution under Title 18, United States Code, Section 1593 which is not less than the

full amount of the victims' losses. Additionally, under Count 2, Defendant may receive a term of supervised release after imprisonment of not less than 5 years and up to life. *See* Title 18, United States Code, section 3583(k). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisonment for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

4. Pursuant to Title 18, United States Code, Section 3014(a)(3), if the court determines that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5,000.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

2

## Immigration Consequences

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count 2 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

4

### Agreement Binding - Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges

and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

    (b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

    (c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 2 of the indictment. If this case were to proceed to trial, the United States could prove each element of the offenses charged beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

**I.   Overview**

The Southwest Cholos and its associates (hereinafter referred to as "SWC") are a criminal organization based in Southwest Houston, which is within the Southern District of Texas. **Hector Reyna ("Hector")** was the head of the Bellaire set or clique of the SWC. In addition to its members, SWC also has associates operating throughout Texas, Mexico, and Central America who act in furtherance of the criminal scheme described herein. SWC members and associates are engaged in a variety of criminal conduct, including, but not limited to, sex trafficking, drug trafficking, firearms trafficking, alien smuggling, and the smuggling of illegal aliens into and within the United States in order for the illegal aliens to engage in prostitution. This includes SWC members and associates operating brothels in Houston, Texas (which is within the Southern District of Texas), and Mexico. Among the brothels operated by SWC in the Southern District of Texas were those at:

- The Carriage Way Apartments, 6021-23 Dashwood, Houston, Texas 77081 (which was operated by **Maria Angelica Moreno-Reyna ("Patty")**; managed by **Gabriela Gonzalez-Flores ("Gabby")**; had security provided by, amongst others, **Eddie Alejandro Torres ("Eddie")** (who specifically provided security in a truck with red security strobe lights),

7

Raul Moreno ("Coney"), and **Erik Ivan Alvarez-Chavez** ("**Ivan**"); and had furniture and drinks provided by **Ivan** and **Jimmy Mejia-Chavez**);

- The Englewood Village Apartment, 6363 Skyline Drive, Unit 57 Houston, Texas 77057 (which was operated by **Patty** and **Eddie**; and managed by **Gabby**); and

- The Las Velas Apartments, 7111 Hillcroft, Houston, Texas 77081; The Bella Luna Apartment, 5261 Westward Street, First Floor, Houston, Texas 77081; the Windswept Gardens, 6320 Windswept Road, Building 5559 Houston, Texas 77057; and the Coral Heights Apartment, 6363 Beverly Hills Street, Second Floor of Building 69-76, Houston Texas 77057 (which were operated by **Walter Lopez** ("**Walter**") and **Anadalit Duarte** ("**Anadalit**"); managed by **Patty Gabby,** and **Claudia Soriano-Hernandez** ("**Claudia**"); provided with a juvenile prostitute by **Hector** that he recruited and transported as described in section II below, and provided controlled substances for the prostitutes (some of who were sex trafficking victims and/or juveniles) to calm them down so SWC members and associates could control them by **Anadalit** and **Bianca Reyna** ("**Bianca**")).

SWC and its associates also had a brothel in Cancun, Mexico, which was operated by **William Lopez** ("**William**"). SWC members and associates also used stash houses, including those operated by **Melisa Dominguez** ("**Melisa**"), in the Southern District of Texas portion of the Rio Grande Valley to house the smuggled illegal aliens, including sex trafficking victims, as they travelled from outside of the United States to the Houston, Texas vicinity.

**II.   NGL**

In 2013 or 2014, NGL, who was 13 or 14 years old at the time, was introduced to **Hector** by a friend. **Hector** was 22 years old at the time they first met. When NGL was 14, she and

