UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA     .   4:17-CR-00651

VERSUS                       .   HOUSTON, TEXAS

FREDDY MONTES, ET AL         .   AUGUST 26, 2021

. . . . . . . . . . . . . . .   2:30 P.M.

TRANSCRIPT OF STATUS CONFERENCE HELD REMOTELY VIA TELEPHONE
BEFORE THE HONORABLE GRAY H. MILLER
UNITED STATES DISTRICT JUDGE

*****

This transcript has been furnished at public expense under the Criminal Justice Act and may be used only as authorized by court order.

Unauthorized reproduction will result in an assessment against counsel for the cost of an original and one copy at the official rate.

General Order 94-15, United States District Court, Southern District of Texas.

*****

*APPEARANCES*

FOR THE GOVERNMENT:

    Adam L. Goldman
    Assistant United States Attorney
    1000 Louisiana
    Suite 2300
    Houston, Texas   77002

FOR DEFENDANT FREDDY MONTES:

    Winifred "Windi" Akins Pastorini
    Attorney at Law
    440 Louisiana
    Suite 200
    Houston, TX 77002

FOR DEFENDANT VICTOR JAVIEL GONZALEZ:

    David Paul Cunningham
    Attorney at Law
    2814 Hamilton Street
    Houston, Texas   77004

FOR DEFENDANT WILLIAM ALBERTO LOPEZ:

    Sean Buckley
    LAW OFFICES OF SEAN BUCKLEY PLLC
    175 Main Street
    Suite A
    Biloxi, Mississippi   39530

FOR DEFENDANT ERIK IVAN ALVAREZ-CHAVEZ:

    Adrian Almaguer
    Attorney at Law
    Post Office Box 262406
    Houston, Texas   77207

*APPEARANCES CONTINUED*


FOR DEFENDANT JOSE RUBEN PALOMO-MARTINEZ:

    Teresa C. Keck
    Assistant Federal Public Defender
    440 Louisiana
    Suite 1350
    Houston, Texas  77002


FOR DEFENDANT GABRIELA GONZALEZ-FLORES:

    Gerardo "Gerry" Montalvo
    Attorney at Law
    Park Central Plaza
    1111 North Loop West
    Suite 820
    Houston, Texas  77008


FOR DEFENDANT WALTER LOPEZ AND STAND-IN COUNSEL FOR HECTOR REYNA:

    James R. Alston
    Attorney at Law
    1415 North Loop West
    Suite 905
    Houston, Texas  77008


FOR DEFENDANT EDDIE ALEJANDRO TORRES:

    Larry Eastepp
    LARRY D. EASTEPP PC
    800 Bering Drive
    Suite 220
    Houston, Texas  77057

*APPEARANCES CONTINUED*

FOR DEFENDANT JOSE LUIS MORENO:

      Ali R. Fazel
      FAZEL LAW
      5373 West Alabama Street
      Suite 600
      Houston, Texas   77056


FOR DEFENDANT BIANCA STEPHANIE REYNA:

      Thomas "Todd" B. Dupont, II
      DUPONT & DUPONT
      Historic Bayou Lofts
      915 Franklin Street
      Unit 7M
      Houston, Texas   77002


OFFICIAL COURT REPORTER:

      Mayra Malone, CSR, RMR, CRR
      U.S. Courthouse
      515 Rusk, Room 8004
      Houston, Texas   77002



Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

                         - - - - -

***PROCEEDINGS***

THE COURT:  This is a status conference in Criminal Case 17-651, United States of America versus Freddy Montes and others.

Who's on the line for the government?

MR. GOLDMAN:  Good afternoon, Your Honor.  Adam Goldman for the United States.

THE COURT:  Mr. Goldman, good afternoon.

And I guess let's go down in order of the defendants, beginning with Freddy Montes, and have the attorneys make their appearance on the phone, please, starting with the attorney for Mr. Montes.

MS. PASTORINI:  Thank you, Your Honor.  Windi Akins Pastorini for Mr. Montes.

THE COURT:  All right.  Good afternoon, Ms. Pastorini.

MS. PASTORINI:  Thank you.

THE COURT:  And for Mr. Gonzalez?

