IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| USA | § | CASE NO. 4:17-cr-651-18 |
| | § | HOUSTON, TX |
| VERSUS | § | TUESDAY, |
| | § | AUGUST 20, 2024 |
| MONTES et al | § | 3:39 TO 4:09 PM |

RE-ARRAIGNMENT

BEFORE THE HONORABLE CHARLES R. ESKRIDGE III
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PARTIES:                SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: AARON JACKSON

COURT CLERK:                    GLENDA HASSAN

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

APPEARANCES:

FOR THE PLAINTIFF:                    DEPARTMENT OF JUSTICE
                                      UNITED STATES ATTORNEY FOR THE
                                      SOUTHERN DISTRICT OF TEXAS
                                      Adam Goldman
                                      1000 Louisiana Street
                                      27th Floor
                                      Houston, Texas 77208
                                      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


FOR HECTOR REYNA:                     HILDER & ASSOCIATES P.C.
                                      Quentin Tate Williams
                                      819 Lovett Boulevard
                                      Houston, TX 77006
                                      713-655-9111

HOUSTON, TEXAS; TUESDAY, AUGUST 20, 2025; 3:39 PM

CLERK:  All rise.  The United States District Court for the Southern District of Texas is now in session with the Honorable Charles Eskridge presiding.  God save the United States and this honorable Court.

THE COURT:  Thank you, everyone.  Please be seated. All right.  I'm calling for re-arraignment criminal cause 17-651-18, the United States versus Hector Reyna.  Can I get appearance of counsel, please?

MR. GOLDMAN:  Yes, good afternoon, Your Honor.  Adam Goldman and Tyler White for the United States.

THE COURT:  Thank you.

MR. WILLIAMS:  Tate Williams for the Defendant, Hector Reyna, who is seated in the courtroom.

THE COURT:  Thank you.  Welcome, Mr. Reyna.

All right.  I understand that Mr. Reyna -- is that your client wants to plead guilty to Count 2 of the indictment against him; is that correct?

MR. WILLIAMS:  That's correct, Your Honor.

THE COURT:  All right.

Mr. Reyna, do you understand the purpose of the proceedings and what we're doing here today?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  I have a number of questions that I have to ask you, and you must answer truthfully and

under oath.  Can you raise your right hand, please?

CLERK:  Do you solemnly swear that the testimony that you are about to give in the case pending now before this Court will be the truth, the whole truth and nothing but the truth, so help you God?

MR. REYNA:  Yes, ma'am.

THE COURT:  All right.  Do you understand that you're now under oath to tell the truth?

MR. REYNA:  Yes, sir.

THE COURT:  If you answer any of my questions falsely, the Government has the right to prosecute you for perjury or false statement; do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  If you don't understand a question I ask, you can have me repeat or rephrase it before you answer, okay?

MR. REYNA:  Yes, sir.

THE COURT:  And if you want to ask your attorney a question privately, just let me know.  You can do so at any time.  I'll arrange a conference for you.  Okay?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Can you please tell me your full name for the record?

MR. REYNA:  Hector Reyna.

THE COURT:  And where were you born?

MR. REYNA:  I was born in Bronson, Texas.

THE COURT:  All right.  How old are you?

MR. REYNA:  I'm 33.

THE COURT:  And how far did you go in school?

MR. REYNA:  I got a GED, and I got a vocational trade.

THE COURT:  Okay.  All right.  I'm going to ask some questions to make sure you're able to enter a guilty plea.

MR. REYNA:  Yes, sir.

THE COURT:  Have you ever been treated for any mental illness or psychological problem?

MR. REYNA:  Yes, sir.

THE COURT:  And what was that?

MR. REYNA:  Well, at the facility I'm at right now, when I talk to the psych, they diagnosed me with PTSD, anxiety, and paranoia.

THE COURT:  Okay.

MR. REYNA:  Due to the reason that I got shot and other stuff (indiscernible).

THE COURT:  Okay.  Are you -- do you take any medication for those?

