IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| USA | § | CASE NO. 4:17-cr-651-18 |
| | § | HOUSTON, TX |
| VERSUS | § | THURSDAY, |
| | § | JANUARY 11, 2024 |
| MONTES et al | § | 2:14 TO 3:07 PM |

<u>MOTION HEARING</u>

BEFORE THE HONORABLE CHARLES R. ESKRIDGE III
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

FOR THE PARTIES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: MAYRA M. MARQUEZ

COURT CLERK:                    JENELLE GONZALEZ

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

                                    APPEARANCES:

FOR THE PLAINTIFF:                  DEPARTMENT OF JUSTICE
                                    UNITED STATES ATTORNEY FOR THE
                                    SOUTHERN DISTRICT OF TEXAS
                                    Adam Goldman
                                    1000 Louisiana Street
                                    27th Floor
                                    Houston, Texas 77208
                                    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

FOR HECTOR REYNA:                   HILDER & ASSOCIATES P.C.
                                    Quentin Tate Williams
                                    819 Lovett Boulevard
                                    Houston, TX 77006
                                    713-655-9111

FOR WILLIAM ALBERTO LOPEZ:          LAW OFFICES OF SEAH BUCKLEY PLLC
                                    Sean Buckley
                                    175 Main Street
                                    Biloxi, MS 39530
                                    228-933-4411

HOUSTON, TEXAS; THURSDAY, JANUARY 11, 2024; 2:14 PM

CLERK:  All rise.  United States District Court for the Southern District of Texas is now in session.  The Honorable Charles Eskridge presiding.  God save these United States and this Honorable Court.

THE COURT:  Thank you.  Everyone, please be seated.  All right.  I call for motion hearing criminal cause 17-651, United States v. Freddy Montes et al.  Can I get appearance of counsel, please?

MR. GOLDMAN:  Yes.  Good afternoon, Your Honor.  Adam Goldman for the United States.

MR. BUCKLEY:  Good afternoon, Your Honor.  Sean Buckley for William Alberto Lopez.

THE COURT:  Thank you.

MR. WILLIAMS:  Tate Williams for Hector Reyna.

THE COURT:  I'm sorry.  That was where?

MR. WILLIAMS:  Tate Williams for --

THE COURT:  Tate.

MR. WILLIAMS:  -- Hector Reyna, Your Honor.

THE COURT:  Okay.  Thank you.  All right.  And I see that Mr. Lopez is here, is that correct?

MR. BUCKLEY:  He is, Your Honor.

THE COURT:  All right.  Welcome, sir.  And Mr. Reyna is currently -- is he in the hospital?  Is that right?

MR. WILLIAMS:  That's my understanding, Your Honor.

THE COURT:  Okay.

MR. WILLIAMS:  From the marshal's service.

THE COURT:  Right.  So we have a number of motions going forward.  I know that he has -- Mr. Reyna has separately opposed motions.  One to dismiss and one for bond which we won't be addressing here today.

I have a number of other motions coming up on things. Continuance and some evidentiary matters towards trial.  I think most of them are jointly filed.  I don't think his presence is required here for any of those.

MR. WILLIAMS:  Not --

THE COURT:  You can let me know as we go along if you've got any concerns, but.

MR. WILLIAMS:  My understanding if it's a matter of a conference or something it'd be purely a question of law.  His presence is not required under the rules.

THE COURT:  Okay.  That's what I think.  And so as I take up each of these motions, if there's any concern in that regard, just let me know.

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  And we'll figure out what to do with it, okay?

MR. WILLIAMS:  Yes.

THE COURT:  All right.  So I think a lot of the matters have been cleared up and are -- there isn't -- you all

tell me if I'm wrong.  The extent to which on the motions, there's a lot of dispute left.

The thing that was the lengthiest in the briefing was the motion for production of interview reports.  And there have been two filings by the government about what has been produced, and then a supplement, or what was going to be produced.  And then it looks like a lot of stuff has been produced.

So what's our update there?  And what is left open as to that motion, if anything?  And it's the defense counsel's motion, but why don't you let me know what you've done?  And then I can hear from them about what concerns they might still have.

MR. GOLDMAN:  Thank you, Your Honor.  I apologize for jumping the gun here.  But so we've had a lot of conferences with counsel.  And what we've decided is out an abundance of cautious -- caution, because previously, there was a discovery coordinator for the CJA appointed attorneys.

And rather than trying to figure out what was turned over and what was not turned over, what we've done over the last week is we've gotten all of the 302s on a separate CD.  We then got all of the interview notes, again on a separate CD.  And we basically combined them.  We're organizing them for counsel to review.  So we basically took what was -- they --

THE COURT:  And that's going to be turned over or

that has been turned over?

MR. GOLDMAN:  That -- that is -- the newer version is going to be turned over.  There was an issue with the protective order.  I was under the impression one was filed, but apparently one was not.

THE COURT:  Okay.

MR. GOLDMAN:  So we want to get that protective order issued.

THE COURT:  Do I have one before me now?

MR. GOLDMAN:  I filed one today, Your Honor.

THE COURT:  Okay.

MR. GOLDMAN:  Right when we discovered this was an issue.  But our goal and all of the -- is the protective order.  We do have a concern about some of the information, even with a protective order, that we wanted to make sure is redacted.  Specifically, the current addresses of a lot of these witnesses.  That is sort of our main concern.

So that is going to be finished up, we hope, by the end of the week.  And we're --

THE COURT:  And that is -- and that is just simply a redaction --

MR. GOLDMAN:  Yes.

THE COURT:  I mean they will be turned over in redacted form as to that material.  The --

MR. GOLDMAN:  Correct, Your Honor.

THE COURT:  Okay.

MR. GOLDMAN:  Yeah.  And then --

THE COURT:  And --

MR. GOLDMAN:  And I've told counsel, we are on --

THE COURT:  I was going to say, we're here on Thursday.  And so you're -- I think you're referencing end of the week.  I mean, do you mean tomorrow or do you mean more time then?

MR. GOLDMAN:  If I can check with my colleague --

THE COURT:  Okay.

MR. GOLDMAN:  -- (Indiscernible), our paralegal, she --

THE COURT:  Okay.

MR. GOLDMAN:  -- she's head -- she's in charge -- I don't want to say she's in charge, but she's doing a lot of the leg work on this.

THE COURT:  Okay.

MR. GOLDMAN:  Can she have until next Tuesday, Your Honor?  She said she'll have it done by tomorrow but I want to just give her a break so she's not too much under the gun.

