**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

UNITED STATES OF AMERICA          )          NO. 4:17-CR-651
                                  )
                                  )
VS.                               )          Houston, Texas
                                  )          10:29 a.m.
                                  )
FREDDY MONTES, ET AL              )          June 24, 2020

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STATUS CONFERENCE**

**BEFORE THE HONORABLE GRAY MILLER**

**UNITED STATES DISTRICT JUDGE**

**VOLUME 1 OF 1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE GOVERNMENT:

    Mr. Adam Laurence Goldman
    Department of Justice
    United States Attorney's Office
    1000 Louisiana Street, 27th Floor
    Houston, TX 77208
    Tel: 713-567-9534
    Email: Adam.Goldman2@usdoj.gov

FOR THE DEFENDANT FREDDY MONTES:

    Ms. Winifred Akins Pastorini
    Attorney at Law
    440 Louisiana, Suite 200
    Houston, TX 77002
    Tel: 713-236-7300
    Email: Windi@pastorinilaw.com

APPEARANCES:   (Continued)

FOR THE DEFENDANTS VICTOR GONZALEZ AND HECTOR REYNA:

     Mr. Robert James Fickman
     Attorney at Law
     440 Louisiana Street, Suite 200
     Houston, TX 77002
     Tel:  713-655-7400
     Email:  Rfickman@gmail.com

FOR THE DEFENDANT MELISA DOMINGUEZ:

     Mr. Miguel Andres Sanchez-Ross
     Parker & Sanchez, PLLC
     700 Louisiana Street
     Suite 2700
     Houston, TX 77002
     Tel:  713-659-7200
     Email:  Andres@parkersanchez.us

FOR THE DEFENDANT MARIA ANGELICA MORENO-REYNA:

     Mr. Charles L. Duke
     Duke & Momberger
     9225 Katy Freeway, Suite 200
     Houston, TX 77024
     Tel:  713-975-6699
     Email:  Dukelaw1@sbcglobal.net

FOR THE DEFENDANT WILLIAM ALBERTO LOPEZ:

     Mr. Sean Buckley
     Law Offices of Sean Buckley PLLC
     175 Main Street, Suite A
     Biloxi, MS 39530
     Tel:  228-933-4411
     Email:  Sean@seanbuckleylaw.com

FOR THE DEFENDANT ERIK IVAN ALVAREZ-CHAVEZ:

     Mr. Adrian Almaguer
     Attorney at Law
     P.O. Box 262406
     Houston, TX 77207
     Tel:  281-591-7310
     Email:  Adrianalmaguer@prodigy.net

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

APPEARANCES:    (Continued)

FOR THE DEFENDANT JOSE RUBEN PALOMO-MARTINEZ:

    Ms. Teresa Cigarroa Keck
    Assistant Federal Public Defender
    1701 W. Business Hwy. 83, Suite 405
    McAllen, TX 78501
    Tel:  956-630-2995
    Email:  Teresa_Keck@fd.org

FOR THE DEFENDANT GABRIELA GONZALEZ-FLORES:

    Mr. Gerardo S. Montalvo
    The Montalvo Law Firm, PLLC
    Park Central Plaza
    1111 North Loop West, Suite 820
    Houston, TX 77008
    Tel:  713-526-5002
    Email:  Montalvolaw@sbcglobal.net

FOR THE DEFENDANT WALTER LOPEZ:

    Mr. James Alston
    Law Office of James Alston
    1415 North Loop West, Suite 905
    Houston, Texas 77008
    Tel:  713-280-5615

FOR THE DEFENDANT EDDIE ALEJANDRO TORRES:

    Mr. Larry Eastepp
    Larry D. Eastepp PC
    800 Bering Dr., Suite 220
    Houston, TX 77057
    Tel:  713-255-3388
    Email:  Larry@eastepplaw.com

FOR THE DEFENDANT JOSE LUIS MORENO:

    Mr. Ali R. Fazel
    Fazel Law
    5373 W. Alabama Street, Suite 600
    Houston, TX 77056
    Tel:  713-526-6020
    Email:  Ali@fazellaw.com

