**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

UNITED STATES OF AMERICA          )          NO. 4:17-CR-651
                                  )
                                  )
VS.                               )          Houston, Texas
                                  )          11:07 a.m.
                                  )
FREDDY MONTES, ET AL              )          October 15, 2020

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TELEPHONIC STATUS CONFERENCE**

**BEFORE THE HONORABLE GRAY MILLER**

**UNITED STATES DISTRICT JUDGE**

**VOLUME 1 OF 1**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE GOVERNMENT:

    Mr. Adam Laurence Goldman
    Ms. Zahra Fenelon
    Department of Justice
    United States Attorney's Office
    1000 Louisiana Street, 27th Floor
    Houston, TX 77208
    Tel: 713-567-9534
    Email: Adam.Goldman2@usdoj.gov

FOR THE DEFENDANT FREDDY MONTES:

    Ms. Winifred Akins Pastorini
    Attorney at Law
    440 Louisiana, Suite 200
    Houston, TX 77002
    Tel: 713-236-7300
    Email: Windi@pastorinilaw.com

KATHY MILLER, RMR, CRR - kathy@miller-reporting.com

APPEARANCES:    (Continued)

FOR THE DEFENDANTS VICTOR GONZALEZ AND HECTOR REYNA:

       Mr. Robert James Fickman
       Attorney at Law
       440 Louisiana Street, Suite 200
       Houston, TX 77002
       Tel:  713-655-7400
       Email:  Rfickman@gmail.com

FOR THE DEFENDANT MELISA DOMINGUEZ:

       Mr. Miguel Andres Sanchez-Ross
       Parker & Sanchez, PLLC
       700 Louisiana Street
       Suite 2700
       Houston, TX 77002
       Tel:  713-659-7200
       Email:  Andres@parkersanchez.us

FOR THE DEFENDANT MARIA ANGELICA MORENO-REYNA:

       Mr. Charles L. Duke
       Duke & Momberger
       9225 Katy Freeway, Suite 200
       Houston, TX 77024
       Tel:  713-975-6699
       Email:  Dukelaw1@sbcglobal.net

FOR THE DEFENDANT WILLIAM ALBERTO LOPEZ:

       Mr. Sean Buckley
       Law Offices of Sean Buckley PLLC
       175 Main Street, Suite A
       Biloxi, MS 39530
       Tel:  228-933-4411
       Email:  Sean@seanbuckleylaw.com

FOR THE DEFENDANT ERIK IVAN ALVAREZ-CHAVEZ:

       Mr. Adrian Almaguer
       Attorney at Law
       P.O. Box 262406
       Houston, TX 77207
       Tel:  281-591-7310
       Email:  Adrianalmaguer@prodigy.net

APPEARANCES:    (Continued)

FOR THE DEFENDANT JOSE RUBEN PALOMO-MARTINEZ:

    Ms. Teresa Cigarroa Keck
    Assistant Federal Public Defender
    1701 W. Business Hwy. 83, Suite 405
    McAllen, TX 78501
    Tel:  956-630-2995
    Email:  Teresa_Keck@fd.org

FOR THE DEFENDANT GABRIELA GONZALEZ-FLORES:

    Mr. Gerardo S. Montalvo
    The Montalvo Law Firm, PLLC
    Park Central Plaza
    1111 North Loop West, Suite 820
    Houston, TX 77008
    Tel:  713-526-5002
    Email:  Montalvolaw@sbcglobal.net

FOR THE DEFENDANT WALTER LOPEZ:

    Mr. James Alston
    Law Office of James Alston
    1415 North Loop West, Suite 905
    Houston, Texas 77008
    Tel:  713-280-5615

FOR THE DEFENDANT EDDIE ALEJANDRO TORRES:

    Mr. Larry Eastepp
    Larry D. Eastepp PC
    800 Bering Dr., Suite 220
    Houston, TX 77057
    Tel:  713-255-3388
    Email:  Larry@eastepplaw.com

FOR THE DEFENDANT JOSE LUIS MORENO:

    Mr. Ali R. Fazel
    Fazel Law
    5373 W. Alabama Street, Suite 600
    Houston, TX 77056
    Tel:  713-526-6020
    Email:  Ali@fazellaw.com

APPEARANCES:   (Continued)

FOR THE DEFENDANT BIANCA STEPHANIE REYNA:

 Mr. Thomas B. Dupont, II
 Dupont & Dupont
 Historic Bayou Lofts
 915 Franklin Street
 Unit 7M
 Houston, TX 77002
 Tel:  713-682-1800
 Email: Todd.dupont@dupontlaw.net

COURT REPORTER:

 Ms. Kathleen K. Miller, CSR, RMR, CRR
 515 Rusk, Room 8004
 Houston, Texas  77002
 Tel:  713-250-5087

Proceedings recorded by mechanical stenography.

