IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                )
UNITED STATES OF AMERICA        )
                                ) CRIMINAL ACTION NO.
VS.                             ) 4:17-CR-651-18
                                )
HECTOR REYNA                    ) 11:06 A.M.
_____)


TELEPHONE CONFERENCE
BEFORE THE HONORABLE GRAY H. MILLER
UNITED STATES DISTRICT JUDGE
MARCH 10, 2022

APPEARANCES:

**FOR PLAINTIFF:**
MS. ZAHRA JIVANI FENELON
MR. ADAM LAURENCE GOLDMAN
United States Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, Texas  7002
(713)567-9000

**FOR DEFENDANT:**
MR. QUENTIN TATE WILLIAMS
Hilder & Associates, P.C.
819 Lovett Boulevard
Houston, Texas  77006
(713)655-9111

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas  77002
(713)250-5584

Proceedings recorded by mechanical stenography, transcript produced by computer.
**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER.   UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.   General Order 94-15, United States District Court, Southern District of Texas.**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

UNITED STATES OF AMERICA                )
                                        )  CRIMINAL ACTION NOS.
VS.                                     )  4:17-CR-651-1,
                                        )  4:17-CR-651-3,
FREDDY MONTES,                          )  4:17-CR-651-5,
VICTOR JAVIEL GONZALEZ,                 )  4:17-CR-651-6,
MARIA ANGELICA MORENO-REYNA,            )  4:17-CR-651-8,
WILLIAM ALBERTO LOPEZ,                  )  4:17-CR-651-10,
ERIK IVAN ALVAREZ-CHAVEZ,               )  4:17-CR-651-12,
JOSE RUBEN PALOMO-MARTINEZ,             )  4:17-CR-651-13,
GABRIELA GONZALEZ-FLORES,               )  4:17-CR-651-14,
WALTER LOPEZ,                           )  4:17-CR-651-16,
EDDIE ALEJANDRO TORRES,                 )  4:17-CR-651-20
JOSE LUIS MORENO, HECTOR REYNA,         )
BIANCA STEPHANIE REYNA                  )
_____       )


TELEPHONE CONFERENCE
BEFORE THE HONORABLE GRAY H. MILLER
UNITED STATES DISTRICT JUDGE
MARCH 10, 2022

APPEARANCES:

**FOR PLAINTIFF:**
MS. ZAHRA JIVANI FENELON
MR. ADAM LAURENCE GOLDMAN
United States Attorney's Office
1000 Louisiana Street, Suite 2300
Houston, Texas  7002
(713)567-9000

**FOR DEFENDANT MONTES:**
MS. WINIFRED AKINS PASTORINI
Attorney at Law
440 Louisiana, Suite 200
Houston, Texas  77002
(713)236-7300

APPEARANCES CONTINUED:

**FOR DEFENDANT GONZALEZ:**
MR. DAVID PAUL CUNNINGHAM
Attorney at Law
2814 Hamilton Street
Houston, Texas   77004
(713)225-0325

**FOR DEFENDANT MORENO-REYNA:**
MR. CHARLES L. DUKE
Duke & Momberger
9225 Katy Freeway, Suite 200
Houston, Texas   77024
(713)975-6699

**FOR DEFENDANT LOPEZ:**
MR. SEAN BUCKLEY
Law Offices of Sean Buckley PLLC
13334 Seaway Road, Suite 202
Gulfport, Mississippi   39503
(228)933-4411

**FOR DEFENDANT ALVAREZ-CHAVEZ:**
MR. ADRIAN ALMAGUER
Attorney at Law
P.O. Box 262406
Houston, Texas   77207
(281)591-7310

**FOR DEFENDANT PALOMO-MARTINEZ:**
MR. PHILIP G. GALLAGHER
Federal Public Defender
440 Louisiana, Suite 1350
Houston, Texas   77002
(713)718-4600

**FOR DEFENDANT GONZALEZ-FLORES:**
MR. GERARDO S. MONTALVO
The Montalvo Law Firm, PLLC
1111 North Loop West, Suite 820
Houston, Texas   77008
(713)526-5002

**FOR DEFENDANT WALTER LOPEZ:**
MR. JAMES RAY ALSTON
Attorney at Law
1415 North Loop West, Suite 905
Houston, Texas   77008
(713)228-1400

APPEARANCES CONTINUED:

**FOR DEFENDANT TORRES:**
MR. LARRY EASTEPP
Larry D. Eastepp PC
800 Bering Drive, Suite 220
Houston, Texas   77057
(713)255-3388

