UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

— — —

THE HONORABLE GRAY H. MILLER, JUDGE PRESIDING

USA,                                 No. 4:17-CR-00651-18

                    Plaintiff,

vs.

HECTOR REYNA, et al,

                    Defendants.

STATUS CONFERENCE

OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS

Houston, Texas

THURSDAY, FEBRUARY 25, 2021

APPEARANCES:

For the PLAINTIFF:   ADAM L. GOLDMAN, AUSA

For the DEFENDANT    ROBERT J. FICKMAN, ESQ.
REYNA:

Reported by:        Sean Gumm, RPR, CRR
                    Official Court Reporter
                    United States District Court
                    Southern District of Texas
                    sean_gumm@txs.uscourts.gov

Proceedings recorded by mechanical stenography.
Transcript produced by Reporter on computer.

APPEARANCES CONTINUED

DEFENDANT FREDDY MONTES:

By: Winifred Akins Pastorini
Attorney at Law
440 Louisiana
Ste 200
Houston, TX 77002
713-236-7300
Email: Windi@pastorinilaw.com


DEFENDANT MARIA ANGELICA MORENO-REYNA:

By: Charles L Duke
Duke & Momberger
9225 Katy Fwy
Suite 200
Houston, TX 77024
713-975-6699
Fax: 713-975-6689
Email: Dukelaw1@sbcglobal.net

DEFENDANT ERIK IVAN ALVAREZ-CHAVEZ:

By: Adrian Almaguer
Attorney at Law
P.O. Box 262406
Houston, TX 77207
281-591-7310
Fax: 281-591-7316
Email: Adrianalmaguer@prodigy.net

DEFENDANT JOSE RUBEN PALOMO-MARTINEZ:

By: Teresa Cigarroa Keck
Assistant Federal Public Defender
1701 W. Business Hwy. 83, Suite 405
McAllen, TX 78501
(956) 630-2995
Fax: (956) 631-8647
Email: Teresa_Keck@fd.org

DEFENDANT GABRIELA GONZALEZ-FLORES:

By: Gerardo S Montalvo
The Montalvo Law Firm, PLLC
Park Central Plaza
1111 North Loop West
Ste 820
Houston, TX 77008
713-526-5002
Fax: 713-526-5018
Email: Montalvolaw@sbcglobal.net

DEFENDANT WALTER LOPEZ:

By: James Ray Alston
James Alston Attorney at Law
1415 North Loop West
Suite 905
Houston, TX 77008
713-228-1400
Email: Jamesalstonpc@outlook.com

DEFENDANT EDDIE ALEJANDRO TORRES:

By: Larry Eastepp
Larry D. Eastepp PC
800 Bering Dr Ste 220
Houston, TX 77057
713-255-3388
Email: Larry@eastepplaw.com

DEFENDANT BIANCA STEPHANIE REYNA:

By: Thomas B Dupont , II
Dupont & Dupont
Historic Bayou Lofts
915 Franklin Street
Unit 7M
Houston, TX 77002
713-682-1800
Fax: 281-605-6828
Email: Todd.dupont@dupontlaw.net

PROCEEDINGS
_____

(The following proceedings held via telephone.)

\* \* \*

**THURSDAY, FEBRUARY 25, 2021 -- 10:36 A.M. CST**

**--o0o--**

THE COURT:  This is Judge Miller and I'm going to go ahead and start.  The only person that we're missing is Mr. Cunningham, and it's unclear at this point whether his client has pled or not.  But we'll start.  It is criminal case 17-651, United States of America versus Freddy Montes and others.

I'm going to ask Rhonda, since we are on the record with a court reporter, to call the lawyers as they make their appearances on the phone, beginning with the Government.  I think the Court Reporter has already mentioned that if you speak that you please identify yourself before you speak so that we do have a clear record.

I understand that it will primarily be Mr. Fickman and Mr. Eastepp for the Defendants. Obviously Mr. Goldman for the Government.