8

**Hector** had a sexual relationship and lived together at Hector's apartment at the Pelican Point Apartments, over which he had custody, care, and control. NGL lived with **Hector** not only due to their romantic relationship but also because she ran away from her parents' home due to abuse by her father. After living together for a period at Hector's apartment at the Pelican Point Apartments, **Hector** informed NGL she had to contribute financially to their living arrangement if she wanted to continue living there. NGL did not want to go back to living with her parents due to the aforementioned abuse, but indicated that she could not work because was a minor with no legal immigration documents. **Hector** responded by telling her that he had a job available for her despite her being a minor with no legal immigration documentation, and she could begin this work once she stopped menstruating. When she finished menstruating, **Hector** introduced NGL to **Walter**, who operated the abovementioned brothel on 7111 Hillcroft Street, Houston, Texas 77081, with **Patty** also acting in a supervisory capacity. **Hector** informed NGL at that time that she would be working as a prostitute at the brothel operated by **Walter**. **Walter** then took a photograph of NGL and claimed it was in order to get her a fake photographic identification document which would indicate she was not a minor. For the photograph, **Walter** told NGL to wear short shorts and a spaghetti string blouse. NGL was then taken to the brothel where she met **Anadalit**. **Anadalit** taught NGL how to prepare her makeup to appear older and how to dress and **Anadalit** and **Walter** instructed NGL on the rules for working in the brothel, including telling clients that she was not a minor. NGL then worked as a prostitute for some period of time at that location and later another apartment after it had to move due to complaints about the activity occurring therein. The money NGL received for having sex with men was split with **Walter, Hector, Anadalit,** and **Patty.** Although **Walter** and **Patty** owned the and operated the brothel,

9

it was managed on a day-to-day basis at that time by **Anadalit** and **Walter**. **Hector** also provided transportation for NGL to and from the brothel for the first few weeks. Clients for the brothel were solicited at a nearby flea market and over social media. Moreover, **Bianca** and **Anadalit** gave NGL drugs to calm her down while she worked at the brothel and **Bianca** threatened to assault NGL if she did not want to work. While 14 years old, NGL obtained two tattoos: one with **Hector's** real name "Hector," and the other with his gang moniker "Pantera."

In 2015, an administrator at Jane Long Middle School informed law enforcement that NGL, after denying it during an initial interview with that administrator, explained in detail how she was lured into prostitution by **Hector**. NGL still had the tattoos with the words "Pantera" and "Hector" on her body. After NGL reported this information to the administrator (she denied it during an initial interview with the administrator), **Hector** attempted to confront NGL at the school, but was stopped by a school resource officer. **Hector** then told the school resource officer that the administrator needed to keep **Hector's** "name out of her mouth."

Later, NGL identified **Hector's** prior residence, **Walter** and **Anadalit's** prior residence, their vehicles, and the apartment complex where **Walter** and **Hector** took her to work at as a prostitute.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United

States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

11

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

21. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture (numbered as in the Supplement to the Notice of Forfeiture):

> 4. Real property at 1110 Coral Street, in Houston Texas.
>
> 5. Real property at 1006 Shawnee Street, in Houston, Texas (sold proceeds held).
>
> 7. Real property at 812 Yorkshire Street in Houston, Texas, which is legally described as follows: Lot One Seventy-Nine (179) of Block Eight (8) COLONIAL GARDENS, an addition in Harris County, Texas,

12

according to the map or plat thereof recorded in Volume 13, Page 4 of the Map Records of Harris County, Texas (parking lot sold by City; net proceeds held in Cause No. 2019-29492, 165th District Court of Harris County, Texas).

   8. Real property at 7396 Irvington Boulevard, in Houston, Texas.

   9. Real property at 4016 Woodleigh Street, in Houston, Texas.

   10. Real property at 4901 Irvington Boulevard, in Houston, Texas, which is legally described as Lot Element (11), Block Two (2) of P.A. REED subdivision, an addition to Harris County, Texas, according to the map or plat thereof recorded in Volume 25, Page 3 of the Map Records of Harris County, Texas.

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution. Defendant agrees to the impositions of a personal money judgment in that amount.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by

the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Notification of the Sex Offender Registration and Notification Act

26. Defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student. Defendant understands that the requirement for registration includes providing his name, his residential address and the names and addresses of any places where he is or will be an employee or student, among other information. Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, in an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects his to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

### Complete Agreement

27. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

14

28. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at  Houston , Texas, on  August 20 , 20 24.

*Hector Reyna*
Hector Reyna
Defendant

Subscribed and sworn to before me on  August 20 , 20 24.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____
Adam Laurence Goldman
Assistant United States Attorney
Southern District of Texas
Telephone: 713-567-9534
Facsimile: 713-718-3303

_____
Tate Williams
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-4:17-cr-00651-18 |
| HECTOR REYNA, | § § | |
| Defendant. | § § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     8/20/2024
Tate Williams                        Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights

16

with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          _____
Hector Reyna                                                  Date
Defendant

Signature: Hector Reyna       Date: 8-20-2024

17