MR. CUNNINGHAM:  David Cunningham for Mr. Gonzalez, Your Honor.

THE COURT:  All right.  Good afternoon, sir.

For Mr. Lopez?

MR. BUCKLEY:  Is that William Lopez, Your Honor?

THE COURT:  William Lopez.  Yes.  Sorry.

MR. BUCKLEY:  Good afternoon, Your Honor.  Sean Buckley for Mr. Lopez.

THE COURT:  All right.  Good.

And for Alvarez-Chavez?

MR. ALMAGUER:  Good afternoon, Your Honor.  Adrian Almaguer.

THE COURT:  Mr. Almaguer, good afternoon.

Let's see.  For Jose Palomo-Martinez?

MS. KECK:  Good afternoon, Your Honor.  Teresa Keck for Mr. Palomo-Martinez.

THE COURT:  All right.  Good afternoon.

And for Gabriela Gonzalez-Flores?

MR. MONTALVO:  Gerry Montalvo for Ms. Gabriela Gonzalez-Flores.  Good afternoon, Your Honor.

THE COURT:  Good afternoon, sir.

Walter Lopez?

MR. ALSTON:  Good afternoon, Your Honor.  James Alston for Walter Lopez.

THE COURT:  Good afternoon, Mr. Alston.

Eddie Torres?

MR. EASTEPP:  Larry Eastepp, Your Honor.  Good afternoon.

THE COURT:  Good afternoon, sir.

And Jose Luis Moreno?

MR. FAZEL:  Good afternoon, Your Honor.  Ali Fazel.

THE COURT:  Mr. Fazel, good afternoon.

Hector Reyna?

MR. ALSTON:  James Alston, appearing for Robert Fickman, who represents Hector Reyna.

THE COURT:  All right, Mr. Alston.  Thank you.

And, finally, for Bianca Reyna?

MR. DUPONT:  Hello, Judge.  Todd Dupont on her behalf.

THE COURT:  All right.  Mr. Dupont, good afternoon.

MR. DUPONT:  Hi, Judge.

THE COURT:  We had a status conference in this case scheduled for -- about two weeks ago, and Mr. Goldman filed a status report at that time on August 11th and brought me up to date, and I think, I hope, brought the attorneys for the defendants up to date on where we were and said that everyone was in agreement to postpone the status conference for about two weeks, and so here we are two weeks later.

And I guess I will let Mr. Goldman start and update us on where we are now.

Mr. Goldman?

MR. GOLDMAN:  Thank you, Your Honor.

Your Honor, there were two matters that were outstanding: the video of the pole cams and then also the transcripts.

The transcripts, yesterday they were finally finished.  I provided a link to all the attorneys through our USAfx discovery, so they could all access all eight transcripts.  There's a legend, or guide, for all of them.

I understand some people had some trouble this morning accessing the USAfx website.  I gave them access to our paralegal.  I think she got everybody through that.

But that discovery -- those transcripts are now done, so I think that resolves that issue.  If there are any problems, I now have copies on my computer, and I can turn those over, I suppose, via hard copy.  They can check it out from our office, but the transcripts are done.

As for the pole cams, I went through them all and I labeled what each one contained regarding, as I said last time, date, time, location, and what each one had.

Counsel had asked me, even though this is not required of discovery, to sort of identify where their clients are in each one.

Even though I was not able to get to everybody, because there are a lot, I did get through half of the defendants already in that legend as to where they were.

For those, I don't want to get into it, Your Honor, regarding where plea negotiations are, or not are.

There are basically three individuals for whom I have to go through six of the pole cams.

I do know that this all began because the discovery coordinator that defense counsel had had trouble accessing the pole cam video.  I'm not going to go into what happened there, but I can just tell the Court that I had no

trouble accessing it all.  I'm not sure what the problem was that they had.  But to sort of rectify that issue, I do have a proposal that might make this easier for the discovery coordinator or for a local counsel acting on behalf of the attorneys so that we don't have to go through this whole process over and over again and make the access easier.

It does contain about a total of 16 terabytes of information, and they do sell hard drives in 4-terabyte size and 2-terabyte size.  I was looking at the Amazon website and the Best Buy website.  Each one is $60 to $90 for those.  I'm not sure if the CJA funds cover it.  I think they do.  The attorneys can correct me if I'm wrong on that.