MR. REYNA:  Not at the moment, no, sir.

THE COURT:  Not at the moment.  Is there anything about those diagnoses that prevent you from understanding this conversation or understanding things that are going on around you?

MR. REYNA:  No, sir.

THE COURT:  All right.  Are you under the influence of any drug, alcohol, or medication of any kind?

MR. REYNA:  The only -- I'm on antibiotics.  That's all, Sir.

THE COURT:  Okay.  Just antibiotics?

MR. REYNA:  Yes, sir.

THE COURT:  Nothing else?

MR. REYNA:  No, sir.

THE COURT:  Okay.  Are you sick in any way that would prevent you from understanding what we're doing here today?

MR. REYNA:  No, sir.

THE COURT:  Okay.  Have you had enough time to discuss your case with your attorney?

MR. REYNA:  Yes, sir.

THE COURT:  Are you satisfied with the advice and help that he's been able to give you?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Do you want to get any further legal advice before we proceed?

MR. REYNA:  No, sir.

THE COURT:  All right.  Mr. Williams, have you had enough time to investigate the law and facts of your client's case?

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  Are you confident that he understands the nature of the charges and the possible punishment?

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  And do you believe that he's competent to enter a plea of guilty today?

MR. WILLIAMS:  I do.

THE COURT:  Okay.  I agree.

I find that the Defendant is competent and that he wishes to enter a guilty plea, and that he does so knowingly, voluntarily, intelligently and with the advice of counsel.

All right, Mr. Reyna, now I'm going to ask some questions to make sure you understand the important rights that you give up by pleading guilty.  Do you understand that you have a right to plead not guilty and to persist in that plea?

MR. REYNA:  Yes, sir.

THE COURT:  If you were to plead not guilty, the United States Constitution would guarantee you the following rights: the right to a jury trial before 12 citizens of this district whose verdict must be unanimous; the right to be presumed innocent at trial with the United States required to prove your guilt beyond a reasonable doubt; the right to have an attorney represent you at trial and at every other stage of the proceedings, and if you can't afford one, to have one appointed to represent you; the right at trial to see and hear all witnesses against you and have them cross-examined in your

defense; the right to remain silent and to decline to testify unless you voluntarily elect to do so in your own defense; the right to compel the production of any evidence in the attendance of witnesses in your favor.  But if you decide not to put on any evidence, that fact can't be used against you. Do you understand that you have all of these rights at trial upon a plea of not guilty?

MR. REYNA:  Yes, sir.

THE COURT:  Do you understand that if you plead guilty and I accept that plea there will be no trial and you give up all of those trial rights that I just described?

MR. REYNA:  Yes, sir.

THE COURT:  If you plead guilty, you also give up and waive the right to make a number of arguments on appeal about your prosecution.  That basically means you can't later complain to a court about the way that the Government investigated and arrested you, or any searches or seizures, or any statements taken from you, or any delays after arrest.  Do you understand that you will not be able to raise these and similar defenses later if you plead guilty?

MR. REYNA:  Yes, sir.

THE COURT:  And do you understand that if I accept your plea, you will be convicted of the charges against you in the indictment as to Count 2 and then we go to a separate procedure later called sentencing?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  I'm now going to ask some questions to make sure that you understand the charges against you, especially as to Count 2.

Mr. Williams, have you explained the indictment to your client?

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  And does he waive the reading of the indictment?

MR. WILLIAMS:  Yes, we waive.

THE COURT:  All right.  Mr. Reyna, the indictment is the written charges that have been made against you in this case.  Have you received a copy of the indictment pending against you?

MR. REYNA:  Yes, sir.