THE COURT:  Tuesday seems fine.  We have an unopposed motion ultimately for continuance.  And so we're going to be setting a schedule, is that correct?  That --

MR. BUCKLEY:  That's --

THE COURT:  -- trial remains to be set.  Mr.

Williams.

MR. WILLIAMS:  I have a couple of things I think we need to clarify about what's going to be turned over.  But as far as the timing goes, next Tuesday or Wednesday is fine.  Although, I will suggest since we're about to have a hard freeze and bad weather, and knowing how Houston ordinarily reacts to that, we may want to give her a little more cushion.

THE COURT:  Tuesday but reasonable extension if necessary.

MR. GOLDMAN:  Yes.

THE COURT:  And I will note as to that, I'm leaving for Indianapolis tomorrow, and will be there through the weekend.  So it's like one of the worst timed trips ever.  I'm almost hoping that the plane gets grounded.  So we'll see.  All right.  And anything on else on that?  And then let me hear it.

MR. GOLDMAN:  I think there was.  I know there was some -- we had some sort of harsh language on our motion practice, Your Honor, on that issue.

I think one of the confusion was we thought they were referring to some of the victim statements.  And we've spoken -- the main issue was more recent cooperating defendant -- co-defendant statements that have that have come into existence after the initial discovery.

THE COURT:  Okay.

MR. GOLDMAN:  That is part of the 302s and all the

stuff being turned over.  So that'll be part of everything being provided to counsel.  And if there are any new 302s down the road, we will be sure to provide those once they are created.

THE COURT:  Okay.  And from defense counsel.  What thoughts?

MR. BUCKLEY:  Yes, Your Honor.  Mr. Goldman's explanation to the Court is satisfactory to us.  I believe it does resolve the issues.  We -- I would also mention that Mr. Goldman and I have discussed, and he alluded to this, to the Court.

That there is a -- kind of an overall discovery review being conducted because a number of things were sent to the CJA coordinator of discovery.  I may be the only lawyer in this case who is retained.  And I do not have access to the CJA coordinators services.

I think that -- I don't know why that is, but early on in this case, that --

THE COURT:  Okay.

MR. BUCKLEY:  -- was the issue.  So anyway.  Mr. Goldman and I over the last couple of weeks have discussed just doing an audit, a cross check, to make sure that nothing slipped through the cracks.

He has assured me that that's being done, and that it will be done.  I have no reason to question that.  That's the

only other matter that I would bring to Your Honor's attention that is underway.

THE COURT:  Okay.  And Mr. Williams, anything else to add?

MR. WILLIAMS:  Judge, a couple of things I just wanted to clarify on the record.  First, is that -- and I think I may have misunderstood this.  Are we not going to be provided the addresses of the witnesses?  Because we do have a duty to investigate the case, which might mean contacting them.  Or do you mean they're going to be -- they should be redacted from what anyone else views?

MR. GOLDMAN:  Your Honor, it's my -- this is for the sex trafficking victims.  It's my understanding -- and we've never turned over current addresses --

THE COURT:  For the victims themselves.

MR. GOLDMAN:  -- of the victims themselves.

THE COURT:  Okay.

MR. GOLDMAN:  Those are the addresses at issue.

THE COURT:  All right.  What about other -- any other witnesses?

MR. GOLDMAN:  Your Honor, I believe those have not been redacted, is my understanding.  It is just for the sex trafficking victims.

THE COURT:  Sex traffic -- the complaining victims, that would be redacted, but not as to other witnesses.

MR. GOLDMAN:  That is my understanding.  Yes, Your Honor.

THE COURT:  So -- okay.  So now with that.

MR. WILLIAMS:  So I -- I take issue with that.  I object to that because Judge, we have a duty to investigate a case.  We can be found ineffective.

In the event that we want to talk to a witness who's testifying against our client, we have to have their information to do that, either ourselves or with an investigator.  Whether they choose to talk to us or not is certainly their decision, but secreting that information --

THE COURT:  There's a difference between having their address, and having contact information by which to perhaps, arrange a meeting with them.  But I can't sit here and say, well, your duty means that you get to know where they live.

Tell me why you get to know where they live, as opposed to effectuating your duty to your client, which is to simply talk with them.  That has nothing to do with where they live.

MR. WILLIAMS:  My experience as a defense attorney, Your Honor, has often been that people don't answer their phones from strange numbers.  In which case sometimes you have to have an investigator knock doors and try to talk to people.  Just like the police do, and our clients don't.

When the police do an investigation, and they don't

answer a phone, they show up in pairs.  Okay.  So you know, equal protection, it means a lot of different things to a lot of different people.  But in this instance, in order for us to have an opportunity to interview witnesses, we have to know where they are.

I'm not going to give that information to my client, which goes towards my second thing.  And I understand redacting it from them, but whether it's -- if it's redacted off a form, fine.  If they want to provide it separately to us, a means to contact them.

THE COURT:  Right.  So --

MR. WILLIAMS:  We may reach out to them and they say, I don't want to talk to you, and that's the end of the discussion.

THE COURT:  And my order is going to be, just so that it's clear, if there's a redaction issue that's left over, this material is to be turned over.  You have it ready to go, or you will have it ready to go, in this proposed redacted form.

It's without prejudice to bringing a specific motion about, hey, we actually need this contact information.

MR. WILLIAMS:  Okay.

THE COURT:  So I'm not foreclosing that, but I do want to get things moving so that you've got most of the material that you're wanting to look at.  In terms of the concern about -- I understand the concern about where to live

-- where they live.

What's your practice and usual experience about arranging contact with the victim to see if they're interested in speaking with counsel for the defense side?

MR. GOLDMAN:  Well I can first inform the Court that they have -- they have told us that they are not interested in talking to counsel.  But that's all -- I can only make my representation based on --

THE COURT:  I understand.

MR. GOLDMAN:  -- our talks with them.  But as far -- in my practice and my experience for sex trafficking victims, the addresses are not turned over.

THE COURT:  Okay.  All right.  All right.  I hear your concern.  And I don't know where it's going to go.  So what other -- what contact information will they have, if any?

MR. GOLDMAN:  Your Honor, so what is -- most of the address information on these documents is rather old, because of the age of the case as the Court is aware of.

But for some of them, I believe for a couple, there is current address information, date of birth information, and Social Security information.

THE COURT:  Okay.

MR. GOLDMAN:  Those are the -- those are sort of the three areas that I have -- that we've focused on redacting. It's address, date of birth.  And I understand it's an issue

for one defendant, and Mr. William's client.  And social.

THE COURT:  Well and so, then what about -- that's address.  What about -- are telephone numbers listed or email addresses listed?  And if so, are they redacted?