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

APPEARANCES:    (Continued)

FOR THE DEFENDANT BIANCA STEPHANIE REYNA:

    Mr. Thomas B. Dupont, II
    Dupont & Dupont
    Historic Bayou Lofts
    915 Franklin Street
    Unit 7M
    Houston, TX 77002
    Tel:  713-682-1800
    Email: Todd.dupont@dupontlaw.net

COURT REPORTER:

    Ms. Kathleen K. Miller, CSR, RMR, CRR
    515 Rusk, Room 8004
    Houston, Texas  77002
    Tel:  713-250-5087

Proceedings recorded by mechanical stenography.

Transcript produced by computer-assisted transcription.

P R O C E E D I N G S

THE CASE MANAGER:  Hi, this is Rhonda with Judge Miller's office.  Can y'all slowly tell me who all is on the line, one at a time?  Who is this?

MS. PASTORINI:  In my -- I represent Freddy Montes, the number one on the indictment, and my name is Windi Pastorini.

THE CASE MANAGER:  Okay.  And who is next?

MR. DUKE:  Charles Duke for Maria Angelica Moreno-Reyna.

THE CASE MANAGER:  Hang on.  Okay.

MR. FICKMAN:  This is Robert Fickman.  I am here for David Cunningham.  David, represents the Number 3 defendant, Mr. Gonzalez.

THE COURT:  Okay.  And what is your name again?  You need to speak up just a little.

MR. FICKMAN:  This is Robert Fickman.

THE CASE MANAGER:  Oh, okay.

MR. FICKMAN:  There is a lot of background noise.

Also I am here representing my own client, Hector Reyna.  Mr. Cunningham is sick and cannot be here, so I am here on his behalf.

THE CASE MANAGER:  Okay.  That is fine.  Hold

KATHY MILLER, RMR, CRR - kathy@miller-reporting.com

on just one second.

Who is next?

MR. ALMAGEUR:  Adrian Almaguer, representing --

THE CASE MANAGER:  Say that again.

MR. ALMAGUER:  Adrian Almaguer for Erik Ivan Alvarez-Chavez.

THE CASE MANAGER:  Okay.  Hold on one second. Okay.  Who is next?

MR. SANCHEZ:  Andres Sanchez for Melisa Dominguez.

THE CASE MANAGER:  Okay.  Who else?

MR. EASTEPP:  Larry Eastepp for Eddie Torres, the Number 14 defendant.

THE CASE MANAGER:  Thank you.  Okay.  Anybody else?

MS. KECK:  Teresa Keck for Number 10 defendant.

THE CASE MANAGER:  Teresa?

MS. KECK:  Keck.  K-E-C-K.

THE CASE MANAGER:  Got you.  Okay.  And who else?

MR. ALSTON:  James Alston for Number 13, Walter Lopez.

THE CASE MANAGER:  Okay.  Next?

MR. DUPONT:  Todd Dupont, Bianca Reyna, Number 20.

THE COURT:  Okay.  Who else?

MR. MONTALVO:  Gerry Montalvo for Gabriela Gonzalez-Flores.

THE CASE MANAGER:  Okay.

MR. FAZEL:  Good morning.  Ali Fazel for Mr. Jose Luis Moreno.

THE CASE MANAGER:  Okay.  Anybody else?

MR. GOLDMAN:  Adam Goldman for the United States.

THE CASE MANAGER: Okay.  Anybody else?

So, listen, if y'all aren't speaking, put your phones on mute because we're getting a whole lot of background noise.  And take your time when everybody speaks because you're kind of jumping over each other and we do have a court reporter here.  Okay?

Oh, and every time you speak, you need to unmute.  Yeah, unmute and state your name first for the court reporter.  Okay.  Everybody ready?

THE COURT:  All right.  Thank you, Rhonda.

All right.  We are here in Criminal Case 17-651, United States of America vs. Freddy Montes and others.