Transcript produced by computer-assisted transcription.

P R O C E E D I N G S

THE COURT:  Okay.  Rhonda, I am in the courtroom.

THE CASE MANAGER:  Oh, okay, Judge.

THE COURT:  I understand that we now have everybody on the line.  Let me go down the list here and make sure that we have all of the defendants' attorneys that are still in the case, but let me start with the appearances for the government.

This is U.S.A. vs. Montes, criminal case 17-651, a status conference.

For the government?

MR. GOLDMAN:  Yes.  Adam Goldman and Zahra Fenelon for the United States, Your Honor.

THE COURT:  All right.  Good morning.  And let's go down --

MR. GOLDMAN:  Good morning.

THE COURT:  Let's go down as the defendants are listed in the indictment to make it easier for the lawyers to make their appearances without stepping on each other.

So for Mr. Montes, Ms. Pastorini I think just got on the line with us.

MS. PASTORINI:  I am on the line, Your Honor, and because I am driving, I have to put it back onto mute,

but thank you, and good morning.

THE COURT:  All right.  Good morning.

Let's see, for the Defendant Gonzalez, Mr. Cunningham, but I understand that Mr. Fickman is appearing for Mr. Cunningham.  So --

MR. FICKMAN:  Yes.  That's correct, Your Honor.

THE COURT:  Thank you, sir.  And Mr. Fickman would also be appearing for Defendant 18, Mr. Reyna.

MR. FICKMAN:  Correct.

THE COURT:  So Defendant Number 4, Dominguez.

MR. SANCHEZ:  Andres Sanchez, Your Honor.

THE COURT:  All right.  Good morning to you.

MR. SANCHEZ:  Good morning.

THE COURT:  Thank you.  And Defendant Number 5, Moreno-Reyna.

MR. DUKE:  Moreno-Reyna (Telephonic interference.)  Good morning.

THE COURT:  I'm sorry, I didn't catch that.

MR. DUKE:  Maria Moreno-Reyna, that is Charles Duke appearing for the party.

THE COURT:  That is right.  Defendant Number 5, Charles Duke is appearing.

MR. DUKE:  Yes, sir.

THE COURT:  Defendant Number 6, William Lopez.

MR. BUCKLEY:  Good morning, Your Honor.  Sean

Buckley here for Mr. Lopez.

THE COURT: All right. Thank you, Mr. Buckley. Good morning. Number -- Defendant Number 8, Alvarez-Chavez.

MR. ALMAGUER: Good morning, Your Honor. Adrian Almaguere here for him.

THE COURT: All right. Mr. Almaguer. Thank you. Good morning.

Defendant Number 10, Palomo-Martinez.

MS. KECK: Good morning, Your Honor. Teresa Keck for Mr. Palomo-Martinez.

THE COURT: Good morning. Thank you. Defendant Number 12, Gonzalez-Flores.

MR. MONTALVO: Gerry Montalvo for Ms. Gonzalez-Flores. Good morning, your honor.

THE COURT: All right. Good morning, Mr. Montalvo.

Defendant Number 13, Walter Lopez.

MR. ALSTON: Good morning, Your Honor. James Alston for Mr. Lopez.

THE COURT: Good morning, Mr. Alston. Thank you.

Number 14, Eddie Alejandro-Torres.

MR. EASTEPP: Larry Eastepp for Mr. Torres, Your Honor.

THE COURT:  All right.  Mr. Eastepp, good morning.  Thank you.

MR. EASTEPP:  Good morning.

THE COURT:  Defendant Number 16, Jose Luis Moreno.

MR. FAZEL:  Good morning, Your Honor.  Ali Fazel for Moreno.

THE COURT:  All right.  Mr. Fazel, good morning.  Thank you.

Defendant Number 18, Hector Reyna.  That's Mr. Fickman.  We have already identified him.

And finally, Defendant 20, Stephanie Reyna.