**FOR DEFENDANT MORENO:**
MR. ALI R. FAZEL
Fazel Law
5373 West Alabama Street, Suite 600
Houston, Texas   77056
(713)526-6020

**FOR DEFENDANT BIANCA STEPHANIE REYNA:**
MR. THOMAS B. DUPONT, II
Dupont & Dupont
915 Franklin Street, Unit 7M
Houston, Texas   77002
(713)682-1800

**COURT REPORTER:**
Heather Alcaraz, CSR, FCRR, RMR
Official Court Reporter
515 Rusk, Suite 8004
Houston, Texas   77002
(713)250-5584

PROCEEDING

_____

*(The following hearing was held via telephone conference.)*

\* \* \*

THE COURT:  All right.  So Mr. Goldman is tied up.  We have Mr. -- Ms. Fenelon standing in for him right now, and I think we're missing Mr. Dupont, but I think we can probably start without Mr. Dupont, since he's at the tail end of this case.

So this is a telephone status conference in criminal case 17-651, United States of America versus Montes and others. I'm going to go down the list and ask the attorneys to identify themselves, please, for our court reporter, starting with the attorney for the government.

MS. FENELON:  Good morning, Your Honor.  This is Zahra Jivani Fenelon for the United States.

THE COURT:  All right.  Good morning, Ms. Fenelon.

And for Montes, the first defendant?

MS. PASTORINI:  Yes, Your Honor.  This is Windi Pastorini.  I represent Mr. Montes.

THE COURT:  Okay.  Good morning, Ms. Pastorini.

MS. PASTORINI:  Good morning, Your Honor.  Thank you.

THE COURT:  And Gonzalez --

MR. CUNNINGHAM:  David Cunningham for Mr. -- I'm sorry to interrupt you, Judge.  David Cunningham for Mr. Gonzalez.

THE COURT: That's the problem with these phone conferences. No problem, Mr. Cunningham; good morning.

MR. CUNNINGHAM: Good morning.

THE COURT: And Moreno-Reyna, defendant No. 5?

MR. FAZEL: Good morning, Your Honor. Ali Fazel.

THE COURT: Mr. Fazel, you're representing Maria Angelica Moreno-Reyna?

MR. FAZEL: No. I'm sorry, Your Honor. I apologize. I represent --

THE COURT: No problem.

MR. FAZEL: -- Jose Luis Moreno.

THE COURT: I got you. Okay.

So, Mr. Duke?

MR. DUKE: Yes, sir. Maria Angelica Moreno-Reyna, Charles Duke.

THE COURT: Got you, Mr. Duke. Good morning.

MR. DUKE: Sorry to interrupt you, sir.

THE COURT: No worries.

Lopez, defendant No. 6.

MR. BUCKLEY: Good morning, Your Honor. Sean Buckley for William Lopez.

THE COURT: All right. Good morning, Mr. Buckley.

Alvarez-Chavez, defendant No. 8?

MR. ALMAGUER: Good morning, Your Honor. Adrian Almaguer for Erik Ivan Alvarez-Chavez.

THE COURT:  All right.  Mr. Almaguer, good morning.

Palomo-Martinez, defendant No. 10.

MR. GALLAGHER:  Good morning.  Philip Gallagher for Mr. Palomo-Martinez.

THE COURT:  All right.  Mr. Gallagher, good morning.

Gonzalez-Flores, defendant No. 12.

MR. MONTALVO:  Jerry Montalvo for Gabriela Gonzalez-Flores.

THE COURT:  All right.  Mr. Montalvo, good morning.

Lopez, defendant No. 13?

MR. ALSTON:  Good morning, Your Honor.  James Alston for Walter Lopez.

THE COURT:  Good morning, Mr. Alston.  Thank you.

Torres, No. 14 -- defendant No. 14.

MR. EASTEPP:  Larry Eastepp for Eddie Torres, Your Honor.  Good morning.

THE COURT:  Good morning, Mr. Eastepp.

Finally, we get to Mr. Fazel with Jose Luis Moreno.

MR. FAZEL:  Good morning, Your Honor.  Sorry about that.

THE COURT:  No worries.  Good morning, Mr. Fazel.

Mr. Reyna, defendant 18?

MR. WILLIAMS:  Tate Williams for Hector Reyna, Your Honor.

THE COURT:  All right.  Mr. Williams, good morning.

**MR. WILLIAMS:**  Morning.

**THE COURT:**  And Bianca Stephanie Reyna, defendant No. 20.  Is Mr. Dupont on --

**MR. DUPONT:**  Your Honor, I made it here.  Thank you. Sorry, the reception is bad in state court.

**THE COURT:**  No problem.

**MR. DUPONT:**  But I'm present for her, Your Honor.

**THE COURT:**  All right.  Good.  Well, we have everybody, with the exception of Mr. Goldman, who will be joining us as soon as he can.