So, Rhonda, you want to go ahead and call the attorneys' roles so we have a clear

record?

THE CLERK:  Yes.  So for the Government we have Mr. Goldman and Ms. Fenelon.

MR. GOLDMAN:  That is correct, Your Honor.

MS. FENELON:  Yes, good morning, Your Honor.

THE CLERK:  For Mr. Montes, we have Ms. Pastorini.

MS. PASTORINI:  I'm here, Your Honor. And good morning, Your Honor.

THE CLERK:  For Ms. Reyna, we have Mr. Duke.

MR. DUKE:  Good morning, everybody.

THE CLERK:  For Mr. Chavez, we have Mr. Almaguer.

MR. ALMAGUER:  Good morning, everyone.

THE CLERK:  For Mr. Palomo-Martinez we have Ms. Keck.

MS. KECK:  Yes, good morning.

THE CLERK:  Okay.  For Ms. Flores, we have Mr. Montalvo.

MR. MONTALVO:  That's correct.  Good morning.

THE CLERK:  For Mr. Lopez, we have

Mr. Alston.

MR. ALSTON:  Present.  Good morning.

THE CLERK:  For Mr. Torres, we have Mr. Eastepp.

MR. EASTEPP:  Present, Your Honor.  And I'm going to defer to speaking relative to my good friend, Mr. Fickman, this morning.

THE CLERK:  Thank you.  For Mr. Reyna, we have Mr. Fickman.

MR. FICKMAN:  I'm present.

THE CLERK:  For Ms. Reyna, we have Mr. Dupont.

MR. DUPONT:  Good morning, Your Honor. I'm present.

THE CLERK:  Okay.  Did I miss anybody?

THE COURT:  All right.  Good.  Thank you.  Good morning to everyone.  I would ask if everyone would please mute their phones, except for the Government lawyers and Mr. Fickman at the present time, since I think Mr. Fickman is going to be taking the lead.  If anyone needs to talk, just un-mute and identify yourself before you speak so we have a clear record.

This is a status conference in this case.  We had a status conference in this case

approximately -- I would guess a month ago or perhaps longer.  I thought we had ironed out a lot of the discovery issues, but I'm going to let Mr. Fickman, I guess, begin to tell us where we are from the perspective of the Defendants.

Mr. Fickman?

MR. FICKMAN:  Thank you, Your Honor. Good morning.  The Defense had a conference call earlier in the week to compare notes on where we were at, and to prepare for this meeting.  And Ali Fazel usually takes the lead for us.  Ali can't be here today, so I got drafted.

Um, the two primary problems continue to be those that have sort of plagued us for the last year, Your Honor.  And that is the consensus is there's a problem with communications, number one.

Number two, there's a -- certainly the continuing problem of COVID plaguing communications with our clients, and our ability to make progress there.  On the first issue, communication problems with the Government -- and of course it's not our personal attack on the Government.  I speak highly of Mr. Goldman -- or think highly of him.

The Defense pointed out a number of people were waiting on, I think, proposed plea agreements they're still waiting on.  Um, there's -- there are some discovery issues that we're waiting on.

And I would point out that I heard in the last day -- or traded e-mails with Mr. Goldman on some of these issues.  We also visited with the coordinating discovery attorney, Julie de Almeida.  I spoke with her, or exchanged e-mails with her and she couldn't be on the phone today.

But there was a problem earlier with a package that was delivered to her, including some -- a number of hard drives that apparently somebody part of the task force was responsible for delivery to her.

As I understand from Mr. Goldman's response, the package did come apparently kind of a wreck, Your Honor.  It had tabs on it, but the tabs have fallen off.  So there's no way to identify -- I guess these hard drives or disks -- whatever they were -- were in there, but it was hard to identify with any certainty what that was.