But my suggestion would be for them to sort of pool the discovery resources.  I can make a copy of the 16-terabytes, put them onto four 4-terabyte drives or eight 2-terabyte drives.  And that way, they can have them all for themselves.  Again, I don't know what the problem was the discovery coordinator had with them.  I found the process of accessing them not problematic, and I will leave it at that.

But that is where we are.  We believe that we have completed all our discovery obligations in the case by statute and case law and federal rules.

So we think we are ready to move on from this, but as far as the pole cams, we are willing to provide a new copy of each one to a local counsel on behalf of all of the

attorneys to make that easier.

And for the three people for whom there are outstanding identification information for the pole cams that I am creating a spreadsheet for, I can try to get that done as quickly as possible to make that portion go a little bit quicker.

THE COURT:  All right.  Who wants to speak on behalf of the defendants first?

MR. FAZEL:  Judge, this is Ali Fazel.  I don't mean to speak on behalf of anybody.  I just want to clarify the record.

When Mr. Goldman says, I don't know why the discovery coordinator had trouble accessing it, that's -- frankly, the reason is because it was sent to the discovery coordinator in a haphazard way, and I don't want to go into other details, just like Mr. Goldman doesn't want to go through details about it.  But the discovery coordinator is more than capable of downloading something that's been sent to them in an appropriate fashion.

So the reason this has taken so long -- I'll do what Mr. Goldman does.  I don't want to go into it, but I have a feeling it has government on it.  So that's number one, to be clear on the record about that.

Number two, we have been waiting for this for a huge amount of time.  And we just got the spreadsheet this morning.  We were -- my understanding -- I was not able to be

in the last pretrial conference.  I apologize to everybody for that.

My understanding is that we were supposed to get -- start getting plea agreements, and that hasn't happened yet. And apparently now there is transcripts that we -- Your Honor, I just haven't had time to look at my emails today to go through them to understand what -- transcripts of what they are.  And we were supposed to get plea agreements, and we have not gotten them.

So this is the defense's position -- Ali Fazel's position for Luis Moreno.  We -- after looking at everything that's been provided to us, we have been in desperate need to speak to the government and get some kind of plea negotiations underway.  That hasn't happened in earnest yet.  Now we have to look at all this other new discovery that's been provided to us.

My understanding is some of these pole camera recordings, some defendants are on it and some are not on it. I don't know for sure.  And so that is kind of where we are with this.

I think it would be a mistake for each of us to send that amount of hard drives over to the government and each get individual copies.  I think it would be much, much simpler to have one good copy sent, perhaps in an appropriate way, in the best way, labeled appropriately to the discovery

coordinator, who then can copy those and provide those either in the cloud for us to download and/or provide it in a way where we can grab it so that there is no confusion or it's not done haphazardly. That's my recommendation. And with that, I will stand down to let other counsel speak.

MR. GOLDMAN: If I can respond to that, Your Honor? This is Adam Goldman.

THE COURT: Sure, Mr. Goldman.

MR. GOLDMAN: First of all, regarding the transcripts, we've been discussing what the transcripts were at length, the interviews of the victims, particularly the juvenile victims for particular defendants. That has been known for a while, and I told Mr. Fazel it doesn't really affect his client. Those are not individuals for whose conduct his client was charged with. Those are labeled. They have been provided. They are transcripts, the ones that were asked for specifically and identified repeatedly throughout this discussion.

The reason I haven't been able to send over the plea agreements, Your Honor, is, quite frankly, I have been going through these videos, and I do take a little offense to Mr. Fazel's claim that this has a smell of government on it.

I got these same terabyte drives back from the discovery coordinator, the very same ones that I sent her. I popped each one in so they were all readily identifiable. So the idea that they were haphazard -- I took the same tapes that

I sent her, got them back in the same conditions, popped them in.  And I was easily able to identify what each one was.  So I do respectfully disagree with those characterizations.

The plea agreements, depending on what the priority -- the priority of the plea agreements, I can stand down in going through these videos and get back on track on those.  But since the last conversation we have had with counsel, the last status conference, what I have been working on primarily has been going through these videos.