THE COURT:  Have you read it, and has your attorney carefully explained it to you?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Count 2 of the indictment charges you with aiding and abetting, sex trafficking of a minor in violation of 18 U.S.C. Sections 1591(a) and (b)(2) and Section 2.  The elements that the Government must prove are as follows:

That the offense of sex trafficking of a minor, as described in Elements 5 through 7 -- that I'll get to in a

moment -- was committed by some person; that the Defendant associated with the criminal venture; that the Defendant purposefully participated in the criminal venture; that the Defendant sought by action to make that venture successful, and that the person knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained by any means NGL that the person committed such act knowing or in reckless disregard of the fact that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act and that the person's acts were in or affected interstate or foreign commerce.  Do you understand what the Government is claiming you have done that violated federal law and what it must prove to convict you?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  I also have to make sure that there's a factual basis for a guilty plea before I take your plea.  I'm going to ask the Government authority to now summarize the facts that the Government believes it can prove about you.  Please pay close attention because I will have some questions about whether you have any clarifications or changes to what is said.

Mr. Goldman, can you please summarize the facts the United States believes that it can prove in this case?

MR. GOLDMAN:  Yes, Your Honor.  The Southwest Cholos and its associates, hereinafter referred to as SWC, are a

criminal organization based in southwest Houston, which is within the Southern District of Texas.  Hector Reyna, or Hector, was the head of the Beller Set or clique of the SWC. In addition to its members, SWC also has associates operating throughout Texas, Mexico, and Central America who act in furtherance of the criminal schemes described herein.

SWC members and associates are engaged in a variety of criminal conduct, including but not limited to, sex trafficking, drug trafficking, firearms trafficking, alien smuggling, and the smuggling of illegal aliens into and within the United States in order for the illegal aliens to engage in prostitution.  This includes SWC members and associates operating brothels in Houston, Texas, again, which within the Southern District of Texas, and Mexico.  Among the brothels operated by SWC in the Southern District of Texas were those at:  first is the Carriage Way Apartment at 6021-23 Dashwood in Houston, Texas, 77081, and that was operated by Maria Angelica Moreno-Reyna, also known as Patty, managed by Gabriela Gonzales Flores, also known as Gabby, had security provided by, amongst others, Eddie Alejandro Torres, also known as Eddie, and he specifically provided security in a truck with a red strobe light.  Also, Raul Moreno, also known as Coney and Erik Ivan Alvarez-Chavez, also known as Ivan, and they had furniture and drinks provided by Ivan and Jimmy Mejia Chavez.

There was also the Inglewood Village Apartment at

6363 Skyline Drive, Unit 57, Houston, Texas, 77057, and that was operated by the aforementioned Patty and Eddie and managed by the aforementioned Gabby.  And relevant for Mr. Reyna is the Los Velas Apartments at 7111 Hillcroft, Houston, Texas 77081, the Bella Luna Apartment at 5261 Westwood Street on the first floor in Houston, Texas at 77081 (sic), the Windswept Gardens at 6320 Windswept Road (sic), Building 5559, Houston, Texas 77057, and the Coral Heights Apartment, 6363 Beverly Hills Street, 2nd Floor of Building 69-76, Houston, Texas 77057.  For these locations, the brothels were operated by Walter Lopez, also known as Walter, and Anadalit Duarte, also known as Anadalit.  They were managed by Patty, Gabby, and Claudia Soriano-Hernandez, and they were provided with a juvenile prostitute by this Defendant, Hector Reyna, that he recruited and transported as described in Section 2 below, and that prostitute was provided controlled substances, again, to calm them down so that SWC members and associates could control them.  And those controlled substances were provided by Anadalit and Bianca Reyna, also known as Bianca.

The SWC and its associates also had a brothel in Cancun, Mexico, which was operated by William Lopez, also known as William.  SWC members and associates also use stash houses, including those operated by Melissa Dominguez, also known as Melissa, in the Southern District of Texas portion of the Rio Grande Valley, and that was used to house and smuggle illegal

aliens including sex trafficking victims as they traveled from outside of the United States to the Houston, Texas vicinity.

Now, regarding the specific individual in this case, NGL, in 2013 or 2014, NGL, who was 13 or 14 years old at the time, was introduced to Hector by a friend.  Hector was 22 years old at the time they first met.  When NGL was 14, she and Hector had a sexual relationship and lived together at Hector's apartment at the Pelican Point Apartments, over which he, Hector, had custody, care, and control.  NGL lived with Hector not only due to their romantic relationship but also because she ran away from her parents' house due to abuse by her father.