MR. GOLDMAN:  I don't -- my understanding for these victims, Your Honor, is that there is no email address on them.

THE COURT:  Okay.

MR. GOLDMAN:  And no telephone number on them.

THE COURT:  And no telephone.

MR. GOLDMAN:  Yes.

THE COURT:  Okay.  All right.  So that information is going to be turned over.  I don't have briefing on -- before me on this issue.  And I've --

MR. WILLIAMS:  I can address that at a separate motion, Your Honor.

THE COURT:  And I'm fine to take that as a --

MR. WILLIAMS:  Very well.

THE COURT:  -- you know, you can tell me why.  I understand what you're saying, but I would need to see some authority in the context of a sex trafficking case that you get that information.

MR. WILLIAMS:  I don't think the rules are different for a sex trafficking as a matter of law.

THE COURT:  Okay.

MR. WILLIAMS:  But we can address that in a written

work product at a later time.  Secondary to that, is that -- and just -- I just want to be clear that even with that information redacted, I understand I'm not going to give, i.e., to keep, copies of reports to my client in custody or otherwise.

But I want to make clear that I can hand it to him with certain information redacted for him to review in my presence during a meeting.  You know, at Joe Corley or wherever he happens --

THE COURT:  Like literally you have some information printed.  Whatever -- I don't know what this information is.  You haven't seen it yet.  But what you're saying is, you'll have printed out copies, and you're wondering whether you can just directly show it to your client.

MR. WILLIAMS:  Other -- yes, Your Honor.

THE COURT:  Okay.

MR. WILLIAMS:  Otherwise, I have to sit there and just read things out loud for an inordinate amount of time.

THE COURT:  No, I got it.  Mr. Goldman, what's the --

MR. GOLDMAN:  Our position is that regarding the big redaction, sort of everything regarding personal information, emails, and all that.  For those -- if he wants to show it to his client for that information, we want all that stuff redacted.  Just the initials of the clients -- or the names of the victim.  Sorry.

THE COURT:  So I'm sorry.  You're redacting address information, et cetera --

MR. GOLDMAN:  Yeah.

THE COURT:  -- as we just discussed.  And so now of what you're planning to turn over to counsel, envision that it's printed out in hard copy.  And now he's sitting there ready to talk with his client.  Is that in a form that he can or cannot directly show?

MR. GOLDMAN:  It'll be in a form that he can share.

THE COURT:  Okay.

MR. GOLDMAN:  Yeah.

THE COURT:  And -- okay.

MR. GOLDMAN:  And a --

THE COURT:  So whatever is redact -- anything that you have sensitivity about in terms of redaction, will have been redacted.  But he can otherwise show it to his client, but he just can't leave it with his client.

MR. GOLDMAN:  That is correct, Your Honor.

THE COURT:  All right.

MR. WILLIAMS:  That's acceptable.

THE COURT:  All right.

MR. WILLIAMS:  All right.

THE COURT:  Okay.  So the complexity on this is there's a motion whereas there are some -- there's legal briefing on this motion for production of interview reports.

But it contains factual assertions that the government has disagreed with, and taken issue with.

But the government has turned over, and is turning over, what it believes to be all the responsive motion -- information.  And so I'm wondering what, if anything, we need entered to dispose of the motion, whether it's a grant, or how much I need to specify as to that.

Because I really don't feel like it's worth my time resolving the procedural discussions that you all have had.  And so I could terminate it as moot.  And after you look at it, you can obviously always bring another motion to compel and things like that.  But what do you have in mind?

MR. BUCKLEY:  Your Honor, I have -- speaking only for myself, I have no opposition to it being terminated as moot, subject to the understanding that we have on the record.

I don't know if Mr. Williams had a different opinion, but it appears that we have resolved the matter that Your Honor has set expectations for production.  That there have been commitments from the government.  I don't think that the factual disputes really are material --

THE COURT:  Right.

MR. BUCKLEY:  -- at this point.

THE COURT:  Okay.  Mr. Williams.

MR. WILLIAMS:  I have a different suggestion.  I would suggest that we hold it in abeyance until after

compliance. And then we send a letter to the Court stating that it's moot.

MR. BUCKLEY: We would have no objection with that, Your Honor.

THE COURT: Mr. Goldman.

MR. GOLDMAN: Your Honor, I --

THE COURT: I think it's kind of the same either way.

MR. GOLDMAN: I think it's the same either way. Yes, Your Honor.

THE COURT: And just always -- then somebody has to actually follow up and make sure we close that loop. Otherwise, the motion stays open, but we'll --

MR. BUCKLEY: I think the Court would -- I hope the Court would just see from the docket sheet that no one here has a problem with writing things.

THE COURT: Okay. All right. I will hold the motion in abeyance pending review of the materials by defense counsel. Who should inform me of their position as to whether it can be -- because what it's going to be is -- let me withdraw what I was just saying.

What it's going to be in that context, is not still the same motion. It's going to be you coming back to me to say, you know, we still think that there's this other category. And so I think that it's going to -- you're going to have to put something in front of me in writing, which I think will be

a new motion.

MR. WILLIAMS:  Well in a perfect world, yes.  The question is, so depending on what happens, so if we get the material that exists as of this point in time, say we get it next week.

Then we should be able to send something to Your Honor next Friday, for example, that says Your Honor, we believe that the motion is moot.  Okay.  We've gotten compliance as for what was put on the record.

However, that leaves open potential other problems.  So for example, if new material becomes available between now and whatever future trial date we ultimately know.  And so that -- there is a concern there because trial preparation does not stop like a stopwatch today.

THE COURT:  Totally agree.

MR. WILLIAMS:  And our issue was not the materials that I received from predecessor counsel who got them umpteen years ago through the coordinating.  I'm the second lawyer for Mr. Reyna.  It's the cooperating co-defendants who are now on the witness list that was filed.

THE COURT:  I understand.

MR. WILLIAMS:  And so those statements we've never -- even though -- assuming that they were debriefed prior to or subsequent to their plea, and will be again in trial preparation.  We believe that those --

THE COURT: I guess I'll put it this way.

MR. WILLIAMS: Yeah. See --

THE COURT: You've not --

MR. WILLIAMS: -- the problem is a rolling basis.

THE COURT: Right. And you've not been before me on a continuing basis to know that, while you all are filing a lot of things, I'm also fine for you to file more things. And discovery items like this having to do with witnesses, documents, et cetera, in a criminal case.

It is an ongoing conversation where I will be getting further -- I never consider really the motion -- the document production to be at an end.

MR. WILLIAMS: Okay.