Now that we have all the attorneys making their appearances, this is a status conference in this case.  We had one a couple months ago, I guess, and we

decided that we would set another one at this point to see where we are with respect to the discovery issues that have been raised before, and also how close we might be to setting a trial date for the remaining defendants.

So I don't know whether the defendants' attorneys have designated someone to speak on their behalf collectively; but if so, I would be happy to hear from whoever wants to start on behalf of the defendants.

MR. FAZEL:  Your Honor, if it pleases the Court, this is Mr. Ali Fazel for Mr. Jose Luis Moreno.  I understand there are a lot of e-mails that have been going back and forth.  I have not been designated, but just to give a status update, there has been discovery produced by the government.  The government has been working with the -- the coordinating discovery attorney, who had produced a thumb drive to all counsel, and who has also, I believe, provided that information on the cloud through the Box system on the defense side, not the government side.

Discovery appears to be ongoing, as I saw an e-mail between lawyers discussing the need for some additional discovery from Mr. Goldman, that was going to contact Julie, who is the coordinating discovery attorney, to discuss that.

There is a voluminous amount of pole cam information that has been uploaded.  That obviously takes a

long time to review.

Additionally, there has been a lot of concerns on the defense side regarding the COVID-19 issue, talking to witnesses, interviewing folks that need to be interviewed, putting all that together. I know there is one defense lawyer who would like to proceed to trial, and I completely understand that. That is Mr. Sanchez, and he is more than capable of speaking for himself.

I think everybody else basically would like two things: Number one, perhaps, Mr. Goldman can address this, but pleas probably could be worked out more effectively if -- how can I say this diplomatically -- offers were a little bit more in line with -- with some of the facts that the defense see. Of course, you'd probably hear a different story from the government on that.

The second issue would be I would strongly recommend -- and I'll let my brothers speak -- but I would recommend setting another status conference, not a trial setting, so that we can work out some of these other issues and kinks that we have, given the time, the pandemic and the voluminous amount of discovery.

Again, I know Mr. Sanchez's client does not wish that because I know she wants to go to trial. So with that, that is kind of an update as to where we are with discovery. I have e-mailed the coordinating discovery

attorney to see if I can get her to file with the Court some kind of update. She does that periodically pursuant to the Court's order. I just don't know where she is on that, on the timeline on that.

And she's in New York, Your Honor, which has seen a lot of, you know, COVID issues, and all her folks are scattered all over the country, so you know. So, I think she's probably trying to do what she can from the house as well, given the circumstances.

So that is kind of an update as to where we are.

THE COURT: All right. Before you sign off, Mr. Fazel, let me ask you, if I were to set another status conference in this case, how long out do you think it ought to be set?

MR. FAZEL: Your Honor, I would recommend, I don't know, 60 to 90 days minimum down the road. That is one thing I haven't spoken to the other lawyers about, and I apologize, I should have thought about that and shot an e-mail to everybody.

And that's just a minimum I would suggest. I know Mr. Goldman is at home dealing with issues. Everybody is at home dealing with issues so communication has been a little slow. And so I would recommend that easy 90 days, Your Honor. I just -- and that -- and that's

being hopeful that we can resolve some of these issues and get this discovery finally done.  At least getting all the discovery to the lawyers, given the length of this case, the age of this case, I think it is something that should happen more quickly than it has.

THE COURT:  Yeah.  It is an old case.  All right.  Thank you, Mr. Fazel.

MR. FAZEL:  Yes, Your Honor.

THE COURT:  Mr. Sanchez, you want to speak?

MR. SANCHEZ:  Yes, Your Honor.  This is Andres Sanchez for Ms. Dominguez.

I guess I'll start with saying the following, is that ultimately, I think, unfortunately, I agree that we should have a status conference set, but I would urge the Court to do it early August as opposed to setting it 90 days, or further down the road.