MR. DUPONT:  Your Honor, good morning.  Todd Dupont for Ms. Reyna.

THE COURT:  All right.  Good morning to you, sir.  Thank you.

All right.  This is a status conference.  We do have a court reporter present.  So, I would ask the lawyers if they need to speak, if they would identify themselves prior to saying what they have to say, so that we can get a clear record.

I don't know whether anybody has been designated on behalf of the defendants to speak as to where we are with discovery, and whether we're ready to set this

case for trial or not. If there is somebody who has been designated to speak, or wants to speak on behalf of the defendant group, I would be happy to hear from them.

But let me first ask Mr. Goldman where we are. Mr. Goldman.

MR. GOLDMAN: Your Honor, I believe all the discovery has been turned over to the discovery coordinator -- I have -- several months ago, and I have not gotten any new requests for any new information. I have asked the agents if there are any handwritten notes not turned over, to provide those for me so I can make sure they're redacted for any personal information, PII, and turn those over. We have not gotten any since the last round.

As far as the case going forward, I am in discussions, I believe, with one, two -- I just don't want to get into the internal stuff, but I am in discussions with at least six of the counsels on this phone about possible dispositions of their case.

THE COURT: All right.

MR. GOLDMAN: I don't want to say anything more, obviously.

THE COURT: Okay.

MR. GOLDMAN: And that is where we are. Some of the dispositions, Your Honor -- and, again, I don't want

to get too much into the weeds -- but they do require meetings with clients and our office, and since March we have not been able to produce anybody to any location where we can conduct that and that has been a hindrance for resolving some of the issues.

THE COURT:  Mr. Goldman, do you know when or if that is going to change?

MR. GOLDMAN:  We just keep getting these stay tuned, which is as annoying for us as it is for the Court. I am confident, though, that we can resolve hopefully six of these matters, I want to say, relatively soon.  Some of the delays have been on my part.  Getting information during the COVID shutdown, that's been a little difficult.

Also, I have another, I'll say, a multidefendant -- large multidefendant case with Judge Hoyt that was taking up some of my time getting the pleas done on that.  But I wanted to make sure I got all the information done before I get these -- what I believe will be six matters disposed of this relatively soon.

THE COURT:  Good.  All right.  Thank you.  I would encourage you to get that accomplished as soon as possible so that we know exactly how many defendants are going to trial in this case.  So is there anybody -- is there an agreed spokesman on behalf of the defendants?

MR. FAZEL:  Good morning, Your Honor.  Ali

Fazel.  I am -- we -- the defendants, some of us, had a noon conference call about last week, and it was suggested that I would take up the banner, if you will.  Although, I'm not sure if all the defendants were on that call.

But during that call, Your Honor, if it pleases the Court, we had conversations about where we are. Most of us are in the same position, the ones that are left.  Discovery has been produced.  I have e-mailed the discovery coordinator last week and then again this week. I know she has had a couple of cases that have heated up, so I am waiting on a response from her.

I would encourage everybody on the call if they have any issues or questions regarding discovery to communicate with her, and that they would be kind enough to copy me on it so I can keep track of it and move forward from there.  As far as discovery is concerned, I believe most everybody has the discovery that they need.  I think there is one defendant, Mr. Eastepp, that we e-mailed last week and I'm just waiting on a response back from her to get those documents.

There is -- so for the majority of us, we would need -- and obviously, given the circumstances, where we are, a lot of us can't communicate with our clients. Mr. Fickman, for example, hasn't had an opportunity to see his client for a year, much less communicate very well with

him.  And there's all sorts of other issues so, obviously, a lot of us are just simply not prepared to go forward with the trial.

There is -- again, this sounds like defense attorney whining, but there is some difficulty communicating with the government.  I would sincerely hope and ask the government to be a little bit more -- a little bit more responsive to defense counsel's e-mails and calls so that we can resolve some of these issues, at least get the outlines resolved, if possible, questions or concerns that we may have.

So I do want to bring that up in this hearing and ask the government to be a little bit more proactive with that.  I understand they are busy, but I think we all are.

One defendant, Your Honor, Mr. Sanchez, is in a different location, in a different position, so I think Mr. Sanchez wants to address the Court as to that issue.  But before I do that, if the Court will allow me, we are seeking another status conference.  Given the circumstances, we are just simply not ready, and I would suggest to the Court that another status conference probably 120 days, I hate to say that that far out but, frankly, I think that's kind of where we are, to be honest with you, to give us opportunity to negotiate the case out,

if we can; and if we can't, set a trial date that it makes sense.  And that's where we are, Your Honor.