So this is yet another status conference in this case to determine where we are.

Ms. Fenelon, can you update us, please, from the government's perspective?

**MS. FENELON:**  Yes, Your Honor.  It's my understanding that all discovery has been provided, including the pole camera information, to defense, or at least their coordinator for dissemination.  Plea agreements have been given or pleas -- either plea agreements or requests have been given to all defendants that wanted it.  I believe that there are still some changes that were requested, and updates have also been sent by Mr. Goldman.

And there are certain defendants that are wanting to still go -- proceed to trial.  If I'm not mistaken, I believe that's defendant William Lopez and Hector Reyna.  That's my

understanding, that those two individuals would like to proceed to trial.  The other ones are -- they're considering plea agreements or are in negotiation with Mr. Goldman in regards to pleas.

THE COURT:  Okay.  Thank you.

I guess I should ask, I guess, Mr. Buckley and Mr. Williams:  Is it likely that your two clients are going to go to trial in this case based on --

MR. BUCKLEY:  Your Honor -- pardon me, Your Honor. Sean Buckley speaking for William Lopez.  I guess to -- to tell you where we are in a nutshell, we have received a proposed plea agreement from the government.  As my colleague, Tate Williams, has aptly described it, it is a plea offer, but not much of a bargain.

THE COURT:  Uh-huh.

MR. BUCKLEY:  Mr. Lopez remains motivated and, frankly, with the allegations in the indictment, we would much prefer to work something out as opposed to try this case, but I don't think we're there, and I think, short of some kind of evolution of these discussions, we may well end up in trial.  So I'd say I qualify the statement that we want to go to trial with that background, Your Honor.

THE COURT:  All right.  Mr. Williams?

MR. WILLIAMS:  Judge, I generally concur with Mr. Buckley.  I mean, we received a plea offer before our last

status call.  I've reached out to Mr. Goldman about some terms and -- in other words, I'm trying to negotiate with him, and I hope to hear back from him in that regard.  I don't know that we're going to be going to trial or not, but, you know, it's -- so I generally concur with Mr. Buckley.

THE COURT:  Okay.  All right.  And from what I understand, based on our last status conference, most, if not all, of the other remaining defendants are -- are possible plea agreements at this time.  Is there anybody else that might be going to trial?

I think not, all right.

MR. FAZEL:  Your Honor, this is Ali Fazel.  I apologize, I didn't mean to interrupt the Court.

We -- as far as my client is concerned, we have received a plea offer as well.  I have attempted to communicate with Mr. Goldman, and Mr. Goldman has a very busy schedule, as the Court is aware, and we are trying to fit into his schedule to be able to communicate with him and do the negotiating necessary for plea bargaining.

I received an e-mail from him this morning, and so I would say that I'm in the middle column.  I -- we're hoping to also negotiate a deal.  I think we're almost there, but we're not quite there.

THE COURT:  Okay.

MR. FAZEL:  But we're working on it.  It's

just -- it's a matter of getting Mr. Goldman to have a little bit of time to talk with us.

MR. DUKE:  We're in the same shape for defendant No. 5, Maria, Your Honor.

THE COURT:  Okay.  Not there yet?

MR. DUKE:  Not quite, but, you know, we could -- we could easily get there, hopefully.  She's having a rough time, but, yeah, we're -- we're just about there.  I had a couple-hour meeting with her yesterday and, you know, I just need to talk to Mr. Goldman.

THE COURT:  All right.  Mr. -- Ms. Fenelon, when would be a good time that Mr. Goldman could get together with the lawyers who still need to talk to him about these plea agreements?  Do you know anything about his schedule?

MS. FENELON:  I wish I could tell you I know his exact schedule, but I would -- what I can do is, as soon as we're done here, I will let Mr. Goldman know that there are several defense attorneys that would like to schedule meetings in regards to -- or at least some conversations in regards to the plea agreements.  I know that he's been trying to keep updated and make any changes or requests or let them know whether or not he's in agreement with, you know, their proposed plea agreements or not.

But I will let him know that it sounds like there are at least three or four.  I've been writing it down as to which

ones -- which defendants would like to speak -- or defense attorneys for specific defendants would like to speak with him, and I will have him reach out, because I'm sure each of them will need a different date and time, or at least a different time within the same date, and make sure that that's taken care of sooner rather than later.