So Ms. Almeida had asked for

another set, and for a breakdown of what was included. And I think from my understanding -- and of course Mr. Goldman can speak to it better than I can -- but my understanding was that Mr. Goldman thought the deputy responsible for that had taken care of that, but the deputy apparently had not.

He left -- he since left the task force, and not working on the case. So the issue was not addressed. So as it stands today, that package that was sent to Ms. Almeida to divvy up for all of us had not been received in a fashion which she can do that. And I'm -- you know, obviously there's miscommunication of some sort.

And there are other -- I guess generic issue was that people -- obviously a case this size, there's -- these sorts of issues come up. But the -- the generic issue is that there's continuing problems with communications between the Defense and the Government in terms of we're not hearing as promptly from the Government as we would think we should.

That's the first issue. The second issue, Your Honor, is COVID has -- especially with this, within the last few months -- I guess with the spike, the rules that -- uh, and the Court is

probably well aware of this, but, um, the rules of the GO and of the FTC -- and I'm not sure where other peoples' clients are, but my client is at the GO.  The rules have continually changed throughout COVID.

They will allow us to schedule conference calls at the GO, but I think they only have one conference room there.  So what's happened -- well, okay.  Well, however many they have, they're also canceling us at the last minute.

I had it happen more than once where we schedule the consult with the client to see each other, and because the room is also used for court appearances, um, the GO -- without warning -- will cancel us.

It throws a major curve ball, because it takes time to schedule these conferences in the first place.  Have to go through the Marshal's Service and all of that, but I wanted the Court aware that despite best efforts, lawyers have been continuing to have problems engaging in basic communications with their clients.

And most of us that I'm aware of have limited, or have not gone to the jails to see our clients since COVID hit.  I'm 64, and when I get

the shot I'll feel better about doing it.

But anyways, that's -- I would point out also that we have had communications with Mr. Goldman in the last day, Ms. Almeida and I e-mailed Mr. Goldman, and he did respond promptly.

And there were other issues particular to my client, but I think he and I can work out.  It's just a matter of communications, and wouldn't take up the Court's time with the specifics of those issues that have to do with discovery.

I think that's the summary of where the Defense is at.

THE COURT:  All right.  Thank you, Mr. Fickman.

Mr. Goldman?

MR. GOLDMAN:  Yes, Your Honor.  For the record this is Adam Goldman.  My opinion is there were pre-discovery issues.  I'll try to address them -- that we received them.  I'll do the easy ones first.

When I got an e-mail from Ms. Almeida saying that she did not get our certain 302s, the FBI reports, I sent her back records showing -- I resent them to her.  But they were sent from March 19th to March 20th.  So those e-mails

were sent almost a year ago, those 302s.

Regarding the other -- I think resolvable issue -- Mr. Fickman wanted to see what we called CAC videos.  He was able to see them before the pandemic in our office.  We have a location for those, but due to the pandemic we can't allow people into the office.

So he e-mailed me about I think -- Mr. Fickman can correct me -- e-mailed or called me about a month or two ago to try to resolve this.  I kept getting the same runaround from the office regarding -- regarding the policy.  But now do have a place where he can review the remaining CAC videos he wants to look at.

Regarding these hard drives, um, my -- first of all, they have all be turned over.  That has been turned over.  We were unable to make another set easily, because they have to be downloaded from a rather large computer into hard drives.

And when we call them hard drives, they're bigger than just a terabyte drive.  They're rather large drives.  They're mostly full-cam videos.

The main difficulty that our agents

and deputy had is the discovery coordinator -- uh, she lives in The Bronx, New York.  It's hard to coordinate which hard drives go to which without a face-to-face meeting.  That was one of the other difficulties.

The other difficulty, as Mr. Fickman alluded to, is a Harris County deputy that was sort of in charge of this.  He was on the FBI task force.  He is still the case agent on the case.  I want to make that clear.