THE COURT:  All right.  How much more time -- let me just ask Mr. Goldman, how much more time do you think this video review is going to require from you?

MR. GOLDMAN:  Well, Your Honor, I actually agree with something Mr. Fazel said.  It must have been a miscommunication.  I agree that if I get just one copy of eight hard drives and defense shares them amongst themselves, or through the discovery coordinator, I think that would rectify everything, and I just could just go straight to plea agreements at that time.

THE COURT:  Let's do that.  Unless somebody is going to violently object, I think that makes a lot of sense.  And then you could devote your time to working on plea agreements with counsel.

MR. BUCKLEY:  Your Honor, Sean Buckley for William Lopez.

I have no dissention with anything that's been said.  The only caveat is I'm not CJA, I'm retained, so I think I will take Mr. Goldman up on his offer and provide him with a hard drive of sufficient capacity, because I don't believe I have full access to the discovery coordinator in the same way that CJA counsel do.

THE COURT:  Yeah.  I think you're probably right.  That's a good idea.

MR. ALSTON:  Your Honor, James Alston for Walter Lopez.

THE COURT:  Yes, sir?

MR. ALSTON:  I'm told by Mr. Fickman's legal assistant that there's eight transcripts, and I've downloaded those eight transcripts.  And she's advised that that is approximately 500 pages of transcripts.

I had a question in regards to the 16 terabytes of video on a pole cam.  From my understanding, 1 terabyte is approximately 500 hours of HD video, so that would be approximately 8,000 hours of HD video.

I will just ask the government:  Is there going to be -- I think Mr. Goldman said there's going to be some type of index so we can locate our client and know where to look on the video.

*(Simultaneous crosstalk)*

THE COURT:  Go ahead, Mr. Goldman.

MR. GOLDMAN:  Yes.  I've tried -- I've identified -- I think Mr. Alston got the spreadsheet to identify where we have something for each person on each camera.  I haven't gone through the specific dates on each one but the time periods.

Mr. Alston is in luck actually, Your Honor, in that his client is not in any of the pole cams.

THE COURT:  Ahh, there you go.

MR. ALSTON:  I like to be lucky.

THE COURT:  That saves you some time.

MR. ALSTON:  It sure does.

THE COURT:  Anybody else need to say something right now in terms of what we are talking about?  Any other defense counsel?

MR. FAZEL:  I'm sorry, Your Honor.  This is Ali Fazel again.

I just want to make sure that I understand what we're doing.  Is Mr. Goldman going to send one drive containing all of the videos to resource counsel so that I can appraise her of this and email her as soon as we're done?  Or is Adam going to send four different drives?  Can I have, like, a detailed description of what exactly is coming so I can make sure I stay on top of it and make sure that the same thing that happened last night doesn't happen again?

THE COURT:  Yes.  Mr. Goldman?

MR. GOLDMAN:  Yes, Your Honor.  What I thought is that

one of the attorneys -- or the attorneys will pool their CJA resources and send me a total of 16 terabytes' worth of storage space and however many hard drives it is.

Once we get those drives, we would then copy all the information from the pole cams onto those drives.  Turn it back over to whichever attorney is volunteering for the defense on this side and then they would have them.

THE COURT:  I think what they're asking -- what Mr. Fazel was asking, if it goes back to the discovery coordinator -- who's going to supply the hard drives, Mr. Fazel?

MR. FAZEL:  Your Honor, what I was going to do is email the discovery coordinator to find out if she has hard drives available to send directly to Mr. Goldman.  That would be the easiest and fastest thing to do.

If not, then I guess what I'll do is I'll do it and charge the CJA board.  I guess that's not a problem.

MR. ALMAGUER:  Your Honor, this is Adrian Almaguer for Erik Alvarez-Chavez.

Wouldn't it be easier if Mr. Goldman gave us copies of the pole cams that pertain just to our clients, our individual clients?

THE COURT:  Yeah.  It probably would be.

Mr. Goldman, can you do that?

MR. GOLDMAN:  That would be very difficult, Your

Honor, to try to take apart each part that only has each defendant. I think it's easier if I continue with the spreadsheet that I'm making, and that way it can identify where each person can look on the pole cams. Separating each part is rather difficult.