After living together for a period at Hector's apartment at the Pelican Point Apartments, Hector informed NGL she had to contribute financially to their living arrangement if she wanted to continue living there.  NGL did not want to go back to living with her parents due to the aforementioned abuse but indicated that she could not work because she was a minor with no legal immigration documents.  Hector responded by telling her that he had a job available for her despite her being a minor with no legal immigration documentation, and she could begin this work once she stopped menstruating.

When she finished menstruating, Hector introduced NGL to Walter who operated the aforementioned brothel at 7111 Hillcroft Street and with Patty acting in a supervisory

capacity over that brothel.  Hector informed NGL at that time that she would be working as a prostitute at the brothel operated by Walter.  Walter then took a photograph of NGL and claimed it was in order to get her a fake photographic identification document, which would indicate she was not a minor.  For this photograph, Walter told NGL to wear short-shorts and a spaghetti string blouse.

NGL was then taken to the brothel where she met Anadalit.  Anadalit taught NGL how to prepare her makeup to appear older, and how to dress, and Anadalit and Walter instructed NGL on the rules for working in the brothel, including telling clients that she was not a minor.  NGL then worked as a prostitute for some period of time at that location, and later, another apartment after they had to move due to complaints about the activity occurring therein.

The money NGL received for having sex with men was split with Walter, Hector, Anadalit, and Patty.  Although Walter and Patty owned and operated the brothel, it was managed on a day-to-day basis at that time by Anadalit and Walter. Hector also provided transportation for NGL to and from the brothel for the first few weeks.  Clients for the brothel were solicited at a nearby flea market and over social media. Moreover, Bianca and Anadalit gave NGL drugs to calm her down while she worked at the brothel, and Bianca threatened to assault NGL if she did not want to work.

While 14 years old, NGL obtained two tattoos, one with Hector's real name, Hector, and the other with his gang moniker, Pantera.  In 2015, an administrator at Jane Long Middle School informed law enforcement that NGL, after denying it during an initial interview with that administrator, explained in detail how she was lured into prostitution by Hector.  NGL still had the tattoos with the worse Pantera and Hector on her body.

After NGL reported this information to the administrator -- again, she denied it during the initial interview -- Hector attempts to confront NGL at the school but was stopped by a school resource officer.  Hector told the school resource officer to tell that administrator to keep Hector's name, "out of her mouth."  Later, NGL identified Hector's prior residence, Walter and Anadalit's prior residence, the vehicles -- their vehicles and the apartment complex where Walter and Hector took her to work as a prostitute.

THE COURT:  All right.  Mr. Reyna, you've heard that summary of the facts that the Government believes it can prove beyond a reasonable doubt.  Is there anything that you disagree with or would want to change?

MR. REYNA:  No, sir.

THE COURT:  All right.  Are those facts true and correct?

MR. REYNA:  Yes, sir.

THE COURT:  And no one forced you to commit those acts?

MR. REYNA:  No, sir.

THE COURT:  All right.  I find that a factual basis exists for the guilty plea.  And I need to make sure that you understand the potential extent of the sentence that you could receive.  I'm going to ask the Government's attorney to now summarize the maximum penalties applicable to this case.  Mr. --

MR. GOLDMAN:  Yes --

THE COURT:  -- Goldman.

MR. GOLDMAN:  I'm sorry.  Sorry to interrupt, Your Honor.  For imprisonment for this count it is not less than 10 years of imprisonment, and not more than life, and a fine not to exceed $250,000.  Also, there is a supervised release term of a minimum of five years and a maximum of life, and a special assessment of $100 for count of conviction.  And should the Court determine that Mr. Reyna is not indigent, there would be an additional $5,000 special assessment.

THE COURT:  All right.  Thank you.

All right.  Mr. Reyna, do you understand each of the penalties that the Government's lawyer just described?