THE COURT: There's a continuing obligation. And when you have concerns that we've read this document, and it references this other document that I don't think we have, you're going to bring a motion about that. And I'm going to talk with Mr. Goldman about, okay, what is that? Why hasn't it been turned over? And I've got no problem with that.

So here's what I'm going to do. I am going to -- my minute entry is going to reflect that the government's two response motions have indicated that it has made, and will be making productions by next Tuesday. The motion for production of interview reports is thus terminated.

I'm actually going to say it is denied as moot on

that basis without prejudice to filing any further motion for production of interview reports as counsel deems necessary after review.

MR. WILLIAMS:  Very well.

THE COURT:  Okay.  All right.  And I have -- for everything else, I don't have any particular order for what I've got before me.  So let me just take them up one at a time. Some of these are unopposed.

There's a motion for leave to file additional motions as necessary, which the government says that's fine so long as it can do the same thing.  That's granted.  And that was docket 730.  Docket 737.  Okay.

So this -- 737 is the government's unopposed motion for at least a three-to-four-week continuance.  And waiver of speedy trial time, which includes a reference towards the end that defendants are unopposed to the motion.  I would just like to confirm that on the record.

MR. BUCKLEY:  That's correct, Your Honor. Particularly, in light of some of these new productions that are coming out.  And especially in light of the ongoing efforts to receive immigration A files, which none of us have yet, which may be critical.  We certainly not only oppose it, but I'm supportive.

THE COURT:  Okay.

MR. WILLIAMS:  I concur.

THE COURT:  Okay.  All right.  So the motion is going to -- for continuance is going to be granted.  It is granted. Let's leave for our last thing on our agenda, then getting out calendars and looking for what the trial date is going to be. So we'll take --

MR. GOLDMAN:  Your Honor, if I may.

THE COURT:  Yeah.  Because --

MR. GOLDMAN:  I hate to --

THE COURT:  -- I just want to make sure we've covered everything else so I have it in mind before we start talking about schedules.

MR. GOLDMAN:  Just going back to the discovery motion, regarding our response.  And since counsel brought up the A files.

THE COURT:  Yes.

MR. GOLDMAN:  Yeah.  I'm not sure if that should be handled as part of that motion or separately, but I think we're -- we all sort of want that order filed.

I think as the Court could tell, this has been sort of an ongoing intergovernmental problem between our office and a certain agency.  And a court order would obviously resolve that for all counsels and the Court's benefit.

THE COURT:  Yes.  And so I had -- and so that was the supple -- I guess that was the supplement.  Yes.  Your supplement at 743 attached a proposed order in that regard.

And just to be clear, is the docket -- document that was also filed, an order that was filed at Docket 747, is that the same order?

MR. GOLDMAN:  I believe it is, Your Honor.  Yes.  Yes.  The reason for the change, Your Honor, is the first one had the wrong caption.  I have two cases -- two big cases before Your Honor.

THE COURT:  Yeah.  I'm looking at it now.

MR. GOLDMAN:  Yeah.

THE COURT:  You're right.  It's got different.

MR. GOLDMAN:  Yeah.

THE COURT:  Okay.  So the order at -- so that -- that was a supplement, but it's requesting entry of this order that's been revised at Docket 747.  That's -- that order will be entered.

MR. GOLDMAN:  Thank you, Your Honor.

THE COURT:  And then what does that allow you to do?

MR. GOLDMAN:  So Your Honor, this is -- this is -- and you'll probably see this in the future.  With A files, we believe the United States Attorney's Office, or the United States, believes that the law is clear that disclosure of those A files is allowed for law enforcement purposes, which obviously -- we think obviously includes criminal discovery.

There are certain employees, not attorneys, at a particular subset of the Department of Homeland Security that,

I'll just say don't understand that.  I'm trying to be -- use my language carefully.  And this has happened in other cases.

As a result, myself and other colleagues have drafted motion --

THE COURT:  Okay.

MR. GOLDMAN:  -- or drafted motions similar to this. So when they see a district court judge saying turn it over, they kind of cut the -- I don't want to call it nonsense, but cut the semantics and get it to us.

THE COURT:  And just -- yes.  Because then it's a judge saying it and not just you.

MR. GOLDMAN:  Yes, Your Honor.

THE COURT:  Okay.  All right.  Diplomatically stated.

MR. GOLDMAN:  Thank you.

THE COURT:  All right.  So that was -- we'll come back to 737.  All right.  Docket 738 is the motion to admit Rule 12(b)(C) evidence.  And this is a motion that is brought by Mr. Lopez, correct?

MR. BUCKLEY:  That's correct, Your Honor.

THE COURT:  All right.  Go ahead.

MR. BUCKLEY:  Your Honor, first of all for context because I know the Court is --

THE COURT:  Actually, let me ask this because I may be able to cut through it.

MR. BUCKLEY:  Yes, Judge.

THE COURT:  I have dealt with this rule relatively recently.  And in line with what I just sort of said about, you know, the conversation about this goes on in terms of the case.  But your order, even as you ask for your order, it's for me to admit it if and when the trial record demonstrates that such evidence is constitutionally required, but with advanced permission from the Court.

So you're essentially saying, I'm not planning to talk about it, Judge.  But when it's constitutionally required, I'll let you know, and you'll allow me to get into it.

MR. BUCKLEY:  That's correct.  And --

THE COURT:  Okay.

MR. BUCKLEY:  -- and there -- yes.

THE COURT:  And I don't have a context for any of the information -- specific information that's at issue.  As that relief is phrased, I don't think that I have a problem with it.  But I'm not in a position -- but I'm not going to enter an order saying that right now.  Because I don't want you to feel like you have free reign to say something in front of the jury without talking to me about it.

MR. BUCKLEY:  Fair enough, Judge.

THE COURT:  And so I understand that there's going to be this evidence.  That there -- that there's a background in the case that you all have both briefed to me.  And I understand the nature of what this case is.

And depending on the testimony, and depending on what happens, you all may talk with me sidebar and say, well, he or she just said this.  And so I have this information, and I now need to be able to go into it.  And I'll have a context on which to rule on that.

But right now I just -- right now, I'm sort of like, I'm very strict about Rule 412.  But that's never a final ruling.  It depends on what happens in trial.

MR. BUCKLEY:  And I agree.  Absolutely, Your Honor. And I think the reason I filed it the way I did, when I did, and how I did, was that I didn't want to waive a claim under 412.  And there -- there is a --

THE COURT:  All right.

MR. BUCKLEY:  I mean there's -- under the provision I cited, it does seem to be kind of an override under the right circumstances.  But I wanted to telegraph to Your Honor that it --

THE COURT:  All right.