I do need to -- to bring up my client's position, and that we last had a status conference -- if I remember correctly, we last had a status conference in October.  And at that point in time, we were hopeful of reaching a plea agreement and kind of resolving her case sooner rather than later.  That broke down for reasons that aren't really relevant to -- at this point, but later, but that's why we didn't really mention much in October.

At the October status conference, the

Court set another status conference for January.  And then there was a motion filed asking for first the seven-day continuance, because Mr. Goldman had the flu, which we agreed to a seven-day continuance, but then I think some defense attorneys asked for another 60, 90 days, something like that.  That pushed the date to May.  The May date got pushed to June.

We objected to anything beyond the seven-day continuance, and we asked for a status conference at the end of January, beginning of February, and asked for a trial date to be set as soon as possible.

From our perspective the case is -- we have got the -- everything that we need to go to trial in this case.  You know, Ms. Dominguez has been -- she is in her -- halfway through her third year of custody, and still has -- and there is no trial date in sight.  And so, she's obviously extremely frustrated with the pace that that is going, was hoping to have tried this case in February, and -- and for a lot of reasons that didn't happen.  But now it's -- it's just unknown.  She has asked for reconsideration of her bond hearing.  That didn't help, that didn't go anywhere.  So she's just -- she is kind of at a loss as to what -- what can happen.

So from her perspective, she wants a trial immediately.  She wants something to happen as soon as

possible.

Now, the reality is, and I understand the reality is that that is just not happening. I mean, I know there is a district wide or Houston wide order that no jury trials are happening until August 2nd. I think the reality is that that's not happening maybe this year at all.

I am certainly not personally interested in sitting in a room with, you know, 60, 80 other people to pick a jury, and then 20 other people, 30 other people for two, three, four, weeks at a time. That is not something that I have any interest in signing up to do, and I doubt anybody else really does either at this point.

So I don't know that -- you know, no matter how much we stand up and scream, I don't know that it makes sense to set a trial date for the first week available in August when that is just going to get pushed back. But I do think it's something that we should see where we are in August, see what is happening with the community, and see what's realistic if at all possible as opposed to just setting something for October, or November, and then having somebody file a motion and that gets pushed back into February of next year. We are then into her fourth year of being in custody before a trial, and with, again, no end in sight.

So for those reasons, I would ask the

Court to set something early August.

THE COURT:  All right.

MR. BUCKLEY:  Excuse me, Your Honor, counsel. This is Sean Buckley on behalf of William Alberto Lopez.  I joined the call.  I apologize for my tardiness.  I was having a technology issue on my end dialing out, but I am here now.

THE COURT:  We are familiar with all of that, Mr. Buckley.  Welcome.

MR. BUCKLEY:  Thank you, Your Honor.

THE COURT:  All right.

MR. FICKMAN:  Your Honor, this is Robert Fickman.  May I be heard?

THE COURT:  Of course.

MR. FICKMAN:  Thank you.  And I certainly sympathize with Mr. Sanchez's client's situation.  My client's situation is somewhat different.

I filed a motion for a release based on the COVID, and for -- as the Court may know, if the Court has had a chance to read that motion, my client was in the hospital for a good part of last year, approximately half of last year, and part of this year, and about the time he got out of the hospital, we were hit with COVID.

So for at least half of last year, I was unable to see my client except for on one occasion at the

hospital.  And this year we have been told, as our clients are either at Joe Corley unit or now FDC, so far since the COVID hit, we have been limited to only short consults with our clients on the phone.  And given the fact that those are short consults on the phone, they're really not particularly productive other than telling our clients, well, we're working on your case, and we are gathering discovery from the CEA, but we are not able to really go over anything in any substantial fashion with our clients.

I am told that the -- that there may be a change in the near future about -- in allowing visitations. I heard that there was going to be a change at the FDC.  My client is still at the Joe Corley unit.  I don't -- I have not heard about any change occurring there.

So, basically, Judge, we are all but cut off from our clients.  And because of my client's sickness, I have been cut off from him for most of the last -- now for, you know, like nine of the last 12 months.  So, I don't...