THE COURT:  All right.  So, you would like me to set another status conference 120 days out?

MR. FAZEL:  That would be my recommendation, Your Honor.  I think, given the discovery, given where we are, communications with our clients, trying to communicate with the government, it is just a lot of uncertainty right now so, yes, sir, that's what we would recommend, except for Mr. Sanchez who does have a situation completely different, where his clients, I think, is somebody that may need severance.  So I will let Mr. Sanchez discuss that.

THE COURT:  All right.  Thank you, Mr. Fazel.  Mr. Sanchez.

MR. FAZEL:  Yes, Your Honor.

MR. SANCHEZ:  Thank you, Your Honor.  Andres Sanchez for Melissa Dominguez.

I -- I do -- I am going to try to condense everything that I would like to say as much as I can and try to have it as straightforward as I can.  I am going to try to choose my words as carefully as possible.  But I totally understand where the other defendants are, and why they are asking for what they're asking for.  And if I was representing their clients, I would be asking for the same thing.  So it makes total sense to me, but it really is, I

think, a situation where we're just in a different group. We're somewhere differently. And I'll try to explain that as best I can.

Looking at the indictment, and the many different counts in the indictment, I think they can be summarized into three broad ranges as far as it applies to my -- or three broad categories, or three broad groups as far as it applies to my client, Ms. Dominguez.

The first is really just harboring allegations, and whether she agreed to let illegal aliens stay in one of her trailer homes. And then the second one kind of builds on that, so that's the first category, is just a regular harboring case, in my opinion a relatively mild one, much milder than the ones that we generally see.

And then the second category is -- gets a little bit more serious where the allegations build on that, and some of the people that she harbored, whether she knew or not, that they would end up in Houston, and elsewhere, in prostitution. So that is the second category.

And then finally the last category is the charge where she's alleged to have conspired, engaged in sex trafficking by means of force, threats, fraud and coercion, so that's obviously the most severe. The first two, really, there is not -- whether it's the guidelines

for, I think, ultimately the way the Court would view these, the first two categories, when it comes to sentencing, there is not a lot of difference as far as the guidelines go. And in my opinion, once all the information is laid out, it's -- it would be very realistic for us -- it would have been very realistic for us to be asking for a time served sentence six months ago.

Coming up next month, my client will have been in custody a full three years. So, I think, you know, this is a situation where every day she stays in, she's losing an opportunity at a fair sentence.

So, then the final category of that -- that third group, which a lot of the other defendants are facing, is really the kicker that has a 15-year minimum. But I do think that once everything is laid out, we -- there's -- there won't be a credible argument that she is -- she's guilty of conspiring -- conspiring to engage in sex trafficking by means of force, threats and fraud. I do think that's an outlier.

We obviously have no problem going to trial if the Court -- or if the Court wants to proceed with that, that allegation, we would be more than happy to -- to bring that to trial. And, you know, if we are just looking at the harboring, I think the case would be resolved.

I think really what the sticking point is

in that middle category of whether she knew that these people would be -- end up in prostitution or not. So it is not the threat, the force, the coercion, the fraud. It's really just if she knew that they would end up being prostitutes later in Houston for that middle category.

And, again, the sentence doesn't change too much, but the sticking point for her has been this idea that it leads to -- to having to register as a sex offender. So what -- what we're asking for, is we're asking for some way to resolve this case, some way to finish this case. We tried -- I think both the government and our side tried to resolve it through a plea and tried to expedite sentencing after that plea, or allow her on bond to wait until sentencing for everybody else to resolve it, and we got extremely close. And, again, we just got stuck, and I think both sides were being reasonable. I think the government made a reasonable offer, and it -- and in the end it was just something that my client couldn't live with. She wasn't being totally unreasonable by not accepting it, but I just think we couldn't quite get there.

So what we want to do is find some way to wrap this case up. It's not unreasonable for us to be asking for a trial now that she's been in custody for three years, not unreasonable when the facts, as I think that they are going to be, are going to be something that the

Court, even if she were to go to trial and get convicted of the first category or the second category, I think the Court is going to listen to a time-served argument. A, even if that happened next week, I think the Court would be inclined to do that, in my experience.