**THE COURT:**  Yeah.  I -- I understand his schedule, but I think -- I think it's Mr. Buckley and Mr. Fazel and Mr. Duke --

**MR. WILLIAMS:**  And Mr. Williams.

**THE COURT:**  And Mr. -- I'm sorry, Mr. Williams.

Those lawyers, in particular, need to sit down with him or talk to him over the phone about it.  And would you ask him if he could do that within the next ten days, please? That's what I would like for him to do --

**MS. FENELON:**  Sure.

**THE COURT:**  -- within -- sometime in the next ten days, reach out and get together with those lawyers and see where we are.

The other ones who are -- who are potential pleas, if you can get those plea agreements finalized, we can set up a time to take the pleas.  I'm -- the magistrate judge will probably take these pleas for me, Judge Bryan, but just let Ruth know when you -- when you need to set a re-arraignment, and we'll work it out with Judge Bryan.

**MR. DUPONT:**  Your Honor, Tom Dupont for Ms. Reyna.

**THE COURT:**  Yes, Mr. Dupont?

I'm sorry, we didn't hear you.

I think --

**MR. DUPONT:**  Hello?

**THE COURT:**  Mr. Dupont, are you there?

**MR. DUPONT:**  Yes, Your Honor.  Can you hear me?

**THE COURT:**  I can now, yes.

**MR. DUPONT:**  Sorry about that.  I will --

**THE COURT:**  Go ahead, sir.

We're not able to -- Mr. Dupont, I'm really -- we're not hearing you.

**MR. DUPONT:**  Your Honor, can you hear me?  I apologize to everybody.  I'm in the state court.

**THE COURT:**  Yes, we can hear you.

**MR. DUPONT:**  We'll be -- we'll be setting re-arraignment for Ms. Reyna soon, Your Honor.

**THE COURT:**  Okay.  Very good.  Very good.

Anybody else need re-arraignment dates?

All right.  Well, it sounds like --

**MR. BUCKLEY:**  Your Honor -- pardon me.  This is --

**THE COURT:**  Yes?

**MR. BUCKLEY:**  Your Honor, pardon me.  Excuse the interruption.  This is Sean Buckley for William Lopez.

I would like to just say something and get it out in

the open, and this is not asking Your Honor for intervention because I know that Your Honor cannot involve yourself in plea negotiations, but I would just like to characterize the nature of the sticking point for William Lopez, and that is that the guidelines in this case are so high, that it seems to provide no consequence to Mr. Lopez if he pleads pursuant to the current proposed plea agreement from the government or proceeds to trial.

The three points would make no difference, and, frankly, he's been in custody for so long that any information that he could provide under a 5K would be stale and, I think, unproductive.

I just wanted that to be out in the open, Your Honor, for everyone -- for the government's understanding and for the Court's.

**THE COURT:** Okay. Okay. Understood.

**MR. BUCKLEY:** Thank you, Your Honor.

**THE COURT:** Yes, sir, of course.

Anybody else have anything that they need to bring up at this point? Otherwise, I guess we just carry this on and set up another status conference after Mr. -- after Mr. Goldman has talked to the lawyers that want to talk to him with respect to the pending plea agreements. So I'd like you to do that within the next ten days.

What do you think, 30 days on another status

conference?  Does that give us enough time to get most of this wrapped up?

**MR. BUCKLEY:**  Sean Buckley for Mr. Lopez, Your Honor. That's fine with me.

**THE COURT:**  All right.

**MR. WILLIAMS:**  That's fine with Hector Reyna, Your Honor.

**UNIDENTIFIED SPEAKER:**  Your Honor, suggesting 45 because the time going back and forth is -- can be difficult depending on, you know, conditions of the court and all that.  I don't know, Judge.  I mean, it's...

**THE COURT:**  Forty-five days.  We'll set another status conference for 45 days, and I (phone interference) will have talked to all the lawyers who need to talk to him and (phone interference) --

**THE REPORTER:**  Your Honor, I'm sorry.  This is the court reporter.  You keep cutting out a little bit.  Could you please repeat?

**THE COURT:**  Oh, I'm sorry.  Yes.  We're going to reset a status conference by telephone for 45 days, and by that time Mr. Goldman will have talked to all the lawyers that need to talk to him about outstanding plea agreements, and Ruth will pick a date and time and send out an order on that.

So is there anything else from anyone else before we adjourn?

**MR. FAZEL:** Just very briefly, Your Honor. Ali Fazel.

I was asked to kind of spearhead the discovery process regarding the cameras -- the pole cameras. We have -- "we," being my firm, has received copies of that. Those are quite voluminous. I mean -- and I mean quite voluminous.