But because of resource issues, the Harris County Sheriff's Office stopped the task force designation for this deputy, and for several deputies.  And sort of for lack of a better term, put them back on the street due to resource issues.

But I did understand.  I e-mailed Ms. Almeida back in March about this, and she again e-mailed me once in October about this.  Again, my understanding was that it resolved at that point.

But then, I heard last week in my e-mails with Ms. Almeida that that portion has not been resolved in terms of sort of identifying which discovery -- uh, making the labeling easier, I guess.

But it should all be there.  She

does have it all.  It's just a matter of labeling and coordinating that with the deputy.  We're trying to work on that, but the major issue in front of me is that she's in The Bronx, and everyone else on the case is here in Houston.

THE COURT:  All right.  I'm not sure, though -- again, Mr. Goldman, her being in The Bronx would matter since we all communicate by phone and computer anyway.  I don't mean that in a sarcastic manner, just not understanding that.

MR. GOLDMAN:  If I can explain, Your Honor.  My e-mails from her she sent me pictures of the various drives and wanted to have a summary of what each of those drives -- sort of without sort of being able to go into them, she indicated some of the labeling is missing.  And without being able to look on the drives, and the next date to this date, sort of have to do that with her.

He can do the best that he can over the phone, or videoconference, but this is not as easy as just saying, "This one goes to this.  This one goes to this."

Where all we have is sort of these photographs of the various drives, since all the drives look the same.

THE COURT:  Mr. Goldman, would a Zoom call between them help, you think?

MR. GOLDMAN:  That would definitely help, I believe.

THE COURT:  All right.  I would -- that's exactly what I was going to suggest.  Everybody's been using Zoom so much these days in the COVID pandemic era that, Mr. Goldman, I would appreciate it if you would get the deputy and the discovery coordinator -- uh, at least with you, of course on a Zoom call,, and maybe that would actually help get this resolved.

MR. GOLDMAN:  I believe we can do that within the next two weeks, Your Honor.

THE COURT:  All right.  Is there anything other -- let me ask one more question of Mr. Goldman before you start, Mr. Fickman.

Is there anymore outstanding discovery that needs to be produced by the Government, or has everything that needs to be produced at this point been produced?

MR. GOLDMAN:  My belief -- or my understanding that everything's been produced.  Everything I've gotten and everything has been produced, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Fickman?

MR. FICKMAN:  Yes.  So there's a separate issue as to not related communications or COVID, but something I wanted to make the Court and the Government aware of.  That was that the Defense is working together.  Um, and while this may not work, we have had our own conferences.  We're going to continue to have conferences.  And as we've gotten a smaller number, a more manageable number of defendants, there will be some attempt to perhaps come up with a -- a global resolution, for lack of a better term.

I'm not sure we'll be able to do that, but if we can come up with something to send to Mr. Goldman that, "This will resolve all cases if you do x, y and z," and that's as specific as I can be at this point.

I just wanted to make Mr. Goldman aware, because I haven't advised him prior to that this morning.  And I wanted to make the Court aware the Defense, from our side at least, is looking toward that as a possible way to resolve the remaining cases.  And it may not work, but it's worked in other cases.  So we're at least

considering.

THE COURT: All right --

MR. GOLDMAN: Your Honor, can I respond?

THE COURT: Sure.

MR. GOLDMAN: Oh, I apologize for interrupting.

THE COURT: Oh, no. Go ahead, Mr. Goldman.

MR. GOLDMAN: Okay. Number one, I don't want to violate Rule 11 by influencing plea negotiations in front of the Court, so I'm going to try to keep my comments short on that. But I would note that, Your Honor, we do have I would say several plea agreements we hope will resolve some of the cases as Mr. Fickman alluded to for some of the Defendants.

The one issue we did have that was sort of a hold-up was regarding property issues, and forfeiture issues. That did cause a pause, in particular, for one of the Defendants. I believe it's been resolved now, so hopefully I can get back on track with getting those agreements sent to the Counsels.