THE COURT: Okay. So, in other words, you are going to give them all of the video and then you will give them an index that will say where each defendant appears on the video? Or not?

MR. GOLDMAN: That is correct, Your Honor.

THE COURT: Okay. I guess that will have to do.

Timing on that?

MR. GOLDMAN: For me, Your Honor, once I get the terabyte drives, the downloading should take about a week from that.

I would like to sort of turn my focus to the plea agreements because I know certain defendants have been waiting longer than others for plea agreements. I would like to turn my attention to that before I get the -- before I finish the index.

Like I said, Your Honor, half of these defendants are done on the index, and I have about half to go on about half of the defendants, but I think that will be lessened once I get the plea agreements done.

THE COURT: All right. Anybody object to that, let

Mr. Goldman start working on plea agreements and then finish up on the index after he's got the plea agreements out to everybody?

MR. FAZEL:  Again, I don't want to talk for the defendants.  At this point, I don't know what to say, other than, you know, as long as we can get something, yes, I think we will all be happy with that.

I will do my best, Your Honor.  I will promise the Court and the members -- the bar members here at this hearing that I will do my best to get with Julie, who is the discovery coordinator, and get her to see if she has the drives necessary to send to Mr. Goldman directly to bypass that issue.

I respectfully will tell you that I think copying that much HD video might take a little longer than Mr. Goldman anticipates.  That's a lot of video.  And then, of course, then for her to take it and flip it and do whatever magic she needs to do with it, that might take a while, as well.  But just kind of the sphere of reality, I think that is something I want everybody to be aware of, at least contemplate.

THE COURT:  Yeah.  I'm sure it will.  I'm sure Mr. Goldman won't be doing that himself.  He'll have his technical people doing it but --

MR. GOLDMAN:  I hope so, Your Honor.

THE COURT:  Okay.  Good.  All right.  So I think the best thing to do is to set another status conference for some

period of time after today, and based on everything you are telling me, I think it needs to be at least 30 days. That gives Mr. Goldman time to work on some plea agreements with counsel.

Does anybody think it ought to be longer than 30 days that we set the next conference?

MR. FAZEL: I think 30 days, Your Honor, given the pace, is a little ambitious. I get why you would want it to be 30 days. Perhaps that's not a bad idea. But maybe splitting the baby, 45 days or so, might be a little bit more realistic just for getting the drives back and FedExing and all of that. I think that would probably be something to consider. But, of course, it's up to the Court.

THE COURT: All right. Ruth, what would 45 days from today be like?

THE CASE MANAGER: Close to 45 days would be Thursday, October 7th, and we could do it at 1:30.

THE COURT: Why don't we set another status conference by phone in this case for Thursday, October 7th, at 1:30? And Ruth will send out a notice on it.

MR. FAZEL: Yes, sir.

MR. GOLDMAN: Yes, Your Honor.

THE COURT: All right. And, Mr. Goldman, I encourage you to get with defense counsel and, you know, pass on to them whatever your plea offer is going to be in this case, and then

get back to the pole cam video.

MR. GOLDMAN:  I will do them in that order, Your Honor.  Yes.

THE COURT:  All right.  Good.

Anything else from anybody else?

MR. ALSTON:  No, Your Honor.

THE COURT:  Okay.  Good.  Speak now or forever hold your peace.

All right.  So I will talk to you again on October 7th and good luck with this.

*(The attorneys in unison say:  Thank you, Your Honor)*

*(Court adjourned at 2:54 p.m.)*

* * * *

I, Mayra Malone, CSR, CRR, RMR, certify that as a Federal Official Reporter for the Southern District of Texas, I have transcribed the Zoom/telephone conference of the foregoing entitled case to the best of my ability; that any inaudible designations are because of audio interference that precluded me from understanding the words spoken; and that the foregoing typewritten matter contains a full, true and correct transcript of my understanding of the aforesaid proceedings as recorded, to the best of my skill and ability.

DATE: October 1, 2025

/s/ Mayra Malone

----------------------------------------
Mayra Malone, CSR, RMR, CRR
Official Court Reporter