MR. REYNA:  Yes, sir.

THE COURT:  Do you understand that if you plead

guilty, you're subject to that full potential range of punishment?

MR. REYNA: Yes, sir.

THE COURT: And you also need to know that as to any prison term, there's no parole in the federal system, so any prison time will not be shortened by parole. Do you understand?

MR. REYNA: Yes, Your Honor.

THE COURT: And as to any term of supervised release, if you violate the conditions imposed, you can be given additional prison time. Do you understand?

MR. REYNA: Yes, sir.

THE COURT: By pleading guilty to this offense there may be future restrictions placed on where you may live or work and with whom you may associate, do you understand?

MR. REYNA: Yes, sir.

THE COURT: And also because this is a felony, upon a plea of guilty, you may lose valuable civil rights, such as the right to vote, to hold public office, to serve on a jury, and to possess or have under your control any kind of firearm and other rights. Do you understand?

MR. REYNA: Yes, sir.

THE COURT: All right. Knowing that these and other consequences may come with a felony conviction and knowing that full range of potential penalties, do you still wish to plead

guilty?

MR. REYNA:  Yes, sir.

THE COURT:  Okay.  Let me describe for you how the sentencing process works.  Whether convictions by a jury or upon a plea of guilty, it is up to me as the judge to impose sentence.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  At sentencing, the first thing I will do is determine the sentencing guideline range that applies to your case.  That is the high end and the low end of the number of months recommended for your sentence.  If your attorneys told you anything about your sentence or what the guideline range might be, it is just his estimate or educated guess, it is not a promise.  Your sentence could be different.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  I'm not required to sentence within the applicable range.  I usually do, but I have the authority to sentence you within, below, or above that range, so long as I don't go above the statutory maximum.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  And even though you can't predict the specific penalty at this time, do you still wish to plead guilty?

MR. REYNA:  Yes, sir.

THE COURT: Okay. All right. There is a written plea agreement in this case.

Mr. Goldman, it appears to proceed under subsections (a) and (b) of Rule 11(c)(1); is that correct?

MR. GOLDMAN: That's correct, Your Honor.

MR. WILLIAMS: That's correct.

THE COURT: Can you please state the essential terms of the plea agreement?

MR. GOLDMAN: Yes, Your Honor. Pursuant to those sections of the Federal Rules of Criminal Procedure, the Defendant agrees to plead guilty to Count 2 of the indictment. In exchange, the United States will not oppose the Defendant's request for acceptance of responsibility. The United States will also dismiss the remaining counts or counts against this Defendant at the time of sentencing. The Defendant also waives his right to appeal and collaterally attack his conviction.

THE COURT: All right.

Mr. Williams, are those the essential terms of the plea agreement?

MR. WILLIAMS: Yes, Your Honor.

THE COURT: And did you convey all formal offers by the Government to your client?

MR. WILLIAMS: Yes, Your Honor.

THE COURT: All right.

Mr. Reyna, did you read and discuss the plea

agreement with your attorney?

MR. REYNA:  Yes, sir.

THE COURT:  Is everything that you've agreed to with the Government and every promise that the Government's made to you set out in writing in that agreement?

MR. REYNA:  Yes, sir.

THE COURT:  Are you comfortable that you understand everything in the plea agreement?

MR. REYNA:  Yes, sir.

THE COURT:  Has anyone made any promise or assurance to you that is not in the plea agreement?

MR. REYNA:  No, sir.

THE COURT:  All right.  And has anyone threatened you in any way to accept this plea agreement.

MR. REYNA:  No, sir.