MR. BUCKLEY:  -- could be coming and not be --

THE COURT:  I got it.

MR. BUCKLEY:  You know, I --

THE COURT:  Well you're certainly not -- you know, I speak into the microphone so that those upstairs hear it later. You're not waiving any argument about that.  And you're -- but I'm telling you that you're going to need to bring it to my

attention with -- you know, as it's going on with a witness in trial.

Or if you know that there's information that you want to use with -- I mean specific information that you will want to use with the witness that you want to discuss with me in advance of that witness, we can have a hearing on that.  But you'd have to give me the briefing on that.

MR. BUCKLEY:  Yes, Your Honor.

THE COURT:  Okay.

MR. BUCKLEY:  And I'll commit to the Court now that I would not bring it, say it, allude to it.

THE COURT:  I didn't think that you were doing it in that regard.

MR. BUCKLEY:  Right.  Okay.

THE COURT:  But Mr. Goldman, is there anything that I said on that that contradicts with the way that you think it's going to go forward, or that causes concern about how we're going to handle it later?

MR. GOLDMAN:  No, Your Honor.  Just as long as we, I guess, broach the subject with Your Honor before it goes before the jury.

THE COURT:  Yes.

MR. GOLDMAN:  I think we're fine with that.

THE COURT:  All right.  So I'm denying the motion.  It's without prejudice to bringing to my attention whatever is

necessary to preserve any rights as to the Rule 412 evidence. Particularly with respect to what's constitutionally required in that regard for him to mount his defense.

MR. BUCKLEY:  Thank you, Your Honor.  Understood.

THE COURT:  Okay.  All right.  There is an unopposed motion to amend the indictment to correct clerical error.  I have not studied into that closely, but I am noting that it is -- it's several pages long, but that it is unopposed.

As to the -- I just want to confirm, amending the indictment to correct this clerical error is not a problem for either of the defendants.

MR. BUCKLEY:  No objection for us, Your Honor.

MR. WILLIAMS:  No, Your Honor.

THE COURT:  All right.  That motion is granted.  Is the motion sufficient, or does anything else happen to the indictment?

MR. GOLDMAN:  I think that the -- an order is sufficient, Your Honor.  Before -- I've had this issue with Judge Hughes and Judge Bennett, and they've just signed the order.

THE COURT:  All right.

MR. GOLDMAN:  And then when we --

THE COURT:  That's fine.  I will sign the order and anything else.  It's up to you if anything else needs to have been done.

MR. GOLDMAN:  I think that's all that has happened, Your Honor.

THE COURT:  Okay.  All right.  So apart from now talking about what dates for trial.  But I have a -- let's see.  Docket 756.  Unopposed motion to disclose discoverable material pursuant to protective order.  That's at docket 756, and it was just filed.  Is that what we just addressed?

MR. GOLDMAN:  That is, Your Honor.  Yes.

THE COURT:  And so -- and was that -- so this is docket -- document 756, but it was the order at 747 that so orders it, is that right?

MR. GOLDMAN:  No.  There are two separate orders, Your Honor.  The 747 is about the A file information.

THE COURT:  Right.

MR. GOLDMAN:  The other one is about the protective order that I think we thought was filed, but actually was not filed previously.

THE COURT:  This is the protective order --

MR. GOLDMAN:  Yes.

THE COURT:  -- motion itself.  Got it.  Okay.  756 is granted, and that order will be entered.  Okay.  Anything else?  And then we'll turn to trial schedule.

MR. GOLDMAN:  Nothing from the government, Your Honor.

MR. BUCKLEY:  Nothing from Mr. Lopez, Your Honor.

MR. WILLIAMS:  Nothing from Mr. Reyna, Your Honor.

THE COURT:  All right.  And so I'll start with you all's perspective.  You have materials to look at.  There's going to be some other material that's turned over.

And I think that we can come in here, at least with the motion being three to four weeks.  I'm thinking that I'm hearing that you all might want more than that.  And so I'm happy to accommodate whatever you need, but have you all talked about when to zero in on here?

MR. BUCKLEY:  We've spoken generally, Your Honor.  It's hard for me to come out with a date knowing whether my date might sound offensive to everybody.  But my thought, I don't know if I can easily do this without moving a bunch of stuff until June.  I don't know if that's in line with anyone else's viewpoint, or Your Honor's.

THE COURT:  I'm going to be fairly -- well it depends on -- if everybody's agreed to that, I'm going to be fine with that.  And if not, then I'm going to see about what we can do. I'm pretty flexible with my calendar.  I'll put it that way. Mr. Williams, what are you thinking?

MR. WILLIAMS:  Well the great unknown here is Mr. Rayna's health.  But generally --

THE COURT:  Can you tell me a little bit about that?

MR. WILLIAMS:  I don't know specifically what this trip is about.  I don't -- all I know is he's been

hospitalized, and we've heard rumors that he could be six weeks, but that's probably based on his previous trips.  He -- Mr. Reyna is in a wheelchair.

He was -- at one point during the relevant time period of this alleged conspiracy, he was shot.  Not by anybody in this indictment, complainant, or defendant.

THE COURT:  Yeah.

MR. WILLIAMS:  But and so he's in a wheelchair.  And my limited understanding is that he gets -- he has like an open sore.  He gets sores on his backside.

THE COURT:  So he's -- he's not healing.

MR. WILLIAMS:  Right.

THE COURT:  Okay.

MR. WILLIAMS:  And he -- that's my -- and so I don't know that that's the -- the reason for the return trip, but that's my best guess.

THE COURT:  Okay.

MR. WILLIAMS:  Just based on -- and this has been a problem off and on probably since the beginning.  Certainly prior to my entry into the case.  And usually it's a couple of months, six to eight weeks, somewhere around there.  If that's what this is.  And I would've reached -- tried to reach out and get more information yesterday, I was just tied up in meetings.

THE COURT:  That's okay.  So that would take us like -- on that estimation, that takes us alone through the end of

February.

MR. WILLIAMS:  Yeah.  I would say March, yes.

THE COURT:  And so then were you thinking --

MR. WILLIAMS:  Then my --

THE COURT:  -- about after that?

MR. WILLIAMS:  My challenge is that I have -- I have a trial down the hall in Judge Hanen's court on a securities fraud case in April.  That may take -- it's a nine-defendant case.  There's wildly different estimates depending on who you ask about how long that trial case will take.  I suspect it will go through Memorial Day.  That's my guess.

THE COURT:  So that's through to the end of --

MR. WILLIAMS:  Right.