Well, I am appearing on behalf of our friend Mr. Cunningham.  Mr. Cunningham has the COVID. Mr. Cunningham is -- thank God he is recovering and doing well.  And he authorized me to advise the Court of that, otherwise I wouldn't be saying it.

But this is a -- we're -- you know, I

would suggest that we're at a unique and very difficult situation of nobody's making. And we know that this is a very fair Court, and your rulings, but this is -- we're told this week that this illness is spiking in our state, and the governor has now urged people to stay at home again if they can.

So I don't know that having a -- it doesn't really matter if we have a status conference in August or not. I think I agree with what Mr. Sanchez said, which is it's very unlikely that we would have a trial this year anyway, given the fact that we're dealing with the parameters of -- unknown parameters of the COVID.

So I would urge the Court to, yes, set another status conference, whether it's in August or October. I really don't think by August there is going to be a substantial change in what we have to say right now, unless they allow us to, you know, go visit our clients, because, frankly, right now, I am not sure how many of us would eagerly go to the Joe Corley unit or the FDC, the jails, around the really bad places for COVID.

I have a 90-year-old mother. I am the only one here for her, so I have to be careful about my own health and, frankly, I stay away from her because of that. But in the event there is an emergency, I am the one that has to deal with that. So, I could -- it's an extra

concern of my own. And I don't want to get too far afield, but that is pretty much what I had to say.

But I would agree with the notion that we should have a status conference. I would suggest rather than having it in six or eight weeks, which would be in August, that we at least put it off until September or October in the hopes that by then we would have more to tell the Court.

I was going to say October or November, but I think October is probably a more realistic time. There is actually -- we would have hopefully made some progress.

I still think between now and then, Your Honor, given all that has happened since March 12, that we are probably going to be allowed at most limited access to our clients, given the situation of both the FDC and the Joe Corley unit. And I appreciate you hearing me out.

I only had one other thing, which I would ask that it's not -- well, it is a status conference. I would ask the Court to rule one way or another at the Court's convenience on the motion that was pending. And I am not arguing the motion now. I think the motion speaks for itself as does the government's response.

THE COURT: All right. Thank you, Mr. Fickman. The ruling is coming shortly.

MR. FICKMAN:  Thank you.

THE COURT:  All of us are aware of the COVID issues and the cases that are spiking in Texas now, and even though the Chief Judge has postponed all civil and criminal trials until August the 3rd or 4th by general order, with what is going on, I know the judges of the Houston and Galveston divisions are going to be revisiting that issue, and I think it's reasonable to assume that that date might be extended and that we might not actually start jury trials the first part of August because I think it is going to be difficult to get jurors to come down here and expose themselves potentially, even with the precautions that we're taking.

So I am sympathetic to the arguments that are made by the defendants, and I think another status conference is probably in order.  I do want to let Mr. Goldman say anything that he would like to say on behalf of the government.

Mr. Goldman.

MR. GOLDMAN:  Thank you, Your Honor.  I would like to make a -- just address sort of four points counsels have brought up.

Number one is the discovery.  My understanding is that everything has been turned over except for certain notes from our Harris County Sheriff,

who is one of the case agents on the matter.  I got an e-mail yesterday from counsel stating that they believe there might be cell phone data outstanding.  I was unaware of that, so I contacted the discovery coordinator to see if there is, in fact, such cell phone data outstanding, and if there is I will have that turned over immediately.

We did get recently the handwritten notes of the Harris County Sheriff's case agent.  That took a little longer because of certain issues that I am sure the Court and counsel are aware of.  The schedules of the Harris County sheriffs have been a little -- a little more complicated recently based on recent events, so that just took a little longer.  But my understanding from -- is that only the handwritten notes have to be turned over.  So that's it for the discovery.  But I will check on the cell phone data that was referenced in the e-mail from yesterday.

Our understanding is that everything else has been turned over.  But, again, I will double back with the discovery coordinator on that.

THE COURT:  All right.

MR. GOLDMAN:  So that was Point Number 1, Your Honor.