So, where are we? How does that fit? What can we do? Our options are limited. We have asked for a bond, a reconsideration and a bond. That was six months ago. That was denied and we understand that. We accept that. But the only other option that we have, that we can think of, is try to sever out our client so we're not looking at a -- you know, 14, or even an eight-person trial, or eight-defendant trial. We are looking at a one-person trial that maybe can be done in a couple of days.

I made an offer to even explore doing a severance and a bench trial with as much as possible stipulated and agreed to because, really, I don't think -- like I mentioned, I think the issue is the -- the outstanding issues are pretty small. The government -- it took them three weeks to get back to me, but finally this morning said they weren't interested in agreeing to something like that.

I could, you know, of course, file a motion to sever and lay it all out with the Court. I can

also ask for reconsideration of the bond.  And hopefully, I can get some guidance from the Court today as to some -- maybe there is an alternative that I haven't thought of, but either way, I -- again, I am in a position where I -- the same position I was in June, the same position I'll be at any other status conference, same position I was in since last December, is that we want a trial as soon as possible.

And I understand that other defendants need more time, and for them to get justice they need additional time and they need to speak to their lawyers. They need to review everything.  But for us we also need justice, and we need to be brought to court.  So it's -- demanding a trial next month, I think that's -- to the extent we can, that's what we would like.

I don't think it makes sense to have nine, ten, different defendants in a courtroom with all the lawyers and everybody else in the court but -- under the circumstances, but I think that's what Ms. Dominguez deserves.  So that's where we are, Your Honor.

THE COURT:  Okay.  Thank you.  Thank you, Mr. Sanchez.  I understand your position.

Mr. Goldman, what's your take on all of this now?

MR. GOLDMAN:  Yes, Your Honor.  I guess I'll

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

first -- if I can go backwards first I'll address Mr. Sanchez's concerns first and then Mr. Fazel's concerns.

Regarding Ms. Dominguez, Mr. Sanchez's client, several issues:  Number one is, even just looking at the smuggling and the what we call Mann Act violations, not the sex trafficking, his case would still inextricably be intertwined with that of Ms. Pastorini's client, Mr. Duke's client, especially Mr. Almaguere's client, Ms. Keck's client, and -- and also Mr. Buckley's client. So there is -- this is very intertwined.

I don't want to get too much into the weeds, but indeed the reason we first learned about Mr. Sanchez's client was through the wire of Mr. Almaguere's client, and then later the sort of really damning evidence came from wires from Ms. Pastorini's client and wires from Mr. Duke's client.  So they are just so intertwined we just don't see how they can be separated because they're all working together in that.

The other issue, and I think we briefed this in the last bond -- the bond litigation that Mr. Sanchez and I had, we respectfully disagree, obviously, with his calculation of the sentencing guidelines.  We provided our calculation, and we came up to a sentence of -- what he had -- what she would have left even with the time served would still be 62 to 86 months, so I think we

have a very big disagreement with Mr. Sanchez, respectfully, regarding what the potential sentence is that they are still facing.

Also, I don't -- pursuant to Rule 11, I don't want to get too much into the weeds of our negotiations of a plea disposition because I know under Rule 11, we can't get the Court involved in that. But I do believe Mr. Sanchez is correct, we were very, very close. And then there was one issue that we just really -- that the two parties just could not resolve without -- we just couldn't get resolved to get the plea done, but there was this one issue -- I don't want to get too much into it -- otherwise the matter would have probably been finished up.

Our concerns about flight, we have obviously addressed that a lot in the -- in the plea negotiation -- in the bond paperwork. So that that's the issue with why we are opposed to severing out Ms. Dominguez's case.

Regarding the concerns of Mr. Fazel, I do -- again, Your Honor, I do apologize to him and to counsel for my delay in responding. I just -- I get a lot of e-mails each day, and no offense, it is not Mr. Fazel personally, nothing against him, I just sometimes -- he sends me long e-mails and they are hard to respond to sometimes. But I do apologize for the delay. I'm trying

KATHY MILLER, RMR, CRR - kathy@miller-reporting.com

to get them done as quickly as possible.  We have had just some delays with the virus.

I know they have had delays with their clients, getting to meet them.  We have had some delays on our end meeting with the agents to get all the paperwork sifted out, to get the necessary information for Mr. Fazel's client and the other clients as well.  But we are trying to go as fast as possible on that.