To make things even more interesting, the way these things are done, they're not videos as we would think that could happen on VLS or, you know, what we're used to on video. They're actually photo -- they're rapid photo -- photos, rapid photo -- takes of photos. So, in essence, there's trillions of images that has to be reviewed.

All this information to tell the Court that we're grappling with -- and one of the things I need to talk to Mr. Goldman about -- again, if he can fit me into his busy schedule -- is that we need to figure out if there's a way we can determine what attorneys need to see this because it could be very cost prohibitive for the CJA to be able to make multiple copies of this.

In speaking with the -- with the CJA-appointed discovery attorney, it's so voluminous she has suggested that she can't post it. It's just too big. Therefore, my recommendation is -- and I will talk to Mr. Goldman about this as soon as I get ahold of him -- is to be able to determine which attorneys need it, frankly, and which attorneys are -- folks aren't on there, and then to figure out where on

these particular videos each client resides.

I know there's one that he's done that to, to a certain degree, but the second video, I don't believe that has occurred, and so try to negotiate that. And so this is my update to the Court and to the other co-counsel, that we're trying to do that in order to make everybody's life simple so that we don't just dump, you know, a copy of videos to the lawyers, and they just -- they won't be able to do anything with it.

So as far as discovery's concerned, yeah, discovery has been produced to us, including the videos, but we're kind of jostling with that and trying to grapple with how to do it so I don't turn in a, you know, 70,000-dollar budget to you to review before you have to send it to the Circuit. And so we're just grappling with that, and that's the update I have for that, Judge.

THE COURT: Okay. Okay. I thought --

MR. GOLDMAN: Your Honor, this is Adam Goldman.

THE COURT: There he is. Mr. Goldman?

MR. GOLDMAN: Yes, Your Honor. I apologize for my tardiness. I just finished with Judge Hoyt.

THE COURT: No problem. No problem.

We were just discussing which lawyers need to specifically talk to you about the pending plea negotiations in their client's cases, and that would be Mr. Buckley, Mr. Fazel,

Mr. Tate Williams, and Mr. Duke. They all need some of your precious time.

So I would like you, within the next ten days, to at least get them on the phone or sit down with them and maybe determine whether or not their clients are going to be able to work out a plea agreement or whether they need a trial date. Can you do that?

**MR. GOLDMAN:** Your Honor, was that Mr. Duke, Mr. Fazel, Mr. Buckley, and Mr. Williams?

**THE COURT:** Correct.

**MR. GOLDMAN:** Yes, Your Honor. I'll get that done later today, hopefully.

**THE COURT:** Good. Good. And then we're going to reset another status conference by telephone for 45 days. And I guess I should ask you this question: Mr. Fazel, just before you got on the phone, was talking about the continuing saga of the pole cam videos and how voluminous all of that is, and I thought that the last time we were on the phone, that you said that you were basically giving each of these lawyers the -- either the time or date or -- you know, where their clients appeared on pole cam videos or if they did not appear at all.

Have you done that for everybody?

**MR. GOLDMAN:** Yes, Your Honor. I -- what I -- what I think I indicated, I provided the -- what we call the FBI 302s.

**THE COURT:** Right.

**MR. GOLDMAN:** That was provided regarding who was on what videos specifically, and as I indicate, a lot of the -- a lot of the defendants are actually not on that big voluminous video, but I think the 302 has -- has most -- has indicated which ones are where. But I can try to limit it even more than what the 302s indicated.

**THE COURT:** That would be a help, and I'd appreciate if you would touch base with Mr. Fazel on that, who's kind of spearheading it for defense counsel in this case.

**MR. GOLDMAN:** I will -- I will do my best to work with Mr. Fazel, Your Honor.

**THE COURT:** Oh, he's very easy to work with, Mr. Goldman.

All right. I think we've pretty much covered everything we need to cover, unless there's something else that needs to be discussed. Has somebody got anything?

All right. Ruth will send out a notice for the next status conference, 45 days, and I will talk to you all then. And anybody who needs re-arraignment dates just need to get ahold of Ruth so we can get them done that need to be done where agreements have been reached.

All right. Based upon that, I think we're done.

*(Proceedings concluded at 11:27 a.m.)*

-o0o-

I certify that the foregoing is a correct transcript

from the record of proceedings in the above matter to the best of my ability and skill, and that any indiscernible designations are because of audio interference that precluded me from understanding the words spoken.

Date: October 30, 2025

*/s/ Heather Alcaraz*
Signature of Court Reporter