We're going to cross our fingers we

have a meeting of the minds on that.

THE COURT:  All right.  That's good.

Mr. Fickman, do you have a potential timeline on your possible global resolution?

MR. FICKMAN:  It's an idea that honestly, Your Honor, just came up in this recent call.  It will take a lot of communications back and forth.  Um, what the -- basically in our -- in our call what I was asked to do is asked to give the Court to give us another status another 90 or 120 days out because of the significant impairment that COVID places on our ability to -- the lawyers can communicate easy enough with each other.

But all of us talking to our clients, getting back together, et cetera, it's still taking a considerable amount of time.  And I don't want to waste the Court's time by saying, "Let's come back in 30 days," because I don't think we'll achieve much in 30 days.

But -- and I think we'd be better off doing 90 to 120 days another status conference.  And that would at least afford us the opportunity to try to put together a global resolution.  I'm not sure what will happen, but I think it's worth a

shot.

THE COURT:  All right.

Mr. Goldman, what do you think about that?

MR. GOLDMAN:  Shorter turnaround, maybe 60 to 90 days for the next status conference.

THE COURT:  All right.  I'm going to set for 90 days from today's date.  Rhonda's going to give me a potential date.  She'll send something out to all of the lawyers.

What do you think?  June 3rd at 11:30 is our tentative date.  So we'll confirm that in an order to all of the attorneys.  I would encourage, Mr. Fickman, you and Mr. Goldman both -- I don't want to get involved in plea negotiations. I'm not supposed to, and I don't have any appetite for it.

But if these cases can be resolved by plea agreement, the sooner the better I would think.  We can, at least, narrow it down and determine whether or not there are going to be some Defendants that are not going to plea, and need to be tried.

So if you can work toward that diligently in the next 90 days, I would appreciate

it.  Then we will get back together on the phone and discuss where we are, and where we need to go.

Hopefully the virus will have abated more by then.

So is there anything else, Mr. Fickman?

MR. FICKMAN:  No, Your Honor.  We appreciate the status conference this morning.

THE COURT:  All right.  No problem. I'm always glad to get on the phone with the lawyers at any point.  I mean, if you have any problems before the next scheduled 90-day status conference, be sure and let us know.

Mr. Goldman, anything else from the Government's perspective?

MR. GOLDMAN:  Nothing from me.  I don't know if anything has anyone to add?

MS. FENELON:  Nothing further from me, Your Honor.

THE COURT:  Okay.

MR. MONTALVO:  Nothing further, Your Honor.

MR. ALMAGUER:  Nothing further for Mr. Chavez.

THE COURT:  Would you repeat that?

MR. DUPONT:  Yes, Judge.  This is Todd Dupont.  Nothing further for Ms. Bianca Reyna.

THE COURT:  Thank you.

MR. MONTALVO:  This is Gerry Montalvo.  Nothing further for Gabriela Gonzales-Flores.  Thank you.

THE COURT:  All right.  Thank you, Mr. Montalvo.

MR. EASTEPP:  Larry Eastepp.  Nothing further for Eddie Torres.

THE COURT:  All right.  Anybody else?

MR. ALSTON:  Yes, this is James Alston.  Nothing further from Walter Lopez.

THE COURT:  All right.  Thank you.

MR. DUKE:  Nothing further for -- Charles Duke for Ms. Maria Moreno.

THE COURT:  Yes.  Thank you, Mr. Duke.

MR. DUKE:  Yes, sir.

THE COURT:  All right.  I think that covers everybody.  So I appreciate your time, and good luck on your efforts.  We're adjourning.

**(PROCEEDINGS ADJOURNED AT: 10:57 A.M.)**

---oOo---

C E R T I F I C A T E

I hereby certify that pursuant to Title 28, Section 753 United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings in the above matter.

Certified on 02/09/2026.

_____
Sean Gumm, CRR, RMR