THE COURT:  Okay.  As part of your plea agreement, do you understand that you and the Government have agreed that certain other charges -- counts against you will be dismissed?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Because your plea agreement has that promise by the Government, it is up to me to decide whether to accept the plea agreement, reject it, or to defer a decision until the presentence investigation is complete.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  If I do accept the plea agreement, I can still consider the conduct that forms the basis of those other counts when later deciding your sentence, and that could make your sentence more severe.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  And if I decide not to follow the terms of the plea agreement, I would inform you and the Government of that fact and I would then give you an opportunity to withdraw your guilty plea and change it to not guilty.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  And if in that circumstance you did withdraw your guilty plea, you'd have the option to proceed to trial on a plea of not guilty or to negotiate a plea agreement that I might find more acceptable.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  But if you elected not to withdraw your guilty plea your sentence could be more severe than what was in your plea agreement, do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  Okay.  Do you understand that the Government is also agreeing to make certain recommendations -- or actually not to oppose certain requests that you will make as to acceptance or responsibility?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  I do not have to follow that request.  I can impose whatever sentence I determine is just.  Do you understand?

MR. REYNA:  Yes, sir.

THE COURT:  And do you understand that if I decide not to follow your attorney's request, you'll not be able to withdraw your guilty plea?

MR. REYNA:  Yes, sir.

THE COURT:  Okay.  All right.  As I have explained earlier you have the right to appeal unless you waive or give up that right.  Do you understand that you're agreeing to give up and waive your right to appeal or to otherwise challenge your conviction and sentence except for certain limited circumstances in your plea agreement itself?

MR. REYNA:  Yes, sir.

THE COURT:  Do you understand that this basically means that you can't later challenge the result in this case, not even the sentence, except in the limited circumstances in your plea agreement?

MR. REYNA:  Yes, sir.

THE COURT:  And do you understand that the Government is not giving up its own right to appeal?

MR. REYNA:  Yes, sir.

THE COURT:  All right.

Mr. Williams, do you know of any reason why your

client shouldn't plead guilty today?

MR. WILLIAMS:  No, sir.

THE COURT:  Do you know of any meritorious defenses that he would have to the charges against him?

MR. WILLIAMS:  No, sir.

THE COURT:  Are there any additional admonishments that I should cover?

MR. WILLIAMS:  No, sir.

THE COURT:  Mr. Goldman, is there anything else that I should cover?

MR. GOLDMAN:  Nothing, Your Honor.

THE COURT:  All right.

Mr. Reyna, how do you plead to the charge in Count 2 against you, guilty or not guilty?

MR. REYNA:  Guilty, Your Honor.

THE COURT:  Do you state here in court under oath that every allegation against you in the indictment as to Count 2 and that everything that the Government's lawyer said about you a few minutes ago is true and correct?

MR. REYNA:  Yes, sir.

THE COURT:  Are you making this plea of guilty to the charge against you voluntarily and of your own free will?

MR. REYNA:  Yes, sir.

THE COURT:  Has anyone attempted in any way to force you to plead guilty, or threatened you or any other person to

get you to plead guilty?

MR. REYNA:  No, sir.

THE COURT:  Has anyone made any promise or assurance of any kind to get you to plead guilty other than what is in your plea agreement?

MR. REYNA:  No, sir.

THE COURT:  Are you pleading guilty because you are guilty and for no other reason?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Are you ready to sign the plea agreement at this time?

MR. REYNA:  Yes, sir.

THE COURT:  All right.  Please do so if that's your wish.  All right.  Thank you.  All right.

The Court finds as follows:  The Defendant is competent and capable of entering an informed plea.  He understands the nature of these proceedings and understands the penalties and consequences for his plea of guilty.  The plea is supported by independent facts establishing each of the essential elements of the offense charged by the Government, and the Defendant intended to do those acts.  He's made an informed plea of guilty.  That plea was voluntary and knowingly made.  Giving these findings, I accept the Defendant's plea of guilty, and he is now judged guilty of the offense charged by Count 2 of the indictment.

As to the written plea agreement, I'll defer a decision on whether to accept it until after the presentence investigation that has been signed by everyone.  My case manager will countersign it and docket it on the record.