THE COURT:  -- May basically.

MR. WILLIAMS:  And then during the same time period, I'm involved in representing -- I'm one of the -- one of the lawyers representing Attorney General Ken Paxton in state court securities fraud.  That's also set for trial in April.  Given that I've been involved in that case for eight years, I can say with confidence that that's going to happen.

THE COURT:  Who's that before?

MR. WILLIAMS:  That is the current judge, now -- I've been through a lot of judges.

THE COURT:  Yeah.

MR. WILLIAMS:  Is a woman -- the Honorable Andrea

Beal.

THE COURT:  Okay.

MR. WILLIAMS:  And she is -- she's a relatively new judge, meaning she won the election in the last election.

THE COURT:  Okay.

MR. WILLIAMS:  So the -- so that's -- I can't remember the district court number.  I would just tell you.  So but that may get kicked because of the other securities fraud. I can't remember what the award -- one's on -- one's in the beginning; one's set in the middle.

THE COURT:  Yeah.

MR. WILLIAMS:  But my point is, is that April is probably out.  May depending on how things proceed down the hall, may be out.  June is where I traditionally annually take a vacation to the Virgin Islands with my family and my brother. My wife's from there.  My brother has a place there.  So --

THE COURT:  Okay.

MR. WILLIAMS:  -- we go.  And -- or she lived there, but.  So I --

THE COURT:  And June before it gets --

MR. WILLIAMS:  I'd prefer not to do June.

THE COURT:  -- too hot, I guess.

MR. WILLIAMS:  July would be the best time for me, personally.

THE COURT:  For trial.

MR. WILLIAMS:  The beginning of when I get opened up, yes.

THE COURT:  Okay.

MR. WILLIAMS:  July or later.

THE COURT:  July for me is -- I'm for sure out basically July.

MR. WILLIAMS:  Okay.

THE COURT:  With some -- well all family stuff. Different family stuff but really kind of spanning -- I don't have a continuous set of days in July to start a trial.  I could in August.  And I definitely could in June or earlier.

Mr. Goldman, what is your thinking?  Do you have a preference?

MR. GOLDMAN:  Your Honor, the only -- I have informed the other judges in my other case with the exception of the Bennett case, that Your Honor is well aware of from the filings.  This is my oldest case, and this one goes next.  I think Your Honor actually has my two oldest cases.

THE COURT:  I do?

MR. GOLDMAN:  Yeah.  This one and the (Indiscernible) case.

THE COURT:  Okay.

MR. GOLDMAN:  Yeah.  Those are my two oldest cases except for one civil case that'll never end.

THE COURT:  I will note, I've only had them for part

of the duration (indiscernible).  So that's not --

MR. GOLDMAN:  Okay.

THE COURT:  -- that's not entirely on me.

MR. GOLDMAN:  Okay.  Well no, I'm not saying --

THE COURT:  It's very little on me.

MR. GOLDMAN:  It's actually on me, Your Honor.  Not on Your Honor.

THE COURT:  Okay.

MR. GOLDMAN:  The only sort of caveat I have regarding my vacation schedule is -- this will sound a little strange, Your Honor, but every year I hike what's called Mount Whitney.  It's the tallest peak in the continental U.S.

THE COURT:  Okay.

MR. GOLDMAN:  The lottery for your spot, because there's only a limited number the Forest Service allows.

THE COURT:  Got it.

MR. GOLDMAN:  Is from --

THE COURT:  The national park.

MR. GOLDMAN:  Yeah.  Okay, so -- yeah.

THE COURT:  Okay.  Yeah.

MR. GOLDMAN:  So from February to -- February is when I put in my notice.  And then I get my date which is going to be late July, early August, in March.

THE COURT:  Where is Mount Whitney?

MR. GOLDMAN:  California, Your Honor.  Right near

Lone Pine, California.

THE COURT:  So is it like by Yosemite or?

MR. GOLDMAN:  Actually right near Death Valley.

THE COURT:  Okay.

MR. GOLDMAN:  It's actually 70 miles from the lowest point in the U.S.  If you go 70 miles from Badwater Basin, which is the lowest point.

THE COURT:  Yeah.

MR. GOLDMAN:  If you go west, you hit Mount Whitney, which is the tallest point.

THE COURT:  In the continental United States.

MR. GOLDMAN:  Yes, Your Honor.

THE COURT:  Interesting.  I didn't know that.

MR. GOLDMAN:  Yeah.

THE COURT:  How high is -- how high is that?

MR. GOLDMAN:  14,000 --

THE COURT:  There's nothing over 15,000 --.

MR. GOLDMAN:  Nothing over 15 in the continent.  It's 14,400 -- now it's 14,510.  When I first did it, it was 14,497 feet.  Somehow, 13 feet have been added to it.  I do not know how.

THE COURT:  All right.

MR. GOLDMAN:  I'm not going to question it, but the power of the government, I guess, can change heights.

THE COURT:  All right.  And so you wouldn't be able

to do May.  I mean, backing up, your calendar really is trial heavy into May, unless something else gets kicked.

MR. WILLIAMS:  It -- I'm being cautious about --

THE COURT:  And that's not saying I would move it there.  It's talking to you about your calendar.

MR. WILLIAMS:  No, no, no.  I'm -- this is a discussion.  I mean I'm being cautious because -- and let me -- let me look at this.  Because given the volume of -- let me -- sorry.  I'm trying to get to that screen.  Okay.

So the securities fraud trial in Judge Hanen's court on the current order, is set for April 2nd.  And it -- I believe it will go into May.  You may get differing opinions about that.  I'm not opposed to -- and I don't know how long the government anticipates this trial will last.  But maybe we should explore that.  But --

THE COURT:  I was going to ask that next.

MR. WILLIAMS:  Okay.  If we set it in mid-May, and I understand you probably -- if I have followed you correctly, I think you've only -- you generally do voir dire on Tuesdays, is that correct?

THE COURT:  Yes.  Although once I get a firm trial setting to accommodate counsel, I move things around for that.

MR. WILLIAMS:  Okay.

THE COURT:  And I'm not rigid on that.

MR. WILLIAMS:  Okay.  So what -- if we drift -- if we

actually go, because that's caveat number one.  And if we drift into May, then I would let the Court know immediately once the trial -- I would just tell people, hey, I'm in trial, and this is how it's going.

And again, I'm going to be down the hall.  So to the extent anybody gets bored and wants to peek in.  The -- that's available.  But if we set it, say the 13th of May, that week. And then I would know if I really think it's going at a pace where that may be a problem, it would let people know it far enough in advance.  That's assuming that we -- that this is a two-week trial, three-week trial.  Something along those lines.