Point Number 2 is regarding the defendants' pleas.  As the Court is probably not shocked, I

disagree a little bit with the reasonableness of our offers with Mr. Fazel. Probably not shocking to the Court. I do believe that within a reasonable amount of time, I think that -- I don't want to state who it is, but five or six defendants will likely be -- have plea agreements with the government soon. I do believe we're in the closing stages of those. Some of them should have been done already, and I do take responsibility for those not being done yet. It's just been a little -- as counsel is aware and the Court has heard, I'm just trying to get them finished up. It has been a little more time consuming than I expected with everything going on. So that would be Point Number 2.

THE COURT: Good.

MR. GOLDMAN: Point Number 3 regarding the bond motion referred to by Mr. Fickman, we will rely primarily -- actually, exclusively on our written response. I did file a notice of errata. Mr. Fickman did notice that I made a mistake in the concluding paragraph so we just wanted to fix that today, and I thank Mr. Fickman for pointing that out to me.

THE COURT: All right.

MR. GOLDMAN: But we are relying on our response. Just very quickly, we do understand the seriousness of the COVID outbreak. We also understand that for counsel, for our -- my opposing counsels especially,

the consultations are -- are -- must be incredibly difficult, having to do everything over the phone.

But for Mr. Fickman's client in particular, we do believe that the 3142 factors still warrant detention.  So that would be the third point.

And lastly, regarding the date, we are fine with a status conference whenever the Court wants.  Regarding a trial date, again, we will defer to the Court on that.  We are fine with any date but regarding my scheduling, as I told counsel, I have two other cases, one is older than this, and I think there is one defendant left on that case.  So I have one older case.  I also have -- and that is Madrid Paz.  The case number is 4:17-CR-345, which is before Judge Hughes.  So that is my one old -- that is the only case that I have that is older.

I do have one case that's newer that is before Judge Atlas.  It's United States vs. Portillo-Saravia.  That is 4:18-CR-650.  The reason I mention that, Your Honor, is that is a case which I know Judge Atlas wants tried as soon as everything is open again, and very quickly.  It is a gun case.  The person is detained, based on the 3142 factors, and it does appear that even if convicted that person's guideline sentence would already be met.  So that is why Judge Atlas is very much pushing that case to go forward as quickly as

possible.

THE COURT:  Okay.  Thank you, Mr. Goldman.  Are you saying you only have three cases?

MR. GOLDMAN:  I wish, Your Honor.

THE COURT:  All right.

MR. GOLDMAN:  I only have one that is older than this, and only one where they have the sentencing issue like that, Your Honor.

THE COURT:  All right.

MR. GOLDMAN:  But I think I -- I got a few more than that.

THE COURT:  Okay.  All right.  Listen, it seems to me that what we ought to do, I guess I could change my mind based on what the Chief Judge decides to do with the jury trials, and when they're going to begin, whether it will be the first part of August or whether that will be pushed back.  But what I am going to do now is I am going to set another status conference for mid October in this case.

Rhonda, you want to give me a date.

THE CASE MANAGER:  October 15th.

THE COURT:  Okay.  October 15 --

THE CASE MANAGER:  At 11:00.

THE COURT:  -- 11:00 a.m., and we will let you know whether we need to do that in the courtroom or by

telephone.  But just put that on your calenders.  Status conference, October 15, 11:00 a.m.

All right.  Is there anything else?

MR. FICKMAN:  No.

THE COURT:  All right.  Mr. Fickman, be sure and tell Mr. Mr. Cunningham we all wish him the best and a speedy recovery from the virus.

MR. FICKMAN:  I will pass that on, Your Honor.

THE COURT:  All right.

MR. FICKMAN:  Thank you.

THE COURT:  Thank you very much.  We're adjourned.

(Adjourned at 10:55 a.m.)

COURT REPORTER'S CERTIFICATE

I, Kathleen K. Miller, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Oct. 23, 2025      /s/      _Kathleen K Miller

Kathleen K. Miller, RPR, RMR, CRR