I do know that based on where the discovery coordinator lives, I think that might be one reason she is having a big delay.  She lives in an area of New York called Riverdale.  As the Court may be well aware, New York is locked down and Riverdale has a large elderly population.  I used to live about ten blocks from where the discovery coordinator lives.  And so it's a very vulnerable population there, so that might be a reason for her delays.

THE COURT:  All right.  Do you agree to another status conference 120 days out?

MR. GOLDMAN:  No opposition, Your Honor.

THE COURT:  All right.  I think that's the -- I think that's the answer.

Mr. Sanchez, I am sympathetic with your client's dilemma, but it sounds like the government's got an entirely different view of the evidence and the sentencing range potentially if your client is convicted.

I would -- I might be receptive to the idea that you floated, but I think that Mr. Goldman has shot down, and that is a severance of your client's case, and I would be happy to do an abbreviated bench trial with stipulated facts, or as many stipulated as possible, and maybe a few live witnesses here and there.  That way we wouldn't have to expose jurors, and a slough of defendants and defendants' attorneys to a trial right now.

So, Mr. Goldman, think about that, and think about if there is a way that you and Mr. Sanchez can resolve the one issue that seemed to be the sticking point in the plea negotiations.  I would -- I would encourage you to work on that if the bench trial option is -- severance and bench trial option is not something that you're in agreement with.

As to the other Defendants, it seems like additional time is necessary, so I am going to reset this for a status conference 120 days out.  Rhonda will set that up on a -- on a date, and time, and she will notify all the attorneys of the next status conference in this case.

And in the meantime, you know, I don't -- I don't -- I have never been involved in plea negotiations and I don't intend to be, but if there is anything that I can do to help you, Mr. Sanchez, and Mr. Goldman get Ms. Dominguez's case resolved one way or the other, I am

happy to do it. So whatever I can do, I would be -- I would like to do it, but I think my hands might be tied a lot in terms of how deeply I could get involved in it. But I would encourage the two of you to see if you can't make another run at this, and see if you're able to work something out.

Is there anything else, Mr. Goldman?

MR. GOLDMAN: Your Honor, I will try to work with Mr. Sanchez to see if we can resolve that case. The primary reason we're opposed to any sort of severance and bench trial, Judge, is how much the case is intertwined with the other co-defendants, but that is sort of the primary reason for the -- for the opposition. It is just so -- it's so intertwined with these other co-defendants.

THE COURT: Yeah. I understand. Mr. Sanchez.

MR. SANCHEZ: Your Honor, this is Andres Sanchez, if I could just speak to a couple of the points. First, with regards to the sentencing calculations, I mean, I understand -- the government always has a different view of the sentencing calculations than the defense does and that's fine. But I think the hard part is, is the longer this drags out, even if he is wrong, he still wins. That's the hardest part. So it just eliminates our chance of getting the better end of the argument, so if we are right in the end and he is wrong, it doesn't matter.

KATHY MILLER, RMR, CRR - kathy@miller-reporting.com

THE COURT:  Yeah, she still spent the time.

MR. SANCHEZ:  I think that -- yeah, exactly. So she doesn't get, you know, the time back.  But I think that's the hardest part for that.  And, you know, I mean, that's just -- that's that...

The second part, the intertwined part, I mean, I can understand that, but I -- and that's kind of what I was hoping to discuss, and why I brought this up three weeks ago with Mr. Goldman, was that I offered in my e-mails to have as much stipulated as possible, and, you know, thinking even if there was a way where we could do it possibly without any live witnesses and exploring something like that where basically -- because I think a lot of this is done through -- you know, I mean, I think a lot of what the government is relying on is, you know, if we agree to some of the background things that the government doesn't have to bring in witnesses for, I think we could knock something out.

But that said, that's not for really the Court, I guess, to get into right now.  The only thing I would ask now on this call is to have Mr. Goldman call me right now, as soon as we're finished with this, so we can set a date and time to talk about this.  Because, again, as Mr. Fazel pointed out and how I have pointed out, it is very difficult to get in touch with, so I would like to

make a -- a real go at it, and just try to get it done so we're not, you know, waiting three or four, six months from now, to discuss this again.

THE COURT:  Okay.  That's excellent.

MR. SANCHEZ:  I would like to have a commitment from him to call me now.

MR. GOLDMAN:  I will do that, Your Honor.  I will call him right when we're done.