Let me go over a couple of things that will now occur before sentencing, Mr. Reyna.  The probation office will now prepare a presentence report to assist me in sentencing.  A probation officer will interview you about the facts of this case.  Your attorney can be present if you wish.  You can also submit any additional information that you'd like.  The information in the presentence report can be about your prior criminal history, relevant conduct related to your crime, and other factors that can affect your sentencing guideline range. Your degree of cooperation can be a factor in the severity of your sentence.  Do you understand?

You and your attorney will be permitted to read the presentence report well before the sentencing hearing.  You'll have the opportunity to object or offer corrections to that report.  I'll eventually get all of that information, the presentence report, any objections, or comments that you or the Government make and the probation office's response.  I'll read all of that, and then everyone comes back to my courtroom for a sentencing hearing.  Do you understand the presentence investigation process as I've just described it?

MR. REYNA:  Yes, sir.

THE COURT: All right. I set this matter for a sentencing hearing in my courtroom on October 31st, 2024, at 1:30 p.m. I'll enter a scheduling order with that date along with deadlines for the presentence report.

Mr. Reyna, you and your attorney will have the opportunity to speak on your behalf at the hearing. If there are any victims of your offense who wish to be heard, they will also have the opportunity to be heard. Do you have any questions about what we've done here today?

MR. REYNA: No, sir.

THE COURT: All right. The Defendant is remanded to custody. And I will see everyone back for the sentencing hearing.

Mr. Goldman, anything further from the Government?

MR. GOLDMAN: Nothing further.

THE COURT: Mr. Williams?

MR. WILLIAMS: No, sir.

THE COURT: Thank you for your service on this case, sir.

MR. WILLIAMS: Thank you, Your Honor. May I be excused?

THE COURT: Yes, you may be. I'm going to stay up here for a second if -- the marshals, if you'd like to escort Mr. Reyna, you can take him for us. Thank you.

CLERK: (Indiscernible).

MR. GOLDMAN:  Yes.  Oh, thank you.

CLERK:  A copy of the order.  You get it as well.

MR. WILLIAMS:  Thank you.

MR. GOLDMAN:  Thank you.

MR. REYNA:  Can you call my sister?

MR. WILLIAMS:  (Indiscernible).

MR. REYNA:  Thank you, Your Honor.

THE COURT:  Thank you.  I will see you in October, sir.

MR. WILLIAMS:  See you.

THE COURT:  You're doing the right thing.  I commend you for it.  Acceptance, responsibility.  I'll be looking at all of that, and I'll be looking closely at your presentence report, okay?

MR. REYNA:  Yeah.

THE COURT:  All right.  Thank you.

Mr. Goldman, is there anything that I can address with you in the absence of anyone else, or do I just simply need to call another status conference?

MR. GOLDMAN:  I'm wondering if -- I'm not sure if I'm allowed to speak without Mr. Buckley's presence, just as a matter of procedure.

THE COURT:  Yeah.

MR. GOLDMAN:  But I think there are --

THE COURT:  I would like to set up another --

MR. GOLDMAN:  -- certain matters.

THE COURT:  -- status conference.

MR. GOLDMAN:  Yeah.

THE COURT:  Perhaps for -- I know that we have a pretrial conference even coming up tomorrow.  If I set something tomorrow, confer with him, would you be able to be back here tomorrow?

MR. GOLDMAN:  I will be here 24/7, Your Honor.

THE COURT:  Assuming.

MR. WILLIAMS:  I've known Sean a long time, and you know, he lives in Mississippi.

THE COURT:  I do know.  I do it by Zoom.

MR. WILLIAMS:  Okay.  I was just going to suggest -- but I had a question, I assume I am excused from the (indiscernible).

THE COURT:  You are excused.  And thank you very much.  No, no.  It's going to be on 651 -- a different number.  All right.  So then, my case manager will contact counsel, and we will arrange a status conference for some time tomorrow.

MR. GOLDMAN:  Yes, Your Honor.  Perfect.

THE COURT:  Okay.  Thank you all very much.

MR. GOLDMAN:  Thank you, Your Honor.

(Hearing adjourned at 4:09 PM)

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Sonya M. Ledanski Hyde*

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  October 23, 2025