THE COURT:  And that's -- and so next question.  Do we think this will be more than a two-week trial?

MR. GOLDMAN:  I believe two weeks, Your Honor.

THE COURT:  Two-week trial.  So from -- starting with jury selection through to anticipated deliberations.  You think two full trial weeks, Monday to Friday, would get it done?

MR. GOLDMAN:  Yes, Your Honor.

THE COURT:  All right.  And so now let me ask what you think on that, Mr. Buckley.

MR. BUCKLEY:  Yes, Your Honor.  I believe --

THE COURT:  Because you had a -- you were general about your conflicts.  So what specific do you have?

MR. BUCKLEY:  Correct, Your Honor.  And it appears that my biggest concern was a -- I guess a healthcare fraud

trial in front of Judge Hanen that begins on the 26th of February.  And it is projected to be, in my view, a two-week trial.

I have some other kind of matters that pepper the docket but are not as substantial.  But I could do it --

THE COURT:  So the Hanen trial, that trial will be done assuming it goes?

MR. BUCKLEY:  It appears -- yes, Your Honor.  My concern with that was simply --

THE COURT:  Okay.

MR. BUCKLEY:  -- that while I'm in that, I wouldn't be able to prepare for this one.  But --

THE COURT:  But off to May is long enough I think for that.

MR. BUCKLEY:  Yes, Your Honor.

THE COURT:  Okay.  So then what do you think of -- if it started in -- I haven't even looked at my calendar yet.  But if we were starting May 13 and going through May 24.

MR. BUCKLEY:  That would work for me, Your Honor.  I have something that I can move I think with minimal impact.

THE COURT:  Okay.

MR. BUCKLEY:  And I would be pleased to conform with that schedule.

THE COURT:  And -- it's the week of the 20th, right Jenelle, that you're looking at?  I have a judicial education

thing that I am booked for and needing to attend.  And that is May 20 through 22nd.  The 13th is clear.  And then I'm clear from the 23rd afterwards.

But if we took that break, the 27th is then Monday -- is Memorial Day.

MR. WILLIAMS:  What if we started May 6th?

THE COURT:  May 6th week looks -- May -- I could start on May 6th.  The Fifth Circuit judicial conference is the end of that week.  But between starting May 6th, I think that means -- I'm not sure if that means the 9th and the 10th or departing on the 9th for it.

I'd have the next full week.  I'd be able to put together ten days by the 21st for sure.  That's 5, 2, 3.  What's anybody's -- taking a break for the Fifth Circuit conference, so that -- I'm going to attend the Fifth Circuit conference.

That would either be a break on Friday the 10th, or perhaps also the 9th.  Your case will have just started.  Is that a problem?  Do you foresee that being, in your experience, a problem for the jurors?

MR. GOLDMAN:  I don't believe so, Your Honor, if it's just a two-day break.  I don't think it's going to be a problem.

THE COURT:  Okay.  So other counsel, if we were starting -- and maybe we could -- as we get closer to time, and

I need to set the time to select the jury.  Maybe we can have our final pretrial conference and jury selection at the end of the prior week, so that when we start on Monday, we've got a jury in the box and we're starting with opening arguments that day.

But subject to that, whether we get that set up that way or not, is there a problem with starting May 6th?  Noting that I would be -- we would not have court on the 9th and 10th.  We would then have the full week, 13th through the 17th.  And then we'd be back the 20th until trial is concluded.  Is that sufficient?

CLERK:  (Indiscernible).  The 20th through the 22nd you're not here.

THE COURT:  It's the beginning of that week, not the end of the week.

CLERK:  I have the 8th --

THE COURT:  No, you're right.  You're right.

CLERK:  I don't think we (indiscernible).

THE COURT:  I don't think that we can.  What if we started the day after Memorial Day?  May 28th.  Does that work with Virgin Islands?  Your typical vacation?

MR. WILLIAMS:  Assuming that trip happens, I haven't technically been invited yet.  It usually happens --

THE COURT:  Well he doesn't technically have his lottery ticket either, so.

MR. WILLIAMS:  I know, it's -- but I can tell you, the one time I moved that week for trial, I ended up not having trial.

THE COURT:  No, I totally -- I totally understand. What week do you normally do it?

MR. WILLIAMS:  I want to say it's usually the week before Father's Day.  It usually would be from like the 8th to the --

THE COURT:  Yeah.

MR. WILLIAMS:  -- 15th of June.

THE COURT:  Okay.

MR. WILLIAMS:  I think that's the week.  That generally is the one.  I was trying to figure that out earlier, but that's usually it.  Because I think I usually come home on Father's Day or the day after.

THE COURT:  And then that's -- then you're out with that through the -- so that's through the 16th.

MR. WILLIAMS:  I have no objection to having the 9th and the 10th off if that still works.

THE COURT:  Yeah.  The problem is me putting together ten consecutive days.  It's the educational conference.  And the week of the 20th is early that week, not late that week. And so I actually was not stringing a full run of days together like I was thinking was available.

Well on my end -- takes us -- on my end, June 17th

through June 28th.  Those are two consecutive weeks.  They are wide open on my calendar.  It's just far off.  But what does anybody think about that?

MR. WILLIAMS:  I'd rather not get off the plane and then --

THE COURT:  That's true.

MR. WILLIAMS:  And Juneteenth is rightly a holiday on that Wednesday.  So perhaps the day after the holiday may work. Or the --

THE COURT:  Yeah.

MR. WILLIAMS:  Or the 24th.  Those would be my -- 20th or 24th.

THE COURT:  Mr. Buckley, I heard that your trial before Judge Hanen is on the early end in May, and could go for two weeks.  And then you have other smaller things after that. So when do you think that that trial before Judge Hanen would be done?

MR. BUCKLEY:  Well I'm estimating that it would be done on March -- I mean, pardon me.  Yes.  March 15th.  Now in candor to the Court, the government in that --

THE COURT:  It's a March trial, not a -- I thought you had said February.

MR. BUCKLEY:  It is February, Your Honor.

THE COURT:  Okay.

MR. BUCKLEY:  Let me see.  What am I -- what am I

looking at?  Okay.  February 26th, and I have it marked through March 15th.  Now it's a pill mill case, so I've seen these go for two and a half weeks, and I've seen them go for two and a half days.

The government has expressed in that case, that it believes it will be much shorter than what I have it calendared for.  But I -- my assumption for my calendar has been much longer.  So there could be some space opened up in there, Your Honor.

THE COURT:  But it's hard -- but -- right, but you don't know.