THE COURT:  So as soon as this call is ended, Mr. Goldman will call Mr. Sanchez and see if there is some way that they might be able to work out Ms. Dominguez's case.  And, Mr. Goldman, I have always found Mr. Sanchez to be a very reasonable fellow, so I am sure that you will be able to work something out with him.

Mr. Fazel, is there anything else from you or your side?

MR. FAZEL:  No.  No, Your Honor.  I just got an e-mail from the -- the coordinating discovery attorney resolving one issue that one of the defendants had, so, I again encourage everybody who does have any questions or concerns regarding discovery to e-mail with her, and then copy me on it, so that we can resolve those issues.

One other issue, Your Honor, I -- and I appreciate Mr. Goldman being busy and I appreciate he's got a lot going on.  I appreciate all that.  The sticking point

to a lot of these cases is that the government resolution of the case requires us to plead to the most -- the -- the trafficking part.  And I understand that's their position and they have a right to pursue that position.  But for Your Honor's edification, if that continues to be the case, there is going to be a lot of people going to trial.

And so to resolve this issue, I know the Court can't get in the middle of it.  I know you're just a referee, Your Honor, but at some point, this is going to come to a head, and so I would ask Mr. Goldman to -- encourage Mr. Goldman to think about plea negotiations in a little bit bigger, wider of a spectrum, so that we can resolve these issues so we can move on with the case.  And that is all I have, Your Honor.

THE COURT:  All right.  I am sure Mr. Goldman is going to be flexible on this right, Mr. Goldman?

MR. GOLDMAN:  Your Honor, it depends on each -- each defendant is in a different position.  I would just state that the position Mr. Fazel's client is in regarding the organizational structure is not the same as those of some of his colleagues.

THE COURT:  Okay.

MR. GOLDMAN:  And we do have an issue, Mr. Fazel and I, I would have to call him back on one issue.  I have had problems getting -- as the Court is

aware, there are several different agencies involved in the case, because there is a drug aspect, there is a trafficking aspect, or the smuggling aspect, and one of my issues, just as they have had issues on their end talking to their clients, is getting all of our agencies on the same sheet of music so that we can get some of the matters resolved.

THE COURT:  All right.  Well, I will -- I'll leave you to resolve that with Mr. Fazel.  Why don't you call him as soon as you get finished with Mr. Sanchez.

MR. GOLDMAN:  Okay.  I'll do that, Your Honor.

THE COURT:  All right.

MR. GOLDMAN:  I'll make two calls.

THE COURT:  All right.  And then I am sure the rest of them will want calls right after that.  So, you are going to be -- you are going to be busy today.

MR. GOLDMAN:  Okay.  I can -- I can do my phone duty today, Your Honor.

THE COURT:  Okay.  Very good.  Thank you very much.  I am going to adjourn this hearing.

MR. FICKMAN:  Your Honor?

THE COURT:  Yes.

MR. FICKMAN:  Your Honor, it is Robert Fickman, if I may.

THE COURT:  Mr. Fickman.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

MR. FICKMAN:  I need to clarify something. Excuse me.  Mr. Fazel did speak on behalf of all of us and he said that I had not seen my client, Hector Reyna, in the last year, and I appreciate Mr. Fazel speaking for all of us.  But for the record, Mr. Reyna was in the hospital much of last year.  I think he got out earlier -- was out earlier in the year.  And I believe, the best as I can recall, I saw him in person this year prior to the COVID. And then once the COVID came, the GO cut off all in-person contacts with our clients, and that's remained the case up until now.

And I just wanted -- I wanted the Court to know and for the record to know that I have been in contact with my client via mail and via telephone calls.  As long as we're not allowed to see our clients in person, it's going to continue to be a problem.

We have been told, I'll update the Court, that we would be allowed in-person visits at the GO.  There is a mixed feeling about that among defense counsel, about the safety of that, and also the GO has been unclear about the -- how that is going to work.  So we don't know if it is really going to work or not.  But just for the record I wanted to be clear that I have been in contact with my client.

THE COURT:  All right.  Thanks for the

clarification, Mr. Fickman.  All right.  If there is nothing else, we're adjourned.  Thank you gentlemen and ladies.

(Adjourned at 11:38 a.m.)

COURT REPORTER'S CERTIFICATE.

I, Kathleen K. Miller, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   October 25, 2025   /s/      _Kathleen K Miller_____

                    Kathleen K. Miller, RPR, RMR, CRR

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com