MR. BUCKLEY:  I don't know.  And the case is old.  And it's one of these that there's a whole sordid story behind why it's -- can't get tried.  But now we finally think we found the golden key, and you know, it's on the calendar.  And we're trying to get it tried, of course.  Kind of like this one.

THE COURT:  Right.  Mr. Williams, when does your trial start in April?

MR. WILLIAMS:  The trial before Judge Hanen --

THE COURT:  No.  That was May -- that was April 2nd, right?

MR. WILLIAMS:  Yes, sir.  The -- or excuse me.  That is the -- let me get back to it.  I believe it starts on Monday, May 1st.

THE COURT:  I just don't know how to -- because I

have March -- the week of March 18th and 25th open.  And that would get us two weeks, but then you'd be -- you'd have trials right back-to-back.  I don't know if that works.

MR. WILLIAMS:  I'm not the only lawyer on my team, but I am an important part in my mind.

THE COURT:  Of course.

MR. WILLIAMS:  The -- so --

THE COURT:  Well and -- right.  Are you in the -- are you the only lawyer on this -- on either of your trial teams?

MR. WILLIAMS:  No.

THE COURT:  Okay.

MR. WILLIAMS:  No.  But I have an -- I have a -- substantial (indiscernible) involved in the case down the hall.

THE COURT:  Okay.

MR. WILLIAMS:  And I do need to be part of the prep on that which is gearing up even now.  And so --

THE COURT:  Okay.

MR. WILLIAMS:  That's my concern.  I'm not opposed to trying to set this in March, you know, on the assumption that Mr. Reyna is healthy and available to, you know, be here and be competent.  And I just -- you know, my goal was to not put things back-to-back.  And I thought with May, at least by the beginning of May, if the trial down the hall takes as long as I anticipate, we'll know.

And so I can provide the courtesy to the Court and

all counsel that, guys, I don't think this is going to end in time, and we could have another meeting.  But if for some reason it gets continued, which everybody says isn't going to happen but always happens, then we could go forward here.  So that's --

THE COURT:  So let me -- so what I would propose, Mr. Goldman, if it's to start the week of March 18th, two consecutive weeks.  Does that work on your calendar?

MR. GOLDMAN:  Yes, it does, Your Honor.

THE COURT:  Does that work on everybody's calendar?  And Mr. Williams, this will be subject to you.  Judge Hanen's -- okay.  I'll just note for the record and anybody let me know if they object to this.

That trial before Hanen is already set.  It takes priority.  And if you -- if it is going, and if you're going to need to ask for a continuance to prepare for that, I would be prepared to grant it.  I want to talk with your co-counsel about that right now.

But I'd otherwise like to get it on the books then and see if we can actually hold that date.

MR. WILLIAMS:  Yes, sir.  That's fine.  That's spring break, but if we're talking about the 18th, that's fine.

THE COURT:  It's -- is that your week?  Because mine is the week prior.

MR. WILLIAMS:  No, no.  That's Tomball S. D.  That's

mine.

THE COURT:  All right.

MR. WILLIAMS:  But it's -- I don't have any plans for spring break, so.

THE COURT:  Okay.

MR. WILLIAMS:  It -- I mean, I --

THE COURT:  All right.  So we're going to set trial to commence on March 18th for two weeks to conclude by March 29th.  Mr. Williams -- well anybody, but Mr. Williams in particular, if you need to request a continuance on the basis that we've just discussed, just remind me of it --

MR. WILLIAMS:  Yes, sir.

THE COURT:   -- in your motion.

MR. WILLIAMS:  Yes sir.

MR. BUCKLEY:  And Your Honor, one point that I need to correct to the Court.  The case that I have that we've discussed in front of, which I said Judge Hanen.

THE COURT:  Yes.

MR. BUCKLEY:  It's actually in front of Judge Ellison.

THE COURT:  Okay.

MR. BUCKLEY:  Nothing think material changes that except I just said the wrong judge.

THE COURT:  That's okay.  That's all right.

MR. BUCKLEY:  All right.

THE COURT:  Sounds good.  Everything --

CLERK:  (Indiscernible) on the 25th and 26th. (Indiscernible).

MR. WILLIAMS:  Could I ask one question?

THE COURT:  That is going to -- if this holds, I will move what I've got.  That's movable.

CLERK:  Okay.

THE COURT:  Yeah.

MR. WILLIAMS:  I'm assuming that if one of the remaining co-defendants pleads, that the trial will be substantially shorter.

MR. GOLDMAN:  I can represent, Your Honor.  And I don't want to --

MR. WILLIAMS:  There's two remaining.

MR. GOLDMAN:  Yeah, there's two remaining.  If Mr. Reyna's client -- if Mr. Williams' client pleads, the trial would be a little bit shorter.  I will be honest, if Mr. Buckley's client pleads, it'll be extremely shorter.

THE COURT:  Well let me -- so there's only two remaining defendants --

MR. GOLDMAN:  Yes.

THE COURT:  -- is that right?

MR. WILLIAMS:  Right.

THE COURT:  And so maybe one or the other might plead.  Okay.  But if -- well if Mr. Buckley's client pleads,

he doesn't really care when the trial goes.  And if Mr. Williams' client pleads, he doesn't care when the trial goes. And so we just take that up when it happens.  Did you have a comment on that?

MR. BUCKLEY:  No, Your Honor.  I was just standing if the Court were addressing us.

THE COURT:  Okay.

MR. BUCKLEY:  Stand.

THE COURT:  And I mean -- and let me know if that happens, when and if it does happen.  Okay.

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  Anything else?

MR. WILLIAMS:  No, sir.

MR. BUCKLEY:  No, Your Honor.

THE COURT:  All right.

MR. GOLDMAN:  No, Your Honor.

THE COURT:  That's all I've got.  All right.  Thank you all very much.  We're adjourned.

MR. GOLDMAN:  Thank you.

(Hearing adjourned at 3:07 p.m.)

* * * * *

INDEX

RULINGS

|  | Page | Line |
|---|---|---|
| Motion for production of interview reports, denied | 20 | 25 |
| Motion for leave to file motions, granted | 21 | 11 |
| Government's motion for continuance, waiver of speedy trial, granted | 22 | 2 |
| Motion to admit Rule 12(b)(C) evidence, denied | 27 | 24 |
| Motion to amend indictment, clerical error, granted | 28 | 14 |
| Motion to disclose discoverable material, granted | 29 | 20 |

C E R T I F I C A T I O N

    I, Sonya Ledanski Hyde, court-approved transcriber,
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  October 23, 2025